UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 05-440 |
| ALTON COLES | : | |

**SURRICK, J.**                                                                                           **OCTOBER 5, 2007**

### MEMORANDUM & ORDER

Presently before the Court is Defendant Alton Coles' Motion to Suppress Physical Evidence Seized on March 27, 2004 (Doc. No. 305). A Suppression Hearing was held on August 13, 2007. For the following reasons, Defendants' Motion will be denied.

### I.      BACKGROUND

On February 21, 2007, the grand jury returned a 194-Count Fifth Superseding Indictment ("Indictment") charging Defendant Alton Coles and twenty-one co-defendants with offenses related to their participation in a wide-ranging drug conspiracy. The Indictment charged Coles with conspiracy to distribute narcotics in violation of 21 U.S.C. § 846; engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848(a), (b); being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1); possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c); distribution and possession with intent to distribute narcotics in violation of 21 U.S.C. § 841(a)(1); and other related offenses.

### II.     FINDINGS OF FACT

On the night of March 27, 2004, Officers Curtis Younger and Jacob Williams of the

Highway Patrol Unit of the Philadelphia Police Department observed Defendant's vehicle, which had been sitting for some time in the northbound lane of traffic in the 2100 block of 58th Street. (*See* Suppression Hr'g Tr. 41-42, Aug. 13, 2007.)  Defendant's car was impeding the flow of traffic – causing cars to drive into the opposite lane of traffic to get around it – in violation of the Pennsylvania Motor Vehicle Code.  (*Id*. at 42.)  The officers pulled up behind the Defendant's car and after about thirty seconds, Officer Williams hit the regular horn.  (*Id*. at 43.)  Defendant's car did not move.  (*Id*.)  Officer Williams then hit the air horn and Defendant's car took off.  (*Id*. at 43, 44.)  The officers turned on their lights and sirens to pull Defendant over for a traffic violation.  (*Id*. at 44.)  Defendant did not immediately stop but went down 58th Street, turned onto Greenway, went up Greenway and then turned northbound on 57th Street, ultimately pulling over at the corner of 57th and Greenway. (*Id*. at 44, 50.)  The car stop occurred at approximately 9:53 p.m.  (*Id*. at 41.)

Officer Williams exited the police car and approached the driver's side of Defendant's car.  (*Id*. at 44.)  Officer Younger approached the passenger side.  (*Id*.)  Defendant was the only person in the car.  (*Id*..)  Officer Williams asked the Defendant for his driver's license, registration, and proof of insurance.  (*Id*. at 44–45.)  The Defendant became agitated and started to contest the stop.  (*Id*. at 45.)  He asked the officers why they had stopped him and told them that he had done nothing wrong.  (*Id*.)  Officer Williams repeated his request for the license, registration, and insurance, but Defendant failed to comply and continued to contest the stop. (*Id*.)  As Officer Williams asked the Defendant for his information, Defendant kept his hand close to his waistband area on his right side.  (*Id*. at 46.)  Defendant also leaned into the center console of the car away from  Officer Williams who was at the driver's side window.  (*Id*.)

2

When Defendant lifted his hands in the air, he held his left hand higher than his right as if he was concealing something on the right side of his body. (*Id.*) Based upon their observations and experience, the officers believed that Defendant was, in fact, trying to conceal something. (*Id*. at 46, 58.)

When Defendant continued to ignore Officer Williams repeated requests for the identification information, Officer Williams reached into the car, across Defendant's body, and performed a frisk of the defendant's right waistband area. (*Id*. at 45.) Officer Williams then withdrew his hand from the car, and continued to speak to Defendant about the identification papers. (*Id*.) As Officer Williams spoke, he used a code word that alerted Officer Younger to the fact that he had touched a weapon during the frisk. (*Id*.) Officer Younger then drew his gun and pointed it at Defendant. (*Id*.) Officer Williams reached into the vehicle and removed a loaded .45 caliber, semi-automatic Baretta handgun from Defendant's right waist area. (Doc. No. 482 at 5.) Williams then secured the weapon and handcuffed the Defendant while he was still seated inside the vehicle. (Hr'g Tr. 45.) Defendant was placed under arrest. (*Id*.)

Defendant has moved to suppress the firearm as the fruit of an illegal search and seizure.

### III.    CONCLUSIONS OF LAW

Addressing first Defendant's argument that a discrepancy exists between the police report and Officer William's testimony at Defendant's preliminary hearing regarding whether the Defendant was frisked inside or outside of the car, Defendant points to the police report which states that the officer patted down the defendant after he exited the vehicle. (*See* Exhibit D-1.) Defendant notes that at Defendant's preliminary hearing, Officer Williams testified that the Defendant was frisked while still inside of the vehicle. Officer Younger also testified that the

3

frisk occurred inside the vehicle.  Defendant argues based upon the inconsistency that the government cannot overcome the presumption that the warrantless search and seizure was unconstitutional.

The accounts of Officer Williams at the Defendant's preliminary hearing and Officer Younger at the August 13, 2007 Suppression Hearing are consistent.  The testimony of Officer Younger was credible.  Officer Younger testified that Officer Williams frisked the Defendant while the Defendant was seated in his vehicle, and he described how he and Officer Williams had developed this method of patting-down suspects inside of their vehicles in order to lessen the likelihood of resistance from the suspects.  (*Id*. at 45, 48, 49.)  Officer Younger explained that neither he nor Officer Williams wrote the police report which stated that the frisk took place outside of the vehicle. (*Id*. at 55.)  The report was prepared by the detective assigned to the case. (*Id.*)  Moreover, Officer Williams prepared a memo with regard to this incident which stated  that the frisk occurred while Defendant was inside the car.  (*Id*. at 57.)

We are satisfied that the frisk of Defendant and the seizure of the firearm occurred while the Defendant remained seated in his vehicle.  We reject Defendant's assertion that the discrepancy between the police report, which was prepared by a detective who was not present at the scene, and the testimony of the officers, who were present, renders the frisk of Defendant and the seizure of the weapon unconstitutional.

Addressing next Defendant's argument that the prolonged detention of Defendant and the frisk that occurred during that detention violated his Fourth Amendment rights, Defendant concedes that Officers Williams and Younger were justified in stopping his vehicle for a traffic violation. *See United States v. Moorefield*, 111 F.3d 10, 12 (3d Cir. 1997) ("It is well-established

that a traffic stop is lawful under the Fourth Amendment where a police officer observes a violation of the state traffic regulations.") (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977)). In addition, Defendant agrees that the officers could properly require that Defendant produce a license, registration and proof of insurance, and that the officers could run a computer check and write a citation. *See United States v. Gonzalez-Lerma*, 14 F.3d 1479, 1483 (10th Cir. 1994). Defendant argues however that the stop should have gone no further because the officers did not have reasonable suspicion to justify the officer's intrusion into Defendant's vehicle, and to subsequently seize the firearm. (*See* Doc. No. 305 at 4–5 (citing *United States v. Pruitt*, 174 F.3d 1215, 1219-1220 (11th Cir. 1999)).) We disagree.

A police officer may conduct "a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual." *Terry v. Ohio,* 392 U.S. 1, 27 (1968). However, "a pat-down for weapons can occur only where the police officer is 'able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *United States v. Kithcart*, 218 F.3d 213 (3d Cir. 2000) (quoting *Terry,* 392 U.S. at 21).

In *United States v. Moorefield,*, the Third Circuit noted that "[t]he Supreme Court has repeatedly recognized that traffic stops are dangerous encounters that result in assaults and murders of police officers." 111 F.3d 10, 14(3d Cir. 1997) (citing, *inter alia*, *Maryland v. Wilson*, 519 U.S. 408, 413 (1997); *Michigan v. Long*, 463 U.S. 1032, 1047 (1983)). "In order to minimize the dangers faced by police officers conducting traffic stops, the Court has extended the constitutional principles in *Terry* to situations involving officers and motorists." *Moorefield*, 111 F.3d at 13. The Court in *Moorefield* upheld the *Terry* frisk of a motorist whose "furtive

5

hand movements and refusal to obey the officers' orders constituted suspicious behavior." *Id*. at 14. Moorefield had been stopped for a routine traffic violation. *Id*. at 11. The officers ordered the defendant and his passenger to remain in the car and show their hands or keep their hands in the air. *Id*. at 11–12. While the passenger obeyed the officers' commands, the defendant did not. *Id*. at 12. The police officer observed Moorefield lean back and push something down toward his waist. *Id*. Moorefield refused to comply with the officers' instructions, raising and lowering his hands several times. *Id*. Because of Moorefield's suspicious hand and body movements, the officers thought that he might be trying to conceal drugs or a weapon. *Id*. The officer then conducted a pat-down for weapons and recovered a pistol from the defendant's waistband. *Id*. In denying defendant's motion to suppress, the Third Circuit observed that "[the Officer] testified that based on his experience, Moorefield's behavior was consistent with the behavior of a person trying to conceal something." *Id* at 14. Moreover, the court determined that even though the officer testified that he was not sure whether the defendant was concealing narcotics or a firearm, "an 'officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id*. (quoting *Terry*, 392 U.S. at 27).

In the instant case, Officers Williams and Younger were on a routine patrol when they saw Defendant's car blocking traffic. After signaling to Defendant that he should pull over, the officers had to pursue Defendant for several blocks before he finally stopped. Defendant then failed to cooperate when Officer Williams asked repeatedly for Defendant's license, registration, and proof of insurance. Although he eventually provided the requested paperwork, Defendant argued with the officers about the necessity for the stop.

As the officers observed Defendant, they saw that he was agitated and that he appeared to be trying to conceal something on his right side.  Defendant held his right arm close to the side of his body and his right hand close to the right waistband area.  Defendant also leaned against the center console of the vehicle pushing away from Officer Williams.  At one point Defendant put his hands in the air and the left hand was higher than the right hand, again indicating that he was trying to conceal something.  Under all of the circumstances, and based on past experiences and police training, the officers believed that Defendant was trying to conceal contraband or a weapon.

As a result of Defendant's behavior, and based upon professional judgment drawn from his experience in stopping motorists for traffic violations, Officer Williams thought that Defendant might be trying to conceal a weapon.  He therefore decided that he should conduct a "safety frisk" of Defendant.  This frisk was targeted directly to the area where Officer Williams believed Defendant might be concealing the weapon.  The frisk revealed a loaded .45 caliber Baretta semi-automatic handgun in Defendant's right waistband area.  Under these circumstances, the frisk of Defendant and the seizure of the firearm did not violate Defendant's constitutional rights.

For these reasons, Defendant's Motion will be denied.

An appropriate Order follows.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 05-440 |
| ALTON COLES | : | |

ORDER

AND NOW, this 5th day of October, 2007, upon consideration of Defendant Alton Coles' Motion to Suppress Physical Evidence Seized on March 27, 2004 (Doc. No. 305), and all documents submitted in support thereof and in opposition thereto, and after hearing in open court, it is ORDERED that the Motion is DENIED.

IT IS SO ORDERED.

BY THE COURT:

*/s/ R. Barclay Surrick*
U.S. District Court Judge