UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

*816*

UNITED STATES OF AMERICA,        )
                                 )    Philadelphia, PA
                                 )    CR-05-440
        vs.                      )
                                 )    FILED    February 25, 2008
ALTON COLES a/k/a NASEEM COLES,  )
et al.,                          )    APR 21 2008
                                 )
                Defendant.       )    MICHAEL E. KUNZ, Clerk
                                      By ____ Dep. Clerk

TRANSCRIPT OF TRIAL
BEFORE THE HONORABLE R. BARCLAY SURRICK
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Government:          MICHAEL J. BRESNICK, ESQUIRE
                             RICHARD A. LLORET, ESQUIRE
                             U.S. ATTORNEY'S OFFICE
                             615 Chestnut Street, Suite 1250
                             Philadelphia, PA  19106

For the Defendant:           CHRISTOPHER D. WARREN, ESQUIRE
Alton Coles                  Law Office of Christopher Warren
                             1500 Walnut Street
                             Philadelphia, PA 19102

For the Defendant:           JACK J. MCMAHON, JR., ESQUIRE
Timothy Baukman              Law Office of Jack McMahon
                             1500 Walnut Street, Suite 900
                             Philadelphia, PA  19102


Audio Operator               INNA GOLDSHTEYN


Transcribed by:              DIANA DOMAN TRANSCRIBING
                             P.O. Box 129
                             Gibbsboro, New Jersey 08026-129
                             (856) 435-7172
                             FAX:  (856) 435-7124
                             Email:  Dianadoman@comcast.net


Proceedings recorded by electronic sound recording; transcript
produced by transcription service



(Appearances continued)

```
For the Defendant:            LAURENCE HARMELIN, ESQUIRE
Monique Pullins               P.O.  Box 3574
                              Westchester, PA  19381


For the Defendant:            RONALD A. SMITH, ESQUIRE
Asya Richardson               Ronald A. Smith and Associates
                              1617 JFK Boulevard, Suite 1240
                              Philadelphia, PA  19103


For the Defendant:            PAUL J. HETZNECKER, ESQUIRE
Thais Thompson                1420 Walnut Street, Suite 911
                              Philadelphia, PA  19102


For the Defendant:            RONALD THOMPSON, ESQUIRE
James Morris                  3002 Lincoln Drive
                              Suite J
                              Marlton, NJ 08053

                              WAYNE POWELL, ESQUIRE
                              811 Church Road
                              101 Parragon Building
                              Cherry Hill, NJ 08002
```

3

1                        I N D E X

2        Requested excerpted portions of trial as follows:

3                                    PAGE

4        Jury Charge                  4

5

6        Jury question               64

7

8        EXHIBITS:                              Ident.    Evid.

9        FOR THE COURT:

10       C-1  Index of calls                      75

11       C-2  Index of exhibits                   75

Jury Charge                                                    4

1              (Court in Session)

2            THE CLERK:  ...now in session, the Honorable R.

3    Barclay Surrick presiding.

4            COUNSEL:  Good morning, Your Honor.

5            MR. MCMAHON:  Good morning, Your Honor.

6            MR. LLORET:  Good morning, Your Honor.

7            MR. WARREN:  Good morning, Judge.

8            THE COURT:  Good morning.  Have a seat.

9            MR. THOMPSON:  Your Honor, do you anticipate we'll

10   take a break before you actually finish the charge this

11   morning?

12           THE COURT:  It's possible that that will happen.

13   We'll see how quickly it goes.

14           MR. THOMPSON:  Yeah.  I'm working on an issue with

15   Mr. Lloret, and he's very graciously accommodated me, but he

16   and I need to get something worked out before you finally send

17   the jury in to deliberate, but if we can have an opportunity to

18   do that, perhaps --

19           THE COURT:  Well, we'll see how quickly it goes,

20   Mr. Thompson.

21           MR. THOMPSON:  Very good.  Thank you.

22           THE COURT:  I'd like to get the charge completed as

23   soon as possible, but we may very well take a break depending

24   on how long it is.

25           MR. THOMPSON:  Okay.  Well, I'm ask -- even if you do

Jury Charge                                        5

1     finish the charge, if you would just give us a short time to
2     work on our issue, I would imagine by the time we address it,
3     it will only take a moment or so.
4             THE COURT:  All right.
5             MR. THOMPSON:  Thank you.
6             THE CLERK:  Please rise.
7                       (Jury in)
8             THE COURT:  Okay.  Have a seat, ladies and gentlemen.
9     I hope you're all rested after a nice weekend.  Ladies and
10    gentlemen, on Friday when we recessed, I had just completed
11    giving you the instruction with regard to managing and
12    controlling premises used for storing or distributing
13    controlled substances.  I'm now going to talk to you about the
14    crime of investing drug proceeds in an enterprise in interstate
15    commerce.
16            The indictment in this -- in this case alleges in
17    Count 176 that from on or about January 11, 2002 to on or about
18    April 5, 2002, Defendant Alton Coles received income which was
19    derived directly or indirectly from the conspiracy to
20    distribute cocaine and cocaine base in which conspiracy he was
21    a principal and that he knowingly and intentionally used and
22    invested part of that income in the acquisition of an interest
23    in an enterprise, that enterprise being Take Down Limited and
24    the production partnership which were engaged in and the
25    activities of which affected interstate commerce.  That is --

Jury Charge                                          6

1    those are the facts that are alleged against Mr. Coles in Count

2    176.

3              Ladies and gentlemen, the United States Code says

4    that it shall be unlawful for any person who has received any

5    income derived directly or indirectly from a violation of this

6    subchapter or subchapter 2 of this chapter punishable by

7    imprisonment for more than one year in which such person has

8    participated as a principal directly or indirectly invest any

9    part -- any income or proceeds in the acquisition of an

10   interest or an -- or the establishment or operation of any

11   enterprise which is engaged in or the activities of which

12   affect interstate commerce.  That is the statutory provision

13   that we're dealing with here in Count 176.

14             Now, in order to find the defendant guilty of

15   investing drug income in an interstate enterprise, the

16   Government has to prove the following elements beyond a

17   reasonable doubt:  first, that the defendant was a principal in

18   the conspiracy to distribute cocaine and cocaine base alleged

19   in Count One of the indictment; second, that defendant received

20   income from that conspiracy; third, that the defendant

21   knowingly and intentionally invested or used part of that

22   income to acquire an interest in or to establish or operate an

23   enterprise; and fourth, that the enterprise was engaged in or

24   its activities affected interstate or foreign commerce.  Those

25   are the elements of the crime.

Jury Charge                                              7

1          Ladies and gentlemen, I've told you before that a

2     person may be guilty of an offense because he personally

3     committed the offense or because he aided and abetted another

4     in committing the offense.  The United States Code provides

5     whoever commits an offense against the United States or aids,

6     abets, counsels, commands, induces, or procures its commission

7     is punishable as a principal.  It also provides that whoever

8     willfully causes an act to be done, which if directly performed

9     by him or another would be an offense against the United

10    States, a person is punishable as a principal.

11         Ladies and gentlemen, the offense of investing drug

12    income in an interstate enterprise requires that the Government

13    prove that the defendant acted knowingly and intentionally with

14    respect to that third element of the crime, and as I've told

15    you, to prove that a defendant acted knowingly, the Government

16    must prove beyond a reasonable doubt that the defendant was

17    conscious and aware of the nature of his actions and of the

18    surrounding facts and circumstances as specified in the

19    definition of the offense charged.

20         To prove that a defendant acted intentionally, ladies

21    and gentlemen, the Government must prove beyond a reasonable

22    doubt either that it was defendant's conscious desire or

23    purpose to act in a certain way or to cause a certain result or

24    that defendant knew that he was acting in that way or would --

25    or would be practically certain to cause that result.

Jury Charge                                    8

1          Again, as I've told you before, in deciding whether

2     the defendant acted knowingly and intentionally, you may

3     consider evidence about what the defendant said, what the

4     defendant did or failed to do, how the defendant acted, and all

5     of the other facts and circumstances shown by the evidence that

6     may prove what was in the defendant's mind at the time.   Ladies

7     and gentlemen, the Government is not required to prove that the

8     defendant knew that his acts were against the law.

9          Now, what is an enterprise, ladies and gentlemen?

10    The term enterprise includes any individual, partnership,

11    corporation, association, or other legal entity and any union

12    or group of individuals associated in fact although not a legal

13    entity.

14         In this matter, ladies and gentlemen, the parties

15    have stipulated that the entities that are alleged in Count

16    176, that is, Take Down and its production partnership, Get

17    That Dough, were enterprises under the statutory definition.

18         Finally, ladies and gentlemen, the final element is

19    whether the enterprise was engaged in interstate or foreign

20    commerce or affected interstate or foreign commerce through its

21    activities.   Interstate commerce is commerce between two or

22    more states or between one state and the District of Columbia

23    or between a state and the United States territory or

24    possession.   Foreign commerce is commerce between the United

25    States or any state and another country.

1            Ladies and gentlemen, if you decide that there was

2    any effect at all on interstate commerce, then that is enough

3    to satisfy this element.    The effect can be minimal.

4            Also, ladies and gentlemen, you do not have to decide

5    whether the enterprise -- the effect of the enterprise on

6    interstate commerce was harmful or beneficial.    The Government

7    satisfies its burden by proving an effect on interstate

8    commerce if it proves beyond a reasonable doubt any effect,

9    whether it was harmful or not.    The defendant need not have

10    known or intended or anticipated the enterprise's effect on

11    interstate commerce.

12            And ladies and gentlemen, in this particular matter,

13    the parties, again, have stipulated that the entities alleged

14    in Count 176 were engaged in enterprise.    They were

15    enterprises, engaged in an enterprise, engaged in activities

16    which affected interstate commerce.

17            Those are the elements of the crime of investing drug

18    proceeds in an enterprise in interstate commerce.    If the

19    Government has proven those elements beyond a reasonable doubt,

20    you should find the defendant guilty.    If the Government has

21    not proven those elements beyond a reasonable doubt, then you

22    should find the defendant not guilty.

23            Ladies and gentlemen, let's talk about the crime of

24    possessing a firearm in furtherance of a drug trafficking

25    crime.    Counts 63 and 68 of the indictment charge Timothy

Jury Charge                                    10

1    Baukman with possession of a firearm in furtherance of a drug

2    trafficking crime.  Count 67 charges Defendants James Morris

3    and Thais Thompson with this crime.  Counts 68, 70, 72, 181,

4    and 182 charge Defendant Alton Coles with this crime.

5    Defendant Monique Pullins is charged with this crime in Count

6    70.

7               Ladies and gentlemen, the offenses alleged in Count

8    One, the conspiracy to distribute cocaine and cocaine base in

9    Counts 49, 61, and 67 maintaining a property for drug

10   trafficking and Count 62, possession with the intent to

11   distribute cocaine are all drug trafficking crimes.

12              In order to find the defendant guilty of this

13   offense, you must find that the Government has proven each of

14   the following two elements beyond a reasonable doubt:  first,

15   that the defendant committed the drug trafficking crime which

16   he or she is charged with possessing the firearm in furtherance

17   of; second, that the defendant knowingly possessed a firearm in

18   furtherance of this crime.  If you find that the defendant

19   possessed the firearm, you must consider whether the possession

20   was in furtherance of the drug trafficking crime charged.

21              Ladies and gentlemen, possession in furtherance of

22   means for the purpose of assisting in, promoting,

23   accomplishing, advancing, or achieving the goal or objective of

24   conspiracy to distribute controlled substances, managing and

25   controlling a house for storing and distributing controlled

1    substances, or possession with intent to distribute controlled

2    substances.

3            You should understand that the mere presence of a

4    firearm at the scene is not enough to find possession in

5    furtherance of the alleged underlying drug charge.   The

6    firearm's presence may be coincidental or entirely unrelated to

7    the underlying crime.

8            Some factors that may help you to determine whether

9    possession of a firearm furthers a drug trafficking crime

10   include the following:  the type of criminal activity that's

11   being conducted, the accessibility of the firearm, the type of

12   firearm, whether the firearm is stolen, whether the defendant

13   possesses the firearm legally or illegally, whether the firearm

14   is loaded, the time and circumstances under which the firearm

15   is found, and the proximity of the firearm to drugs or drug

16   profits.  Those are some of the factors you may consider along

17   with any other factors that you believe are relevant.

18           Ladies and gentlemen, those are the elements of the

19   crime of possession of a firearm in furtherance of a drug

20   trafficking crime.  Again, if the Government has proven each of

21   the elements by evidence beyond a reasonable doubt, you should

22   find the defendant guilty.  If the Government has not proven

23   each of those elements beyond a reasonable doubt, then you must

24   find the defendant not guilty.

25           Let's talk about Counts 59, 60, 69, and 71 of the

1    indictment.   Those counts charge Alton Coles with being a

2    convicted felon in possession of a firearm.

3            Ladies and gentlemen, the United States Code, Section

4    922(g)(1) of Title 18 says that --

5                    "It shall be unlawful for any person who has been

6                    convicted in any court of a crime punishable by

7                    imprisonment for a term exceeding one year to possess

8                    in or affecting commerce any firearm or ammunition."

9            That's what the statute says.  In order to find the

10   defendant guilty of this crime, ladies and gentlemen, you must

11   find that the Government has proven the following three

12   elements beyond a reasonable doubt:  first, that the defendant

13   has been convicted of a felony, that is, a crime punishable by

14   imprisonment for a term exceeding one year; second, that after

15   this conviction, defendant knowingly possessed a firearm. The

16   firearms here are those described in Counts 59, 60, 69, and 71

17   of the indictment; third, that the defendant -- that the

18   defendant's possession was in or affecting interstate or

19   foreign commerce.

20           Now, ladies and gentlemen, in order to find the

21   defendant guilty of this offense, you must find that the

22   Government proved that before the defendant -- before the date

23   defendant is charged with possessing the firearm, defendant had

24   been convicted of a crime and that crime was punishable by a

25   term exceeding one year.

1          You have heard, ladies and gentlemen, that the

2     parties have stipulated that defendant was convicted of a crime

3     in State Court and that this crime is punishable by

4     imprisonment for a term exceeding one year.  The parties have

5     also stipulated that this felony conviction occurred prior to

6     the time that defendant is alleged to have possessed the

7     firearm or firearms charged in the indictment.  Based upon

8     those stipulations, ladies and gentlemen, you should treat

9     these facts as having been proven, but as I said to you before,

10    you're not required to do so since you are the sole determiners

11    of the facts.

12         Ladies and gentlemen, the fact that defendant was

13    found guilty of another crime on another occasion does not mean

14    that he committed the crimes charged in this indictment, and

15    you must not use his guilt of the other crimes as proof of the

16    crimes charged in this case except for the one element of this

17    crime which I have just given to you.  You may find the

18    defendant guilty of this crime only if the Government has

19    proven beyond a reasonable doubt all of the elements of this

20    offense.

21         You have heard, ladies and gentlemen, that a firearm

22    is any weapon which expels or is designed to or may readily be

23    converted to expel a projectile by the action of an explosive.

24    The term includes the frame or receiver of any such weapon.

25         Again, ladies and gentlemen, the parties here have

Jury Charge                                14

1    stipulated that the weapons alleged in Count 59, 60, 69, and 71

2    are firearms within the meaning of the statute.  You should

3    therefore treat these -- these facts as having been proven, but

4    again, you're not required to do so, because you are the sole

5    determiners of the facts in this matter.

6         Ladies and gentlemen, to establish the second element

7    of the offense, the Government has to prove that the defendant

8    possessed the firearm in question.  To possess means to have

9    something within a person's control.  The Government does not

10   have to prove that the defendant physically held the firearm;

11   that is, that he actually possessed it.  As long as the firearm

12   is within the defendant's control, he possessed it.

13        If you find that the defendant either had actual

14   possession of the firearm or had the power and the intention to

15   exercise control over it, even though it was not in defendant's

16   physical possession, that is, that defendant had the ability to

17   take actual possession of the firearm when defendant wanted to

18   do so, you may find that the Government has proven possession.

19   Again, possession may be momentary or fleeting.

20        Ladies and gentlemen, in addition, the law recognizes

21   that possession may be sole or it may be joint.  If one person

22   alone possesses a firearm, that's sole possession.  However,

23   more than one person may have the power and the intention to

24   exercise control over a firearm.  This is called joint

25   possession.  If you find that the defendant had such power and

1    intention, then he possessed the firearm, even if he possessed

2    it jointly with another.

3         You should understand, ladies and gentlemen, that

4    mere proximity to a firearm or mere presence on the property

5    where it's located or mere association with a person who does

6    control the firearm or the property is not sufficient to

7    support a finding of possession.

8         The Government must prove that the defendant

9    knowingly possessed the firearm described in the indictment.

10   This means that the defendant possessed the firearm

11   purposefully and voluntarily and not by accident or mistake.

12   It also means that the defendant knew the object was a firearm.

13        Finally, ladies and gentlemen, the third element of

14   this offense, the Government must prove beyond a reasonable

15   doubt that the possession was -- of the firearm by the

16   convicted felon was in or affecting interstate commerce.  This

17   means that the Government must prove that at some time before

18   the defendant's possession, the firearm had traveled in

19   interstate commerce.

20        In this regard, ladies and gentlemen, the defendant

21   and the Government have again stipulated that the firearm

22   alleged in Count 59, 60, 69, and 71, that those firearms were

23   possessed in interstate commerce as I have defined it.   In

24   other words, they crossed state lines.  You should therefore

25   treat this fact as having been established by the evidence.

Jury Charge                                                    16

1   However, again, you're not required to do so because you are

2   the sole determiners of the facts in this case.

3              Now, ladies and gentlemen, with regard to Count 60 of

4   the indictment, you heard testimony that on October 24, 2004

5   when the crime of possession of a firearm by a convicted felon

6   was alleged to have been committed, defendant ran from the

7   police, and he was caught.  If you believe defendant ran from

8   the police, then you may consider this conduct along with all

9   of the other evidence in deciding whether the Government has

10  proven beyond a reasonable doubt that defendant committed the

11  crime charged.

12             This conduct may indicate that the defendant thought

13  that he was guilty of the crime charged and was trying to avoid

14  punishment.  On the other hand, ladies and gentlemen, sometimes

15  an innocent person may run from the police for some other

16  reason.  Whether or not this evidence causes you to find that

17  the defendant was conscious of his guilt of the crime charged

18  and whether that indicates that he committed the crime charged

19  is entirely up to you.  You are the sole judges of the facts.

20             So, ladies and gentlemen, those are the elements of

21  the crime of possession of a firearm by a convicted felon.  If

22  the Government has established each of those elements by

23  evidence beyond a reasonable doubt, you should find the

24  defendant guilty of that crime.  If the Government has not

25  established each of those elements beyond a reasonable doubt,

1    you must find the defendant not guilty.

2            Count 187 of the indictment, that count charges

3    knowing possession of an unregistered firearm, and that count

4    charges Mr. Baukman, Timothy Baukman, with knowingly receiving

5    and possessing an unregistered firearm, namely, a machine gun

6    in violation of the law.   The relevant statute here provides as

7    follows:

8                "It shall be unlawful for any person to receive or

9                possess a firearm which is not registered to him in

10               the National Firearms Registration and Transfer

11               Record."

12           Ladies and gentlemen, in order to find the defendant

13    guilty of knowingly receiving and possessing an unregistered

14    firearm, you must find that the Government has established each

15    of the following five elements beyond a reasonable doubt:

16    first, that defendant knowingly possessed a firearm; second,

17    that the firearm was a machine gun; third, that the defendant

18    knew of the characteristics of the firearm, that is, that it

19    was a machine gun; fourth, that this firearm was in operating

20    condition; and five, that the firearm was not registered to the

21    defendant in the National Firearms Registration and Transfer

22    Record.   It does not matter whether defendant knew that the

23    firearm was not registered or that it had to be registered.

24           Ladies and gentlemen, to establish the first element

25    of the offense, the Government must prove that the defendant

Jury Charge                                               18

1    possessed the firearm in question, and as I just told you a

2    minute ago, to possess means to have something within a

3    person's control.  The Government does not have to prove that

4    the defendant physically held the firearm, that he had actual

5    possession of it.  As long as the firearm was in -- within the

6    defendant's control, he possessed it.

7          If you find that the defendant either had actual

8    possession of the firearm or had the power and intention to

9    exercise control over it even though it was not in defendant's

10   physical possession, that is, that the defendant had the

11   ability to take actual possession of the firearm when the

12   defendant wanted to do so, you may find that the Government has

13   proven possession.  Again, ladies and gentlemen, possession may

14   be momentary.  It may be fleeting.

15         Mere proximity to a firearm or mere presence on the

16   property where it's located or mere association with persons

17   who -- a person who does control the firearm or the property is

18   insufficient to support a finding of possession.  Ladies and

19   gentlemen, proof of ownership is not required.

20         Again, the Government must prove that the defendant

21   knowingly possessed the firearm described in the indictment,

22   and this means that the defendant possessed the firearm

23   purposefully and voluntarily and not by accident or mistake.

24   It also means that the defendant knew that the object was a

25   firearm.

1        In addition, ladies and gentlemen, the Government

2    must prove that the defendant knew of the characteristics of

3    the firearm, that is, the defendant knew that the firearm was a

4    machine gun.  Ladies and gentlemen, for purposes of this

5    instruction and as defined by the statute, the term machine gun

6    means any weapon which shoots, is designed to shoot, or can be

7    readily restored to shoot automatically more than one shot

8    without manual reloading by a single function of the trigger.

9        Those are the elements of the crime of possessing an

10   unregistered firearm, to wit, a machine gun.  If the Government

11   has established each of those elements by evidence beyond a

12   reasonable doubt, you should find the defendant guilty of that

13   charge.  If the Government has not proven each of those

14   elements beyond a reasonable doubt, then you must find the

15   defendant not guilty.

16       Okay.  Ladies and gentlemen, we're working through

17   the crimes charged.  There are several more to define for you,

18   and the next one we're going to talk about is the crime of

19   money laundering.

20       Counts 89 through 175 of the indictment charge the

21   defendant Timothy Baukman with money laundering.  Counts 78 and

22   79 charge the defendant Alton Coles with this crime.  Defendant

23   Asya Richardson is charged with this crime in Count 79.

24       Ladies and gentlemen, the relevant Federal statute

25   provides in part --

Jury Charge                                  20

1      "Whoever knowing that the property involved in a

2      financial transaction represents the proceeds of some

3      form of unlawful activity, conducts or attempts to

4      conduct such a financial transaction which, in fact,

5      involves the proceeds of specified unlawful activity

6      with the intent to promote the carrying on of the

7      specified unlawful activity or whoever knowing that

8      the transaction is designed in whole or in part to

9      conceal or disguise the nature, the location, the

10     source, the ownership, or the control of proceeds of

11     specified unlawful activity is guilty of a crime."

12         Ladies and gentlemen, for purposes of this provision,

13  a financial transaction shall be considered to be one involving

14  the proceeds of specified unlawful activity if it is part of a

15  set of parallel or dependent transactions, any one of which

16  involves the proceeds of specified unlawful activity and all of

17  which are part of a single plan or arrangement.

18         Now, in order to find the defendant guilty of money

19  laundering, the Government must prove the following four

20  elements beyond a reasonable doubt:  first, that on or about

21  the dates alleged in the indictment, the defendant conducted a

22  financial transaction which affected interstate commerce;

23  second, that the defendant conducted the financial transaction

24  with the proceeds of specified unlawful drug-related activity,

25  that is, the conspiracy to distribute cocaine or cocaine base

Jury Charge                                    21

1    as charged in Count One of the indictment; third, that the

2    defendant knew that the transaction involved the proceeds of

3    some form of unlawful activity; and fourth, as to Counts 89

4    through 120, that Defendant Baukman conducted the financial

5    transactions with the intent to promote the carrying on of the

6    specified unlawful activity; that is, the conspiracy to

7    distribute cocaine and cocaine base as alleged in Count One; as

8    to Counts 78, 79, and 121 through 175, that Defendants Coles,

9    Richardson, and Bachman conducted the financial transactions

10   with knowledge that the transactions were designed in whole or

11   in part to conceal or disguise the nature, location, source,

12   ownership, or control of the proceeds of the conspiracy to

13   distribute cocaine and cocaine base as alleged in Count One of

14   the indictment.

15        Ladies and gentlemen, the first element that the

16   Government must prove beyond a reasonable doubt is that the

17   defendant conducted a financial transaction.  The term conducts

18   includes initiating, concluding, or participating in initiating

19   or concluding a transaction.  You should also understand that

20   the term transaction means a purchase, sale, loan, pledge,

21   gift, transfer, delivery, or other disposition of property or

22   with respect to a financial institution includes deposits,

23   withdraws, transfers between accounts, exchanges of currency,

24   loans, and any other payment, transfer, or delivery by,

25   through, or to a financial institution by whatever means

1    affected.

2              Ladies and gentlemen, financial transaction means any

3    transaction as I've just explained that term which in any way

4    or degree affects interstate commerce and involves one or more

5    monetary instruments or involves the use of a financial

6    institution which is engaged in or the activities of which

7    affect interstate or foreign commerce in any way or degree.

8              In this matter, ladies and gentlemen, the parties

9    have again stipulated that the transactions alleged in Counts

10   78, 79, and 89 through 175 are financial transactions as

11   defined -- as I just defined those terms.  You should therefore

12   treat these facts as having been proven, but again, as I've

13   said before a number of times, you're not required to do that,

14   because you are the sole determiners of the facts.  As I said

15   to you just a couple of minutes ago, the term interstate

16   commerce as used in these instructions means commerce between

17   any combination of states, territories, possessions of the

18   United States, including the District of Columbia.

19             Ladies and gentlemen, the parties here have

20   stipulated with regard to that element, the interstate commerce

21   element, that the financial institutions involved in the

22   transactions alleged in Counts 78, 79, and 89 through 175 were

23   engaged in and had activities which affected interstate and

24   foreign commerce.  You should therefore treat those facts as

25   having been proven, but you're not required to do so, because

1    you are the sole determiners of the facts.

2              Ladies and gentlemen, proceeds of specified unlawful

3    activity, the term proceeds as used in these instructions means

4    any property or any interest in property that someone acquires

5    or retains as a result of criminal activity.  Proceeds may be

6    derived from an already completed offense or from a completed

7    phase of an ongoing offense.

8              You should understand, ladies and gentlemen, that the

9    Government is not required to prove that all of the funds

10   involved in the charges transactions were the proceeds of

11   specified unlawful activity.  A financial transaction involves

12   proceeds of a specified -- of a specified unlawful activity

13   even when proceeds of a specified unlawful activity are

14   commingled in an account with funds obtained from legitimate

15   sources.

16             It's sufficient, ladies and gentlemen, if the

17   Government proves beyond a reasonable doubt that at least part

18   of the funds involved in the transaction represent such

19   proceeds of specified unlawful activity.

20             Ladies and gentlemen, the third element of this crime

21   that the Government must prove beyond a reasonable doubt is

22   that in conducting a financial transaction, the defendant knew

23   that the property involved in the financial transaction

24   represented some form of -- proceeds from some form of unlawful

25   activity.  To satisfy this element, the Government must prove

Jury Charge                                    24

1    that the defendant knew that the property involved in the

2    transaction represented proceeds from some form of unlawful

3    activity, that is, a felony offense under State, Federal, or

4    foreign law.   The Government is not required to prove that the

5    defendant knew what the unlawful activity was.

6              In this case, ladies and gentlemen, the Government

7    contends that the defendants knew that the proceeds were

8    derived from unlawful activity, that is, the conspiracy to

9    distribute cocaine and cocaine base, which is a felony under

10   Federal law.

11             Ladies and gentlemen, as to Counts 89 through 120,

12   the final element that the Government must prove beyond a

13   reasonable doubt is that the defendant, Baukman, in conducting

14   the financial transactions intended to promote the carrying on

15   of the specified unlawful activity, that is, intended to

16   promote the conspiracy to distribute cocaine and cocaine base.

17   As to Counts 78, 79, and 121 through 175, the final element

18   that the Government must prove beyond a reasonable doubt is

19   that the Defendants Coles, Richardson, and Baukman in

20   conducting the financial transactions intended to conceal or

21   disguise the nature, the source, the ownership, or the control

22   of the proceeds of the specified unlawful activity, proceeds

23   from the conspiracy to distribute cocaine and cocaine base.

24             Ladies and gentlemen, whether a defendant intended to

25   promote the carrying on of the conspiracy to distribute cocaine

Jury Charge                                         25

1    and cocaine base or whether the defendant knew that the purpose

2    of the financial transactions was to conceal or disguise the

3    nature, location, source, ownership, or control of the proceeds

4    of the conspiracy to distribute cocaine and cocaine base may be

5    established by proof that the -- of the defendant's actual

6    knowledge, by circumstantial evidence, or by the defendant's

7    willful blindness.  In other words, ladies and gentlemen,

8    you're entitled to find based upon the circumstances

9    surrounding the financial transaction or the attempted

10   transaction the purpose of the activity and defendant's

11   knowledge.

12          Now, ladies and gentlemen, the offense of money

13   laundering requires that the Government prove that the

14   defendant acted with the intent with respect to an element of

15   the offense.  This means that the Government must prove beyond

16   a reasonable doubt either that it was defendant's conscious

17   desire or purpose to act in a certain way or to cause a certain

18   result or that defendant knew that he or she was acting in that

19   way or would be practically certain to cause that result.

20          In deciding whether a defendant acted with intent,

21   you may consider evidence about what the defendant said, what

22   the defendant did or failed to do, how the defendant acted, and

23   all of the other facts and circumstances shown by the evidence

24   that may prove that a -- what the defendant's state of mind was

25   at the time.

1          Now, with regard to the offense of money laundering,

2    let's talk about the money laundering in Count 79.  The offense

3    of money laundering in Count 79 requires proof that the

4    defendant Asya Richardson acted knowingly.  If you find that

5    the defendant Richardson acted in good faith, that would be a

6    complete defense to the charge, because good faith on the part

7    of the defendant Richardson would be inconsistent with her

8    acting knowingly.

9          You should understand that a person acts in good

10   faith when he or she has an honestly held belief or opinion or

11   understanding that the acts in question were not unlawful even

12   though the belief, opinion, or understanding turns out to be

13   inaccurate or incorrect.  Thus, in this case, if Defendant

14   Richardson made an honest mistake or had an honest

15   misunderstanding about whether her actions were unlawful, she

16   did not act knowingly.

17         Defendant Richardson did not act in good faith,

18   however, if even though she honestly held a certain opinion or

19   belief or understanding, she also knowingly made false

20   statements, representations, or promises to others.  You should

21   understand that Defendant Richardson does not have the burden

22   of proving good faith.  Good faith is a defense, because it's

23   inconsistent with the requirement of the offense charged that

24   the defendant Richardson acted knowingly.

25         As I've told you, it's the Government's burden to

1    prove beyond a reasonable doubt each element of the offense

2    including the mental state.  In deciding whether the Government

3    has proven that defendant Richardson acted knowingly or

4    instead, whether Defendant Richardson acted in good faith, you

5    should consider all of the evidence presented that may bear on

6    Defendant Richardson's state of mind.

7            If you find from the evidence that Defendant

8    Richardson acted in good faith as I defined that term for you

9    or if you find for any other reason that the Government has not

10   proven beyond a reasonable doubt that the Defendant Richardson

11   acted knowingly, you must find the Defendant Richardson not

12   guilty of the offense of money laundering.

13           Now, ladies and gentlemen, as I have instructed, to

14   find the defendant, Asya Richardson guilty of money laundering,

15   you must find that the Government proved beyond a reasonable

16   doubt that the defendant Richardson knew that the property

17   involved in the financial transactions alleged in Count 79

18   represented the proceeds of some form of unlawful activity.  In

19   this case, there is a question of whether Defendant Richardson

20   knew this alleged fact.

21           When, as in this case, ladies and gentlemen,

22   knowledge of a particular fact or circumstance is essential --

23   is an essential part of the offense charged, the Government may

24   prove that the defendant knew that fact or circumstances if the

25   evidence proves beyond a reasonable doubt that the defendant

1   closed her eyes to what would otherwise have been obvious to

2   her.

3            You should understand, ladies and gentlemen, that no

4   one can avoid responsibility for a crime by deliberately

5   ignoring what's obvious.  Thus, ladies and gentlemen, you may

6   find that the Defendant Richardson knew that the property

7   involved in the financial transaction represented the proceeds

8   of some form of unlawful activity based on evidence which

9   proves that she was aware of the high probability of this fact

10  and she consciously and deliberately tried to avoid learning

11  about this fact.

12           You may not find that the defendant Richardson knew

13  that the property involved in the financial transactions

14  represented the proceeds of some form of unlawful activity if

15  you find that the defendant actually believed that this fact

16  did not exist.  Also, you may not find that the defendant

17  Richardson knew that the property involved in the financial

18  transaction represented the proceeds from some form of unlawful

19  activity if you find only that defendant Richardson should have

20  known the fact or that a reasonable person would have known the

21  fact -- would have known of a high probability of that fact.

22           It's not enough, ladies and gentlemen, that Defendant

23  Richardson may have been stupid or foolish or may have acted

24  out of inadvertence or accident.  You must find that Defendant

25  Richardson was actually aware of a high probability that the

Jury Charge                                                    29

1    property involved in the financial transaction represented the

2    proceeds of some form of unlawful activity, deliberately

3    avoided learning about it, and did not actually believe that

4    the property was not proceeds from some form of unlawful

5    activity.

6            Ladies and gentlemen, those are the elements of the

7    crimes of -- the crime of money laundering.  If the Government

8    has established each of the elements of the crime in each count

9    beyond a reasonable doubt, then you should find the defendant

10   guilty of that crime.  If you find that the Government has not

11   met its burden of proof, then you must find the defendant not

12   guilty.

13           Now, in Count 77, ladies and gentlemen, Defendant

14   Coles is charged with knowingly conspiring and agreeing with

15   Kristina Latney to commit the crime of money laundering.  In

16   Count 80, the defendant Coles and Asya Richardson are charged

17   with that crime, conspiracy -- agreeing together to commit the

18   money laundering in violation of federal law.  Let's talk about

19   Count 77 and 80 for just a minute.

20           Title 18 of the United States Code, Section 1956H

21   makes it a federal crime for anyone to conspire or agree with

22   someone else to do something which, if actually carried out,

23   would be a violation of the money laundering statute, and I've

24   just given you the elements of money laundering.

25           In order to find the defendant guilty of conspiracy

1    to launder money, you must find that the Government has proven

2    beyond a reasonable doubt each of the following two elements:

3    first, that two or more persons in some way or manner came to a

4    mutual understanding to try to accomplish a common and unlawful

5    plan, that is, to violate the federal money laundering statute,

6    and second, that the defendant, knowing of the unlawful purpose

7    of the plan, willfully joined in that plan.

8            As I've told you already, under the law, a conspiracy

9    is an agreement or a kind of partnership in criminal purposes.

10   In a conspiracy, each member of the conspiracy becomes the

11   agent or the partner of every other member of the conspiracy.

12           You should understand that a person may become a

13   member of a conspiracy without full knowledge of all of the

14   details of the unlawful scheme.  So if a defendant has a

15   general understanding of the unlawful purpose of the plan and

16   knowingly joins in that plan on one occasion, that is

17   sufficient to convict the defendant of conspiracy even though

18   the defendant did not participate before or even though the

19   defendant played only a minor part, and as I've told you, mere

20   presence at the scene of a transaction or event or the mere

21   fact that certain persons may have associated with each other

22   and they have assembled together and discussed common aims and

23   interests does not standing alone establish proof of a

24   conspiracy.  Also, ladies and gentlemen, a person who has no

25   knowledge of a conspiracy but who happens to act in a way which

1    advances some purpose of a conspiracy does not thereby become a

2    conspirator.

3            Ladies and gentlemen, those are the elements of the

4    crime of conspiracy to commit the crime of money laundering.

5    If the Government has established each of those elements beyond

6    a reasonable doubt, you should find the defendant guilty of

7    that crime.  If the Government has not met its burden, then you

8    must find the defendant not guilty.

9            Let's talk about the crime of wire fraud.  Counts 87

10   and 88 of the indictment charge Alton Coles and Asya Richardson

11   with the crime of wire fraud.  Ladies and gentlemen, the

12   relevant statute makes it a crime for anyone to use interstate

13   wire communications facilities in carrying out a scheme to

14   defraud.

15           In order to find the defendant guilty of wire fraud,

16   you must find that the Government has established each of the

17   following three elements beyond a reasonable doubt:  first,

18   that the defendant devised a scheme to defraud or to obtain

19   money or property by materially false or fraudulent pretenses,

20   representations, or promises; second, that the defendant acted

21   with the intent to defraud; and third, that in advancing,

22   furthering, or carrying out the scheme, the defendant

23   transmitted any writing, signal, or sound by means of wire,

24   radio, or television communication in interstate commerce or

25   caused the transmission of any writing, signal, or sound by

1  means of wire, radio, or television communication in interstate

2  commerce.    Fourth, ladies and gentlemen, if you find that the

3  defendant has committed the first three elements that I just

4  went through with you, you must also then determine whether the

5  wire fraud scheme affected a financial institution, and you

6  must make that finding beyond a reasonable doubt.

7         Let's talk about a scheme to defraud or to obtain

8  money by false or fraudulent pretenses, representations, or

9  promises.   The first element, ladies and gentlemen, is that the

10  defendant knowingly devised a scheme to defraud in this

11  instance Chase Bank of money or property by materially false or

12  fraudulent pretenses, representations, or promises.

13         You should understand, ladies and gentlemen, that a

14  scheme is merely a plan for accomplishing an object.   Fraud is

15  a general term which embraces all of the various means by which

16  one person can gain the advantage over another by false

17  representations, suppression of the truth, or deliberate

18  disregard of the truth.   So, ladies and gentlemen, a scheme to

19  defraud is any plan, device, or course of action to deprive

20  another of money or property by means of false or fraudulent

21  pretenses, representations, or promises reasonably calculated

22  to deceive persons of average prudence.

23         In this case, the indictment alleges that the scheme

24  to defraud was carried out by making false and fraudulent

25  claims and documents.   The representations that the Government

1    charges were made as part of a scheme to defraud, and they're

2    set forth in the indictment.

3         The Government is not required to prove every

4    misrepresentation charged in the indictment.  It's sufficient

5    if the Government proves beyond a reasonable doubt that one or

6    more of the alleged material misrepresentations were made in

7    furtherance of the alleged scheme to defraud.  However, ladies

8    and gentlemen, you cannot convict the defendant unless all of

9    you agree as to at least one of the material

10   misrepresentations.

11        You should understand that a statement,

12   representation, claim, or document is false if it is untrue

13   when made and if the person making the statement,

14   representation, claim, or document or causing it to be made

15   knew that it was untrue at the time that it was made.  A

16   representation or statement is fraudulent if it was falsely

17   made with the intention to deceive.

18        In addition, ladies and gentlemen, deceitful

19   statements of half truths or the concealment of material facts

20   or the expression of an opinion not honestly entertained may

21   constitute false or fraudulent statements.  The arrangement of

22   words or the circumstances in which they're used may convey the

23   false and deceptive appearance.

24        You should understand that deception need not be

25   premised on spoken or written words alone.  If there is

Jury Charge                    34

1    deception, the manner in which it is accomplished is

2    immaterial.

3           The false or fraudulent representation, ladies and

4    gentlemen, must relate to a material fact or matter.  A

5    material fact is one which would reasonably be expected to be

6    of concern to a reasonable and prudent person in relying upon

7    the representation or statement in making a decision with

8    respect to the granting of a loan in this instance.

9           This means, ladies and gentlemen, that if you find

10   that a particular statement of fact was false, you must

11   determine whether the statement was one that a reasonable

12   person might have considered important in making his or her

13   decision.  The same principle applies to fraudulent half truths

14   or omissions of material fact.  In order to establish a scheme

15   to defraud, the Government must also prove that the alleged

16   scheme contemplated depriving another of money or property.

17          Ladies and gentlemen, it's not necessary that the

18   Government prove that the defendants actually realized any gain

19   from the scheme or that the intended victim actually suffered a

20   loss.  In this case, it so happens that the Government does

21   contend that the proof establishes that persons were defrauded

22   and that the defendants realized gain, although whether or not

23   the scheme actually succeeded is really not the question.  You

24   may, however, consider whether it succeeded in determining

25   whether the scheme existed.

Jury Charge                                    35

1          If you find that the Government has proven beyond a

2     reasonable doubt that the scheme to defraud charged in the

3     indictment did exist and that the defendants knowingly devised

4     or participated in the scheme charged, you should then consider

5     the second element of the offense.  The second element that the

6     Government must prove beyond a reasonable doubt is the -- that

7     the defendants acted with the specific intent to defraud.

8          To act with the intent to defraud, ladies and

9     gentlemen, means to act knowingly and with the intention or

10    purpose to deceive or cheat.  In considering whether defendants

11    acted with the intent to defraud, you may consider, among other

12    things, whether they acted with a desire or purpose to bring

13    about some gain or benefit to themselves or someone else or

14    with a desire or purpose to cause some loss to someone.

15         The third element that the Government must prove

16    beyond a reasonable doubt is that in advancing, furthering, or

17    carrying out the scheme, defendants transmitted a writing,

18    signal, or sound by means of wire, radio, or television

19    communication in interstate commerce or caused such a

20    transmission to be made.  The phrase transmits means -- let me

21    start again.  The phrase transmit by means of wire, radio, or

22    television communication in interstate commerce means to send

23    from one state to another by means of telephone or telegraph

24    lines or by means of radio or television.  The phrase includes

25    a telephone conversation by a person in one state with a person

Jury Charge                                   36

1    in another or an electronic signal sent from one state to

2    another such as a fax or a financial wire.

3         Ladies and gentlemen, the Government is not required

4    to prove that the defendants actually used a wire communication

5    in interstate commerce or that defendants even intended that

6    anything be transmitted in interstate commerce by means of wire

7    or radio or television communication to further or to advance

8    or to carry out the scheme to defraud or to obtain money or

9    property by means of false or fraudulent pretenses,

10   representations, or promises.  However, the Government must

11   prove beyond a reasonable doubt that a transmission by a wire

12   or radio or television communication facility in interstate

13   commerce was, in fact, used in some manner to further or to

14   advance or to carry out the scheme to defraud.

15        The Government must also prove either that the

16   defendant used the wire, radio, television communication in

17   interstate commerce or the defendant knew that the use of the

18   wire, radio, or television communication in interstate commerce

19   would follow in the ordinary course of business events or that

20   the defendant should reasonably have anticipated that the wire,

21   radio, or television communication in interstate commerce would

22   be used.

23        Ladies and gentlemen, it's not necessary that the

24   information transmitted by means of wire, radio, or television

25   communication in interstate commerce itself was false or

1   fraudulent or contained any false or fraudulent pretenses,

2   representations or promises or contained any request for money

3   or anything of value.  However, the Government must prove

4   beyond a reasonable doubt that the use of the wire, radio,

5   television communication in interstate commerce furthered or

6   advanced or carried out the scheme in some way.

7           You should understand that each transmission by wire

8   communication in interstate commerce to advance or further or

9   carry out a scheme may be a separate violation of the wire

10  fraud statute, and in this situation, ladies and gentlemen, the

11  parties have stipulated that Chase Bank, the entity identified

12  as the victim of the fraud alleged in Counts 87 and 88 was a

13  financial institution within the meaning of the United States

14  Code.

15          Ladies and gentlemen, if you find that the Government

16  has established each of the elements of the crime of wire fraud

17  beyond a reasonable doubt, then you should find the defendant

18  guilty of that crime.  If you're not satisfied that the

19  Government has met its burden, then you must find the defendant

20  not guilty.

21          Now, ladies and gentlemen, I have a couple of

22  additional crimes to go through and then some final

23  instructions for you, but in looking at the clock, I'm going to

24  take a brief recess, let you go out, relax for a few minutes,

25  and then we'll bring you back and give you the final

Jury Charge                                    38

1    instructions.

2            Recess for ten minutes.

3                    (Recess)

4            THE COURT:  Okay, ladies and gentlemen.  Have a seat.

5    We are coming down the home stretch.  Ladies and gentlemen,

6    Counts 81 through 86 of this indictment charge the defendant,

7    Alton Coles, with structuring a currency transaction, charge

8    him with structuring to evade the reporting requirements under

9    federal law.

10           Ladies and gentlemen, the United States Code makes it

11   a crime for anyone to structure any transaction with one or

12   more domestic financial institutions in order to evade the

13   reporting requirements under the law.  Section 5313(a) of the

14   Code in its implementing regulations require the filing of a

15   government form called a currency transaction report or a CTR.

16   Those regulations require that every domestic financial

17   institution which engages in a currency transaction over

18   $10,000 must file a report with the Internal Revenue Service

19   furnishing, among other things, the identity and address of the

20   person engaging in the transaction, the person or entity, if

21   any, for whom he is acting, and the amount of the currency

22   transaction.  That currency transaction report must be filed

23   within 15 days of the transaction.

24           In order to find the defendant guilty of structuring

25   a currency transaction to evade reporting obligations, you must

Jury Charge                                    39

1    find that the Government has established the following three

2    elements beyond a reasonable doubt:  first, that the defendant

3    knew that a financial institution was legally obligated to

4    report currency transactions in excess of $10,000; second, that

5    defendant engaged in structuring of a currency transaction; and

6    third, that the defendant acted with the intent to evade the

7    reporting requirement.

8         With regard to the first element that the Government

9    must prove beyond a reasonable doubt, it must prove that at the

10   time the transaction described in the indictment occurred,

11   defendant knew that a financial institution was legally

12   obligated to report currency transactions in excess of $10,000.

13   You should understand that under the law, a financial

14   institution is defined as an insured bank under the Federal

15   Deposit Insurance Act.

16        Now, I just stated that under Section 5313, a

17   financial institution is required to file a report with the

18   Federal Government any time that the transaction involved is

19   $10,000 or more in United States currency.  That report you've

20   heard referred to is what I said a minute ago.  It's called the

21   CTR.

22        In order to satisfy the first element, the Government

23   must prove that the defendant knew that the financial

24   institution involved would be required to file that CTR for any

25   currency transaction in excess of $10,000.  The question is

Jury Charge                                40

1    whether a person acted -- the question of whether a person

2    acted with knowledge is a question of fact for you to

3    determine, like any other fact question.

4              Direct proof of knowledge is not always available,

5    and such proof is not required.  The ultimate fact of whether

6    someone knew something at a particular time, though subjective,

7    may be established by circumstantial evidence based upon a

8    person's outward manifestations, his words, his conduct, his

9    acts, and all of the surrounding circumstances disclosed by the

10   evidence and the rational and logical inferences to be drawn

11   from that evidence.

12             The second element that the Government must prove

13   beyond a reasonable doubt is that the defendant engaged in

14   structuring of a currency transaction.  You should understand,

15   ladies and gentlemen, that a currency transaction is any

16   financial transaction which includes the physical transfer of

17   currency.  For example, taking a check to the bank and cashing

18   it is a currency transaction, but depositing a check in a bank

19   is not.  Similarly, purchasing something and paying for it in

20   cash is a currency transaction, but paying for it with a check

21   or a credit card is not.

22             As I instructed you before, engaging in a currency

23   transaction in an amount greater than $10,000 requires the

24   financial institution to file that CTR.  You should understand

25   that structuring a transaction occurs when a person acting

Jury Charge                                    41

1    alone or with others conducts or attempts to conduct one or

2    more currency transactions in any amount at one or more

3    financial institutions on one or more days for the purpose of

4    evading reporting -- the reporting requirements that I just

5    described to you.

6            Structuring includes but it's not limited to breaking

7    down a sum of currency exceeding $10,000 into smaller amounts,

8    each less than $10,000, and then conducting a series of

9    separate currency transactions in those smaller amounts in

10   order to avoid the reporting requirement.  The transactions

11   need not exceed $10,000 in any single financial institution or

12   on any single day in order to constitute structuring.

13           The third element that the Government must prove

14   beyond a reasonable doubt is that the defendant engaged in

15   structuring with the intent to avoid or to evade that reporting

16   requirement.  As I've indicated to you, a person acts

17   intentionally when he acts deliberately and purposefully, and

18   defendant's acts must have been the product of defendant's

19   conscious object rather than the product of mistake or

20   accident.

21           You should understand that direct proof of

22   defendant's intent is almost never available.  However,

23   sometimes it can be shown that a person wrote or stated that at

24   a given time, that person intended a particular result.

25           Direct proof is not required however.  The ultimate

1    fact of intent, though subjective, may be established by

2    circumstantial evidence based upon defendant's outward

3    manifestations, his words, his conduct, and his acts and all of

4    the surrounding circumstances disclosed by the evidence as

5    well, again, as the -- the rational and logical inferences to

6    be drawn from those circumstances.

7              So, ladies and gentlemen, those are the elements of

8    the crime of structuring to evade the reporting requirements.

9    If the Government has established each of those elements by

10   evidence beyond a reasonable doubt, you should find the

11   defendant guilty of that crime.   If the Government has not met

12   its burden, then you must find the defendant not guilty.

13             Let's talk now about Counts 189, 190, and 191 of the

14   indictment.   They charge the defendant, Thais Thompson, with

15   making materially false statements in her grand jury testimony.

16             Ladies and gentlemen, the relevant federal statute

17   makes it a federal offense to knowingly make a false material

18   declaration to a grand jury under oath.   In order to find the

19   defendant guilty of making false statements under oath, you

20   must find that the Government has proven beyond a reasonable

21   doubt each of the five following elements:   first, that the

22   defendant gave testimony under oath before a federal grand

23   jury; second, that defendant testified as detailed in the

24   indictment; third, that the testimony was false; fourth, that

25   the defendant knew that the testimony was false when she gave

1    it; and fifth, that the false statement was material.

2          Ladies and gentlemen, a declaration is false if it is

3    untrue when it is made.  You should understand, ladies and

4    gentlemen, that a declaration is material to the grand jury's

5    investigation if it is capable of affecting or influencing the

6    grand jury inquiry or decision.  It is not necessary for the

7    Government to prove that the grand jury was, in fact, misled or

8    influenced in any way by the false declaration.

9          Ladies and gentlemen, Counts 189, 190, and 191 of the

10    indictment allege that the defendant, Thompson, knowingly made

11    several false statements under oath.  In order for you to

12    convict, the Government is not required to prove and you need

13    not find that all of the statements alleged to be false in

14    Count 189 and Count 190 and Count 191 of the indictment are

15    false.  The Government, however, must prove beyond a reasonable

16    doubt that at least one specific statement alleged in Count 189

17    or Count 190 or Count 191 was false.

18          Ladies and gentlemen, it's not sufficient that some

19    members of the jury agree that one statement is false while

20    other members of the jury agree that another statement is

21    false.  There must be at least one specific statement that each

22    of you agree was false and that each of you agree that the

23    defendant knew to be false.

24          Ladies and gentlemen, the Government is required to

25    prove beyond a reasonable doubt and you must unanimously find

1   that at least one of the same statements alleged in Count 189,

2   in Count 190, in Count 191 of the indictment was false and that

3   the defendant knew that the statement was false when the

4   defendant made the statement.

5           Ladies and gentlemen, it's a defense to the charge of

6   making materially false statements to the Federal grand jury as

7   charged in Counts 189, 190, and 191 if the evidence shows

8   either of the following:  first, that the defendant made a

9   statement in response to a question that was ambiguous or

10  capable of being understood in more than one way and the answer

11  given by the defendant to one reasonable interpretation of the

12  ambiguous question was not false; second, that defendant made a

13  statement in response to a question that was clear and

14  unambiguous but the answer to the clear question was ambiguous

15  and capable of being understood in more than one way and one

16  reasonable interpretation of the answer given by the defendant

17  was not false.

18          Ladies and gentlemen, as long as a statement or an

19  answer to a question or a reasonable interpretation of both

20  statements and answers are literally or technically true, the

21  crime of making a false statement to a federal grand jury

22  alleged in Count 189, Count 190, Count 191 of the indictment

23  has not been made out.

24          In considering the testimony alleged to be false, you

25  should view the context and sequence of the question and

Jury Charge                                    45

answer.  Words used in both should be given their normal and
customary meaning unless the context in which the words were
used clearly shows that both the person asking the question and
the witness giving the answer mutually understood that some
other meaning was to be given to the word or words.

Ladies and gentlemen, if you find that a statement or
an answer was literally or technically true, then any intent on
the part of the defendant to be ambiguous or to confuse or to
evade or even to mislead is irrelevant and you must find the
defendant not guilty.

So, ladies and gentlemen, those are the elements of
the crime of making a false statement to a federal grand jury.
If you find that the Government has established each of those
elements by evidence beyond a reasonable doubt, you should find
the defendant guilty of the crime.  If you find that the
Government has not met its burden, then you must find the
defendant not guilty.

Ladies and gentlemen, the last crime that I'm going
to define for you -- and you don't have to start clapping -- is
the crime of accessory after the fact to the crime of
conspiracy.  Count 192 of the indictment charges that on or
about June 7, 2005, Defendant Thais Thompson acted as an
accessory after the fact to the crime of conspiracy to
distribute 5 kilograms or more of cocaine or 50 grams or more
of cocaine base committed by James Morris.

1          You should understand, ladies and gentlemen, that

2     it's a Federal crime for a person to act as an accessory after

3     the fact.   An accessory after the fact is a person who, knowing

4     that the offense against the United States has been committed

5     by another, receives, relieves, comforts, or assists that

6     person in order to hinder or prevent that person's arrest,

7     trial, or punishment.

8          In order to find the defendant, Thais Thompson,

9     guilty of being an accessory after the fact, you must find that

10    the Government has established the following three elements

11    beyond a reasonable doubt:   first, that the defendant, Morris,

12    committed each of the elements of a crime of conspiracy to

13    distribute 5 kilograms or more of cocaine and 50 grams or more

14    of cocaine base, which elements I have discussed with you

15    already; second, that the defendant, Thompson, knew that Morris

16    committed the crime; and third, that with that knowledge,

17    Defendant Thompson in some way assisted Defendant Morris in

18    order to hinder or prevent the defendant Morris's arrest or

19    trial or punishment for the crime of conspiracy to distribute

20    the cocaine or cocaine base.

21         Those are the elements of the crime of being an

22    accessory after the fact.   If the Government has established

23    each of those elements by evidence beyond a reasonable doubt,

24    you should find the defendant guilty of the crime.   If the

25    Government has not met its burden, then you must find the

Jury Charge                                      47

1    defendant not guilty.

2            Ladies and gentlemen, those are all of the crimes

3    that I'm going to define for you.  I'm going to talk to you for

4    a few minutes about accomplice liability and a couple of other

5    subjects, and then I'm going to give you some final

6    instructions on how you should conduct your deliberations.

7            Several counts in this indictment you will see allege

8    that defendant committed and aided and abetted the commission

9    of an offense charged in that count.  A person may be guilty of

10   an offense because the person personally commits the offense or

11   because the person aided and abetted another in committing the

12   offense.  A person who has aided and abetted another in

13   committing an offense is often called an accomplice.  A person

14   who is an accomplice -- the person who the accomplice aids and

15   abets is known as the principal.

16           In order to find a defendant guilty of an offense

17   because the defendant aided and abetted the principal in

18   committing the offense, you must find that the Government has

19   proven beyond a reasonable doubt the following four

20   requirements:  first, that the alleged principal committed the

21   offense charged by committing each of the elements of the

22   offense charged as I have given you those elements; second,

23   that the defendant knew that the offense charged was going to

24   be committed or that they were being committed by the alleged

25   principal; third, that the defendant did some act for the

Jury Charge                                                          48

1    purpose of aiding, assisting, soliciting, facilitating, or

2    encouraging the alleged principal in committing the offense and

3    with the intent that the alleged principal would commit the

4    offense; and fourth, that the defendant's acts did in some way

5    aid, assist, facilitate, or encourage the allege principal to

6    commit the offense.

7              Ladies and gentlemen, the defendant's acts need not

8    themselves be against the law.  You should understand that

9    evidence that a -- that the defendant was merely present during

10   the commission of an offense is not enough for you to find him

11   or her guilty as an aider and abetter.  In addition, if the

12   evidence shows that the defendant knew that the offense was

13   being committed or was about to be committed, but does not

14   prove beyond a reasonable doubt that it was the defendant's

15   intent or purpose to aid, assist, encourage, facilitate, or

16   otherwise associate himself or herself with the offense, you

17   may not find the defendant guilty of the offense as an aider

18   and abetter.

19             The Government must prove beyond a reasonable doubt

20   that the defendant in some way participated in the offense

21   committed by the alleged principal as something that the

22   defendant wished to bring about or to make succeed.

23             Now, ladies and gentlemen, during the course of this

24   trial, some of the defendants testified while others did not.

25   You should understand, ladies and gentlemen, that a defendant

1    has an absolute constitutional right not to testify.  A

2    defendant has an absolute right not to offer evidence.  A

3    defendant does not even have to cross-examine witnesses.

4        The burden of proof, ladies and gentlemen, remains

5    with the Government throughout the entire trial and never

6    shifts to a defendant.  The defendant is never required to

7    prove that he or she is innocent.

8        Ladies and gentlemen, you must not attach any

9    significance to the fact that a defendant did not testify.  You

10   must not draw any adverse inference against the defendant

11   because he or she did not take the witness stand.  Do not

12   consider for any reason at all the fact that a defendant did

13   not testify.  Do not discuss that fact during your

14   deliberations or let that fact influence your decision in any

15   way.

16       Now, during the trial, you heard testimony of

17   witnesses and you heard arguments by counsel that the

18   Government did not use specific investigative techniques in

19   this case.  You heard evidence and arguments that fingerprint

20   evidence was not offered, DNA analysis and the use of narcotics

21   detection equipment was not used.

22       Ladies and gentlemen, you may consider these facts in

23   deciding whether the Government has met its burden of proof,

24   because I told you you should look at all of the evidence

25   presented or the lack of evidence presented in deciding whether

1    the defendant is guilty or not guilty.  However, ladies and

2    gentlemen, you should understand that there is no legal

3    requirement that the Government use any specific investigative

4    techniques.

5           There is no requirement that the Government use all

6    possible investigative techniques.  There is no requirement

7    that the Government attempt to take fingerprints or offer

8    fingerprint evidence or gather DNA analysis or use narcotic

9    detection equipment.  Your concern, ladies and gentlemen, in

10   this matter is to determine whether or not based upon the

11   evidence presented the defendant is guilty beyond a reasonable

12   doubt.  That should be the focus of your inquiry.

13          Finally, ladies and gentlemen, you heard evidence

14   during this trial that Monique Pullins, Asya Richardson, and

15   Thais Thompson have a reputation in the community for being

16   law-abiding citizens.  This testimony, ladies and gentlemen,

17   this character evidence should be considered by you alone with

18   all of the other evidence in the case in deciding whether the

19   Government has proved the crimes charged beyond a reasonable

20   doubt.

21          Now, those are the instructions that I'm going to

22   give you with regard to the law, with regard to the evidence,

23   with regard to the crimes charged.  Let me talk to you now

24   about your deliberations when you go out to deliberate in this

25   case.

1          Ladies and gentlemen, the first order of business for

2    you should be the selection of a foreperson.

3          MR. HETZNECKER:  Your Honor, can I see you one

4    moment?

5                        (At sidebar)

6          MR. HETZNECKER:  The instruction on offering willful

7    blindness and good faith with respect to Thais Thompson on

8    accessory after the fact was omitted.  It was part of your

9    instructions as drafted and not part of what you just read to

10   the jury.

11         THE COURT:  I don't believe that it's an appropriate

12   instruction with regard to the accessory after the fact.

13         MR. HETZNECKER:  Well, Your Honor -- Your Honor

14   provided it in your -- you changed your mind then?

15         THE COURT:  The final instructions that will go out

16   with the jury will not include that.

17         A FEMALE SPEAKER:  You took out --

18         THE COURT:  What?

19         A FEMALE SPEAKER:  -- willful blindness, and

20   remember, you took out good faith as well.

21         THE COURT:  That's right.  It's not appropriate.

22         MR. HETZNECKER:  I don't think you made that ruling.

23   I got -- the packet that I received had both --

24         THE COURT:  Well --

25         MR. HETZNECKER:  -- willful blindness and good faith.

1          THE COURT:  Well, we have been putting this together

2     and if I didn't get the final draft, that's --

3          MR. HETZNECKER:  It was my expectation that this was

4     going to be in it.  So --

5          THE COURT:  Well --

6          A FEMALE SPEAKER:  Can I just tell you, our -- we

7     understood that his representation was that the good faith was

8     only in response to willful blindness.

9          THE COURT:  That's true.

10         MR. HETZNECKER:  So Your Honor's position is this

11    will not be read to the jury?

12         THE COURT:  I don't believe it is appropriate to read

13    it to the jury at this juncture.

14         MR. HETZNECKER:  Note my objection for the record.

15         THE COURT:  All right.

16                   (Sidebar concluded)

17         THE COURT:  Okay.  As I was saying, the first order

18    of business for you should be the selection of a foreman,

19    forelady, foreperson.  The foreperson has the following

20    responsibilities, first of all, to see that the deliberations

21    get started, see that they are conducted in an orderly fashion.

22         The foreperson will also speak for the jury in open

23    court.  The foreperson will fill out the verdict slip that I

24    will send out with you, and the foreperson will sign that

25    verdict slip, and for all of that work, the foreperson doesn't

1    get one penny more than the rest of you.  So make your decision

2    as to who the foreperson of the jury is going to be, and go on

3    to the more important issues that you have to decide in this

4    matter.  You should understand that the views or the vote of a

5    foreperson is not entitled to any greater weight than the views

6    of all of your fellow jurors.

7          Ladies and gentlemen, I want to remind you that your

8    verdict, whether it's guilty or not guilty, must be unanimous.

9    To find any of the defendants guilty of an offense, every one

10   of you must agree that the Government has overcome the

11   presumption of innocence with evidence that proves each element

12   of the offense beyond a reasonable doubt.  To find any

13   defendant not guilty, every one of you must agree that the

14   Government has failed to convince you beyond a reasonable

15   doubt.

16         Ladies and gentlemen, if you decide that the

17   Government has proven any defendant guilty, then it's my

18   responsibility to decide what is an appropriate penalty.  You

19   should not consider any possible penalty or any future

20   consequence of your verdict.  Your job is to determine whether

21   based upon the evidence and testimony presented, the Government

22   has proven the charge beyond a reasonable doubt.  If you

23   determine that it has, then it becomes my responsibility to

24   deal with the matter.

25         Ladies and gentlemen, I've told you several times

1      that your verdict must be based upon the evidence received in

2      this case and the law as I've given it to you.  If I've said

3      anything during the course of this trial or done anything

4      during the course of the trial that you think indicates how I

5      feel about this matter, you are absolutely wrong.  It is your

6      job to decide this case.  As I told you earlier, it's my job to

7      make rulings with regard to evidence and see that these parties

8      get a fair trial.  It's your job to determine whether the

9      Government has met its burden of proof.

10             Ladies and gentlemen, now that all of the evidence is

11     in and you've heard all of the arguments of counsel and you've

12     heard the instructions of the Court, you are finally free to

13     talk about this case in the jury room.  I have cautioned you

14     every time you've left the jury box not to do that, but when

15     you go out to deliberate, it's your duty to talk with each

16     other about the evidence that you heard and to make every

17     reasonable effort to reach a unanimous agreement.  You should

18     talk to each other.  You should listen carefully to each

19     other's views.  You should keep an open mind and listen to what

20     your fellow jurors have to say.  You should not hesitate to

21     change your mind if you become convinced that other jurors are

22     right and that your original position was incorrect, but,

23     ladies and gentlemen, you do not ever have to change your mind

24     just because other jurors see things differently or just

25     because you want to get the case over.

1    Ladies and gentlemen, your vote must be exactly that,

2    your own vote.  It's important for you to reach a unanimous

3    agreement but only if you do so honestly and in good conscience

4    and if you listen carefully to your fellow jurors and decide

5    the case based upon the evidence presented.

6    Ladies and gentlemen, nobody is going to be allowed

7    to hear your discussions in the jury room, and no record will

8    be made of what you say.  You should all feel completely free

9    to speak your mind.

10    If you elected to take notes during the course of

11    this trial, and I saw that many of you were, your notes should

12    be used only as a memory aid.  You should not give your notes

13    any greater weight than your independent recollection of the

14    evidence.  You should rely upon your own independent

15    recollection of the evidence or the lack of evidence, and you

16    should not be unduly influenced by the notes of other jurors.

17    Notes are not entitled to any more weight than the memory and

18    impressions of each juror.

19    Ladies and gentlemen, once you start your

20    deliberations, don't talk about the case to the court officials

21    or to me or to anyone else.  If you have a question or you have

22    a message that you want to send to the Court, the foreperson

23    should write down that question or message on a piece of paper,

24    sign it, and give it to the court officials who will give it to

25    me.  I will talk with the lawyers about your inquiry, and I

Jury Charge                                           56

1    will respond as soon as I can.  In the meantime, you should go

2    on, if possible, and continue your deliberations.

3         Ladies and gentlemen, I'm going to send out a number

4    of exhibits with you.  If you want to see any other exhibits

5    that have not been sent out, you should send a message out.  I

6    will talk with counsel, and we will determine whether I can

7    appropriately give you what you've requested.

8         Finally, ladies and gentlemen, don't write down or

9    tell anyone how you or anyone else has voted during the course

10   of your deliberations.  That information should stay secret

11   until you've finished your deliberations.  If you have occasion

12   to communicate with the Court while you're deliberating, do not

13   disclose the number of jurors who have voted one way or the

14   other in the matter.

15        Finally, ladies and gentlemen, the verdict slip.  I

16   have prepared the verdict slip that is rather long, and this is

17   going to go out with you.  When you reach a unanimous verdict,

18   the foreperson should write the verdict on the form, should

19   date and sign the form, and return it to the Court and give the

20   form to my deputy who will give it to me.

21        If you decide that the Government has proven a

22   defendant guilty of any of the offenses charged beyond a

23   reasonable doubt, say so by having your foreman mark the

24   appropriate place on this verdict slip.  If you decide that the

25   Government has not proven a defendant guilty by some or all of

1    the evidence of a crime charged, say so by having your

2    foreperson mark the appropriate place on the verdict slip.

3         Now, that -- this verdict slip goes through each of

4    the crimes that I've just spent a lot of time defining for you.

5    For example, the first crime is Count One, the conspiracy to

6    distribute cocaine and cocaine base.  Each count describes what

7    the charge is and the person who is charged in that count.  For

8    instance, in Count One, charges Alton Coles, Timothy Baukman,

9    James Morris, and Monique Pullins with conspiracy to distribute

10   controlled substances, we, the jury, unanimously find as

11   follows, and then you go down through.  You'll see first is

12   Alton Coles, a place to mark either guilty or not guilty,

13   whatever your finding is.  The next page, Timothy Baukman,

14   guilty or not guilty.  Next, James Morris, guilty or not guilty

15   with regard to Count One.  Next, Monique Pullins, guilty or not

16   guilty on Count One, and it goes through each one of the counts

17   in the indictment in exactly the same manner.  It tells you

18   what the crime is, who is charged, and then gives you the

19   opportunity to make your finding on the appropriate line.

20        Ladies and gentlemen, you're here to determine

21   whether the Government has proven the guilt of the defendant

22   for the charges in the indictment beyond a reasonable doubt.

23   You're not called upon to return a verdict as to the guilt or

24   innocence of any other person or persons.  So if the evidence

25   in the case convinces you beyond a reasonable doubt of the

Jury Charge                                        58

1   guilt of a defendant, then you should find the defendant guilty

2   even though you may believe that one or more other persons are

3   also guilty, but if any reasonable doubt remains in your mind,

4   ladies and gentlemen, after an impartial consideration of all

5   of the evidence in the case, it's your duty to find a defendant

6   not guilty.

7          Now, when you go out to deliberate, only 12 jurors

8   can go out.  We have a number of alternate jurors in this case,

9   and we selected alternate jurors in the event that something

10  were to occur during the course of the trial so that one of the

11  original jurors could not say.  That happened in one instance,

12  but, ladies and gentlemen, only 12 of you are going to go out

13  to deliberate.

14         The alternate jurors, we are going to impose upon you

15  for a while longer.  We are going to take you separately to a

16  jury room to be by yourselves so that in the event that

17  something were to occur with one of the original 12 who's

18  deliberating, we would have the ability to move an alternate

19  juror into the jury room for the deliberations, but alternate

20  jurors, when you go out to the jury room that you will be

21  using, you're not to discuss this case among yourselves.  If

22  you are ultimately selected to go into the jury room and take

23  the place of one of the original 12, at that point, you will

24  have the opportunity to discuss this matter with your fellow

25  jurors with a view towards reaching a verdict in the case.

1          So with that, do we have the marshal?  By the way,

2     ladies and gentlemen, I told you that the -- we had made a copy

3     of the charge that I just spent two days giving to you.  You

4     will take that out with you, and you will have that with you so

5     that you can take a look at it as you go through the charges

6     here, the different counts in the indictment, and you can then

7     see what it was that I said with regard to the law in each of

8     the instances.

9          Mr. Finney, will you swear the --

10         THE CLERK:  Marshal --

11         THE COURT:  -- Marshal?

12         THE CLERK:  -- will you please raise your right hand

13    state your name for the record?

14         MARSHAL HIPPLE:  Marshal Gary Hipple, H I P P L E.

15              (Marshal Sworn)

16         THE COURT:  All right.  Ladies and gentlemen, the 12

17    of you, you're going to go out to the jury room to begin your

18    deliberations.  You'll have as much time as you need to reach a

19    fair decision in this matter.

20         As I said, I'm going to talk with counsel.  We will

21    send exhibits out with you, and if there is anything else you

22    need during the course of your deliberations, you should write

23    it down.  The foreperson should write it down, and I will

24    address it.

25         The alternate jurors will be taken to an alternate

1    retiring room.  All right?

2          I understand the alternates have your clothing and

3    coats and everything in Mr. Finney's office.  So Mr. Finney

4    will take you to -- out and take you to the jury room that you

5    will be using.

6                         (Pause)

7          THE COURT:  Okay.  Well, let's let them get situated.

8                         (Pause)

9          THE COURT:  Okay.  Kate, will you go see whether he's

10   cleared the area?

11                        (Pause)

12         THE COURT:  Okay.  Mr. Finney, take the jurors out.

13         THE CLERK:  Please rise.

14                      (Jury out)

15         THE COURT:  Okay.  Have a seat, counsel.  What

16   agreements have you reached with regard to these exhibits?  You

17   were going to --

18         MR. WARREN:  Judge, I -- I think Mr. Lloret and I

19   have agreed basically to send them out, and he's prepared an

20   index of the tapes by tab number.  So if the jurors want to

21   hear a particular tab number or tape, they can just tell us,

22   you know, what it is they want, and I think he's done the same

23   thing with respect to the Government's exhibit list.

24         MR. LLORET:  We do, Your Honor.  I think that

25   Mr. Warren and I and certainly other counsel to the extent that

Colloquy                                                 61

1    they want to review it, I'd like to finalize the exhibit list.

2    I have my notes and we've gone over it for several days on the

3    Government's side, those items that have been admitted.  I'm

4    sure counsel want to just take a look at that.

5           I think we should probably eliminate any items that

6    were not admitted, that were identified or not put in.  So

7    those -- that's going to have to be an editorial revision.

8    We'll just have to knock that out over the lunch break, I

9    think, but --

10          MR. WARREN:  I think that's a little bit more

11   practical than -- I mean, we had what, 300 exhibits or

12   something.  I don't know how logistically we can --

13          MR. LLORET:  More than that.  Yeah.

14          MR. WARREN:  And then this way, if they want to look

15   at something specific, they've got an index.  If they want to

16   listen to a specific tape, I think the -- the tapes were

17   referred to by tab number.  So their notes would reflect --

18          MR. LLORET:  Probably.

19          MR. WARREN:  -- and the index they have also

20   identifies who the speakers are as well as the date and time of

21   the call.  So I think that's enough information for -- to the

22   extent they want to hear one, to tell us we'd like to hear call

23   number such and such, and then I guess we would bring them back

24   out here and play the tape for them.

25          THE COURT:  That would probably be the only way we

Colloquy                                        62

1      could do it.

2              MR. LLORET:  Your Honor, we'll have -- I've made

3      arrangements to have all of the documentary and non-contraband

4      exhibits in an office downstairs that we have so that we can

5      react quickly to the jurors if they request certain documents,

6      if we can see -- you know, if they want a whole passel of

7      documents, we can just get them back.  The contraband evidence

8      we kept in a locker at ATF, the drugs and guns.

9              MR. WARREN:  They don't get that.

10             MR. LLORET:  But they -- they don't get that, but

11     obviously, I think, Your Honor, if they really need to see

12     it --

13             MR. WARREN:  I've had that.  Yeah.

14             MR. LLORET:  -- they could come out and we could

15     display it to them.

16             MR. WARREN:  I've had that happen before, and then --

17     yeah, you just stick it in the box and show it to them.  I've

18     even had it passed around the jury box.

19             THE COURT:  You're suggesting that the non-recorded

20     evidence and the non-contraband not go out unless or until they

21     ask for it.

22             MR. LLORET:  That would be my suggestion only for

23     management purposes, Your Honor.  Given the volume of exhibits,

24     I can just envision sort of a swamp of boxes going back there

25     and, you know, things sort of going kerflooey.

Colloquy                                   63

1           Now, it's -- Your Honor -- whatever Your Honor cares

2      to do, we'll do.

3           THE COURT:  Counsel, any other input?

4           MR. MCMAHON:  I think that's -- I'm agreeable to that

5      position.

6           THE COURT:  All right.  That's the way we'll handle

7      it then.

8           MR. WARREN:  Yeah, because -- I think we'd fill up

9      the deliberation room with boxes of -- of materials.

10          THE COURT:  No question about that.  All right.

11     Mr. Lloret, then you're going to go over the list with counsel,

12     and we'll be back here at 1:30.

13          MR. LLORET:  Very well, Your Honor.

14          THE COURT:  All right.

15          MR. THOMPSON:  Your Honor, I should place on the

16     record I mentioned I had an issue to resolve with Mr. Lloret.

17     We've been able to do that.

18          THE COURT:  All right.

19          MR. LLORET:  Thank you, Judge.

20          MR. MCMAHON:  That -- just procedurally, do you want

21     us back here at 1:30?

22          THE COURT:  1:30.  Yeah.

23          MR. MCMAHON:  Good.

24          THE COURT:  Yeah.

25                         (Recess)

Colloquy                                          64

1    THE COURT:  ...indictment and a copy of the Court's

2    charge that we're sending out.  Have you had the opportunity to

3    look at it and make sure it's --

4    MR. LLORET:  Judge, I trust the Court.  Mr. McMahon,

5    however, does not.  So --

6    THE COURT:  Okay.  Mr. Finney is --

7    MR. MCMAHON:  I don't trust --

8    MR. LLORET:  -- just bear that in mind.

9    MR. MCMAHON:  -- trust Mr. Lloret.  That's who.

10    THE COURT:  Mr. Finney, as soon as the attorneys have

11    had a chance to take a look at it, take it out.

12    (Recess)

13    THE COURT:  Okay.  Counsel, we've received a note

14    from the foreperson of the jury.  I don't know whether you've

15    had a chance to take a look at it.  They ask for several

16    things.  Let me go down through the list.

17    They ask for Menace tapes.

18    MR. WARREN:  They were never admitted into evidence.

19    THE COURT:  They were not admitted into evidence, and

20    I will tell the jury that.

21    MR. LLORET:  Okay.

22    THE COURT:  525HHH red notebook.

23    MR. WARREN:  Now, the problem with that, Judge, is

24    you'll recall the portions of the red notebook had some of the

25    stuff written in back and we couldn't identify who wrote it and

Colloquy                                    65

1    it's hard -- but I think what they're referring to, because the

2    next exhibits talk about tally sheets.  I think they want --

3    like 50 -- 501Z1 is a tally sheet that was seized from Mullica

4    Hill, I believe.  All right.  525HHH, they did admit

5    specifically into evidence those tally sheets with --

6              THE COURT:  I think perhaps what we ought to do is

7    make a copy of the front page of that notebook, and then the

8    tally sheet that was specifically referred to.

9              COUNSEL:  Right.

10             MR. MCMAHON:  That's -- I think that's the way to go

11   too.

12             THE COURT:  And send that out, and then we have 502P1

13   and --

14             MR. MCMAHON:  What is that?

15             MR. WARREN:  502P1?

16             MR. HARMELIN:  I believe that has to do with my

17   client.  502P1 is a blue tally book, page 3.

18             THE COURT:  Right.

19             MR. WARREN:  Tally sheets.  I think they were looking

20   at the tally sheets.

21             MR. MCMAHON:  And it's 501 --

22             MR. WARREN:  501P1 is a tally sheet for Mullica Hill.

23             THE COURT:  Okay.  So we will give them those.

24   What --

25             MR. WARREN:  New Jack City:  The Next Generation was

Colloquy                                                      66

1    admitted into evidence.

2              THE COURT:  It was admitted into evidence.  There is

3    no way for them to play it in the jury room.

4              MR. WARREN:  That is true, and I think we ought to

5    tell -- that kind of coincides their -- you see where they want

6    phone call transcripts and wires?  I think we need to advise

7    them that if they want to hear or see this stuff, they're going

8    to have to send us a note and we'll set it up and play it for

9    them.

10             THE COURT:  I think that's the only way it can be

11   dealt with.  There is no way to get it into the jury.

12             MR. LLORET:  I don't know any other way to do it.

13             THE COURT:  Yeah.  Okay.  Okay.

14             MR. WARREN:  Grand jury testimonies, I mean, that --

15   we can't send -- they don't get that.  I mean, they're going to

16   have rely on their recollection.  I think --

17             MR. LLORET:  If they're talking about the -- just the

18   transcripts that were admitted into evidence regarding Thais

19   Thompson, but it looks like they're asking for everybody's --

20             MR. MCMAHON:  No.  That's Thompson, Custis, Latney.

21   Yeah.

22             THE COURT:  They're asking for everybody's, and I

23   think the most prudent way to deal with that is simply tell

24   them that it's their recollection of the testimony --

25             MR. WARREN:  Right.

Colloquy                                            67

1          THE COURT:  -- that counts.

2          MR. WARREN:  Right.

3          MR. MCMAHON:  That's fair.

4          MR. HARMELIN:  Your Honor, if I may, I noticed on the

5     note there, they squeezed in my client's name next to Faison,

6     and I don't believe there is any grand jury testimony regarding

7     that.

8          THE COURT:  I don't believe there is either.

9          MR. WARREN:  Organizational charts all for Government

10    and defense.  Well, I didn't prepare an organizational chart.

11         MR. LLORET:  I think --

12         MR. WARREN:  I think they want the --

13         MR. LLORET:  -- Government chart, but that's the only

14    one.

15         MR. MCMAHON:  I think they probably -- I mean, I'm

16    not saying it's admissible, but they're probably referring to

17    the organizational charts I used in my closing argument.  I

18    think that's what they're talking about, because it says -- it

19    says Government and defense, and the only defense

20    organizational chart was the ones that I used in my closing

21    argument.

22         MR. LLORET:  Well, they -- they weren't admitted.

23         MR. MCMAHON:  No.  I didn't say they were.

24         MR. LLORET:  No.  I know.

25         MR. MCMAHON:  I didn't say they should be given.  I'm

Colloquy                                        68

1     just saying that I think that's what they're referring to.

2              THE COURT:  The Government's charts that were

3     admitted can be sent out, and we can ask them to be more

4     specific about defense charts.  There were no defense charts

5     actually offered into evidence in this case, right?

6              MR. MCMAHON:  No.  The only defense charts that I

7     think they could possibly be referring to, Your Honor, is the

8     defense chart that I used in my closing argument, the --

9     because I did a organizational chart myself for the closing

10    argument.  If you recall, it's right over there --

11             THE COURT:  Yes.

12             MR. MCMAHON:  -- which was an organizational chart.

13    So I'm not saying they should have it.  I'm just saying that's

14    what they're probably referring to.

15             THE COURT:  All right.

16             MR. LLORET:  Your Honor, I'll correct that.  I don't

17    think the Government's organizational chart was moved in.  I

18    think Mr. --

19             MR. WARREN:  No.  That was --

20             COUNSEL:  You're right about that.

21             MR. WARREN:  -- demonstrative, Judge.

22             MR. LLORET:  I think Mr. Bresnick referred to it just

23    as a demonstrative aid during his opening, but we never

24    actually admitted it through a witness.

25             COUNSEL:  That's correct.

Colloquy                                                    69

1              MR. WARREN:  I think -- remember, we had a big fight

2      about whether or they'd be allow to use -- when you allowed

3      them to use it, it's strictly for demonstrative purposes, and

4      that was solely the use to which it was put.

5              MR. LLORET:  I have it jotted down here, Your Honor,

6      but I think -- I just conferred with Mr. Bresnick, and neither

7      of us recall ever actually admitting that.

8              THE COURT:  We'll just simply indicate to them that

9      there are no organizational charts that can go out with them.

10             MR. MCMAHON:  Well, yeah.  I think that's fair, and I

11     think -- but I think you should say that the organizational

12     charts were --

13             MR. WARREN:  Not admitted into evidence.

14             COUNSEL:  -- no admitted evidence.  They were used

15     for demonstrative purposes only.

16             MR. WARREN:  Right.  They're not evidence.

17             MR. LLORET:  And I think the same thing could be

18     said, Your Honor, to sort of put an end to it on the grand jury

19     transcripts, that --

20             MR. WARREN:  Yeah.

21             MR. LLORET:  -- the only grand jury testimony that

22     was admitted was very specific clips relating to Ms. Thompson,

23     and other than that, there were none admitted.

24             MR. WARREN:  They're not in evidence.  Yeah.

25             MR. LLORET:  Yeah.

Colloquy                                                    70

1          THE COURT:  Okay.

2          MR. WARREN:  They want the mortgage file on the Pike

3    Creek stuff.  That was admitted.

4          THE COURT:  That was offered into evidence.

5          MR. LLORET:  Yes.

6          MR. SMITH:  Yeah, but Your Honor, I'm not sure if the

7    -- and please correct me if I'm wrong, Your Honor, but I'm not

8    sure if the Pike Creek file was here, that we received

9    everything from Pike Creek.  I'm not sure if we have all the

10   notes, memos, paperwork in both NVR as well as Pike Creek, but

11   most certainly Pike Creek.

12         MR. LLORET:  We do.  I mean, what's in evidence is in

13   evidence.

14         MR. WARREN:  Yeah.

15         THE COURT:  All right.

16         MR. WARREN:  Take Down's financial records.  That, I

17   think, they're accepting my invitation to review the stuff that

18   was moved into evidence by the Government that was seized.

19         MR. LLORET:  That's in evidence.

20         MR. WARREN:  That's in evidence.  Yeah.

21         THE COURT:  We have that?

22         MR. LLORET:  Yes.  That's with Agent -- the various

23   materials that Agent Armstrong testified to.

24         THE COURT:  All right.

25         MR. LLORET:  That will be available.

Colloquy                                    71

1            THE COURT:  Okay.  We'll tell them they can have

2      that.

3            MR. WARREN:  Easel and paper.  As long as it doesn't

4      say they sold cocaine, I have no objection to sending it back.

5            MR. LLORET:  As long as it doesn't have Mr. Warren's

6      notes all over it.

7            COUNSEL:  Was that a weasel or easel, Your Honor?

8            THE COURT:  We'll send out an easel with a stand so

9      that they can use it for their own purposes.

10           MR. WARREN:  And, you know, just for the record, they

11     seemed to have made pretty good notes of what the exhibit

12     numbers were and, you know -- I don't think they'll have any

13     trouble identifying whatever it is they want.  So --

14           THE COURT:  All right.  Mr. Finney -- well, before we

15     get to that, Mr. Lloret, what do you have?

16           MR. LLORET:  Yes, Your Honor.  There is two documents

17     that we've -- we've brought over now, Your Honor.  One is the

18     index of calls.  Let me hand up a copy of this to Your Honor.

19     the index of calls relates obviously to the various phone calls

20     that were put into evidence.

21           I've been through this on several occasions.  The --

22     there are actually two indexes.  One is by tab and goes

23     sequentially by the tab numbers under which they were

24     introduced --

25           THE COURT:  Uh-huh.

Colloquy                                                72

1        MR. LLORET:  -- and it references also the book

2   number, and the second one is actually by exhibit number and

3   cross references the tab.  So there is -- there is actually two

4   indexes or indices --

5        THE COURT:  All right.

6        MR. LLORET:  -- for the convenience of the jurors.

7   The second is the Government has put together its final trial

8   exhibit list.  I circulated that to defense, and I don't think

9   we have any disputes about the items that the Government

10  contends are in evidence.  What we've done, Your Honor, is

11  eliminate the items that were not placed into evidence, and

12  that's -- and that's that.

13       THE COURT:  All right.  Counsel agree that the index

14  and the trial exhibit list should go out with the jury?

15       MR. WARREN:  Yes, sir.  I've looked at it.  It's

16  fine.

17       THE COURT:  No objection?

18       MR. SMITH:  Does the index list have the call -- the

19  intercept by -- introduced by Mr. Warren in here.

20       MR. WARREN:  No, it doesn't.  That would be defense

21  exhibit --

22       MR. HETZNECKER:  Judge, we'll try to compile --

23  compile a list of defense exhibits so that can go out as well.

24       THE COURT:  All right.

25       MR. HETZNECKER:  We're in the process of doing that.

Colloquy                                      73

1    Judge, may I make a comment about the grand jury notes?  I

2    agree generally.  The only distinction is because

3    Ms. Thompson's evidence is specific with respect to an grand

4    jury testimony, I simply would like the jury to be informed

5    that since it was two weeks ago, that if they want to hear it,

6    they can request to hear it rather than sending the transcript

7    out.  In other words  --

8              MR. LLORET:  It was read to them.

9              THE COURT:  It was read to them, I believe.  You

10   don't have a --

11             MR. HETZNECKER:  No, but if it was -- but if they

12   have questions about it, that they're certainly able to hear it

13   again if they want to hear that evidence again as opposed to

14   sending the transcript

15             THE COURT:  You mean it can be read to them again.

16             MR. HETZNECKER:  Correct.

17             THE COURT:  All right.

18             MR. WARREN:  I've got -- for Mr. Smith's -- I've got

19   DC-10, which was just the transcript of the -- now, I only

20   played four pages.

21             THE COURT:  Well, why don't you make a list of the --

22             MR. WARREN:  We are.

23             THE COURT:  -- defense exhibits, and we will take a

24   look at that and get that out.  Okay?  Mr. Lloret?

25             MR. LLORET:  I guess the final thing I wanted to ask

Colloquy                                                        74

1    Your Honor, does Your Honor want these documents for review

2    before they're sent back to the jury or not?

3              THE COURT:  I will take a look at them, but counsel

4    have all looked at them.  Counsel have agreed that there is no

5    problem with sending those out, that they represent an

6    appropriate index of calls, an appropriate index of exhibits.

7              MR. MCMAHON:  Yes, Your Honor.

8              THE COURT:  All right.

9              MR. WARREN:  Yes, Your Honor.

10             MR. HARMELIN:  Yes, Your Honor.

11             MR. WARREN:  Like section 4, exculpatory evidence,

12   they've carved that out.

13             MR. LLORET:  No.  None of that in there.  Okay.

14   Thanks, Your Honor.

15             THE COURT:  All right.

16             MR. LLORET:  Shall we mark these, Your Honor, in some

17   fashion?

18             MR. WARREN:  Call them court exhibits.

19             MR. LLORET:  I can mark them with Government's --

20   pick a Government's exhibit in the 800 series just so that they

21   have an identifier on them for the record.

22             THE COURT:  Well, they would not be listed on the

23   list though.

24             MR. LLORET:  We'd get into a self referential

25   problem.

Colloquy                                    75

1          MR. WARREN:  We can have these as -- you know, I've

2     had -- the last time we did that, I think we just marked it as

3     court exhibits.

4          THE COURT:  I think it would appropriate.  Counsel

5     have all agreed that they should go out with the jury.  We'll

6     mark them as Court exhibit 1 and 2.

7          MR. LLORET:  And, Your Honor, if Your Honor could

8     give -- I always -- I mean, this is a great convenience, I

9     think, for the jury, but if they can be cautioned again that

10    obviously, this is not evidence.  It's done for their

11    convenience, and the evidence is -- is the evidence.

12         THE COURT:  All right.

13         MR. LLORET:  And their recollection controls.

14         THE COURT:  All right.

15         MR. LLORET:  Thank you, Your Honor.  Your Honor, I'll

16    hand these up to the Court.

17         THE COURT:  Okay.

18                          (Pause)

19         MR. LLORET:  Your Honor, Mr. -- Agent Armstrong

20    raises a point which I guess is perhaps we could ask the

21    jurors, if they want the whole 700 series that Agent Armstrong

22    relied upon in creating financial -- obviously, they're

23    available and we can give them back to them.  That's a

24    substantial volume of documents.  I think at least three or

25    four boxes.

Colloquy                                                76

1        We're fine with that, but if they want to be more

2   specific -- I don't know that they can be, but if they can be

3   more specific, we can try to isolate for them, but if they want

4   the whole -- the whole thing, we'll give them the whole thing

5   gladly.

6        MR. WARREN:  Judge, I think they're responding to my

7   argument to take a look at these records, because they weren't

8   really kept all that uniformly or that much together to begin

9   with.  I mean, that's --

10        THE COURT:  Well, we will tell them that they're --

11   the documents are in evidence.  There are boxes full of them.

12   If they want to be more specific, they can do that.  If they

13   want --

14        MR. LLORET:  If they want them all --

15        THE COURT:  -- all of them, we will send them out.

16        MR. LLORET:  That's fine.  Thank you, Your Honor.

17                         (Pause)

18        THE COURT:  Okay.  Mr. Finney, do you want to bring

19   the jurors in?

20                         (Pause)

21        MR. LLORET:  Your Honor, if I may address something

22   with the Court and with counsel, I'm aware that the --

23   obviously, the transcripts are not in evidence --

24        THE CLERK:  Please rise.

25        THE COURT:  We'll talk about it at sidebar,

Colloquy                                    77

1    Mr. Lloret.

2              MR. LLORET:  Very well.

3                        (Jury in)

4              THE COURT:  Okay.  Ladies and gentlemen, have a seat.

5    The foreperson of your jury has sent out a request for certain

6    exhibits.  I want to go through your request and tell you what

7    we can give you and what we can't.

8              Ladies and gentlemen, with regard to the first

9    request, Menace tapes, the Menace tapes were not offered into

10   evidence during the course of this trial.  They are not

11   available for your consideration.

12             Exhibit 525HHH, 502P1, and 501Z1, with regard to

13   525HHH, to the extent that that was used during the course of

14   the trial, we will send that exhibit out to you.  502P1 and

15   502Z1 -- 501Z1 we will send out for your consideration.

16             Ladies and gentlemen, the request for phone calls --

17   phone call transcripts and wires, we do not have an ability to

18   send out to you the recording or wires of those phone calls.

19   If you want to hear any phone call, we can play it for you, but

20   we will have to bring you back into court to hear.

21             The next request is New Jack City: The Next

22   Generation.  Again, that videotape was shown to you.  If you

23   wish to see it again, we can play it for you, but it will have

24   to be out here in the courtroom.  We can -- we do not have the

25   ability to play that for you back in the jury room.

1          Grand jury testimony, with regard to the grand jury

2     testimony, that testimony was not offered into evidence, and we

3     do not have that testimony for you with the exception you heard

4     read certain excerpts from testimony with regard to Thais

5     Thompson.  If you wish to have those sections reread to you, we

6     can do that.

7          Organizational charts, there were no organizational

8     charts actually offered into evidence during the course of the

9     trial.  So those are not available.

10         NVR mortgage paperwork, Pike Creek file, we have

11    those exhibits.  They were offered into evidence during the

12    trial.  We will send them out with you.

13         Take Down financial records, I am advised that the

14    Take Down financial records are in probably four large boxes.

15    We can send those boxes out to you if you want all of those

16    records.  They were offered into evidence during the trial.

17    On the other hand, if you request specific records, we will try

18    to find them and give those to you.

19         So it's entirely up to you, ladies and gentlemen.  If

20    you want all of the records in the jury room, you may have

21    them.  If you want some of them, specify exactly what you'd

22    like to have.

23         And easel and paper, we can do that.  We'll give you

24    an easel and paper and even writing instruments for it.  Okay?

25         Now, for your convenience, ladies and gentlemen,

Colloquy                                             79

1    counsel have agreed to send out as -- what we've marked Court

2    exhibit 1, Court exhibit 2.  They are an index of the calls

3    that were made and which you heard and which you saw the

4    transcripts of.  There is also an index of trial exhibits, all

5    the trial exhibits.  Counsel have agreed that this index, court

6    exhibit 1 and court exhibit 2, both accurately reflect the --

7    and index the calls and index exhibits.  So we're going to send

8    that out for your convenience to help you determine what it is

9    you may want to see or hear.  Okay?

10              Ladies and gentlemen, I'm going to send you back out

11   at this point and ask you to continue your deliberations.

12   Again, if there are any additional requests and based upon what

13   I have said to you, I imagine there will be.  But in any event,

14   write down the request, specific request, and we will attempt

15   to accommodate your request.  All right?

16              Counsel, anything further?

17              MR. MCMAHON:  No, Your Honor.

18              MR. WARREN:  No, sir.

19              THE COURT:  All right.  Mr. Finney, you want to take

20   the jury out?

21              THE CLERK:  Please rise.

22                        (Jury out)

23              THE COURT:  Counsel, Mr. Lloret, you were saying

24   something.

25              MR. LLORET:  I was just saying, Your Honor, what

Colloquy                                    80

1    we've done is based on the list, we've taken and cleaned out

2    the transcript list.  I don't know what counsel's preference

3    is, whether it's just to have the jurors listen to the tapes

4    with transcripts in hand as they listen to the tapes, but I'm

5    going to have to have the staff go and collect those books and

6    get them all cleaned up if we're going to do that.  We have to

7    have at least 12 of them cleaned up.  So that there are certain

8    tabs in there that need to be pulled and things like that.

9              MR. WARREN:  I mean, there are three transcript books

10   are sitting there --

11             MR. LLORET:  Yeah.

12             MR. WARREN:  -- for them.  I mean --

13             MR. LLORET:  I just want to make sure that we look at

14   those books and make sure they conform.

15             THE COURT:  I think you should look at them so that

16   anything that should not be in them at this point is not in

17   them.  Counsel, it might save an awful lot of trouble if

18   counsel could agree as to those transcript books and let them

19   go out.  Then we would not have the jury coming back trying to

20   hear phone calls, but that's entirely up to you.

21             MR. LLORET:  I'd love to, Judge, but as you'll

22   recall, some of the positions we took is that the transcripts

23   don't accurately --

24             THE COURT:  Right.

25             MR. LLORET:  -- reflect what was said on the tapes,

Colloquy                                        81

1    and I'd be derelict in my duty if I let them go back there

2    without listening to the stuff.

3              THE COURT:  All right.  I understand your position.

4                           (Pause)

5              THE COURT:  Okay.  Counsel, is there anything else at

6    this juncture?

7              MR. LLORET:  Your Honor, I'll say I'm going to

8    explore with my office the possibility of having a computer

9    that's available with a disk burn.  The problems are typically

10   that there is also sorts of Government material on these

11   computers in the form of software, but hopefully, I can get one

12   that's clean that the jury can take with it, and that would

13   probably obviate a lot of issues.

14             THE COURT:  That would solve a lot of problems.

15             MR. WARREN:  Yeah.  If they can do it back there,

16   that's fine.

17             MR. LLORET:  All right.  I'll look into that.

18             MR. WARREN:  And assuming that somebody is computer

19   -- I mean, it's a pretty simple exercise.

20             THE COURT:  Well, that's the next question, is

21   anybody able to do it.

22             MR. WARREN:  Anybody on the jury computer -- assuming

23   that -- I'm sure we can just give them a disk burner back there

24   that just has the admissible stuff on it.  Then the next

25   question would be can we get somebody back there that actually

Colloquy                                                        82

1      play the stuff.

2              THE COURT:  I'm sure Agent Horay would be happy to go

3      back.

4              MR. WARREN:  Oh, I'm sure she would.  I'll tell you

5      what, you know, and then we can send a representative from the

6      defense back there to, right?

7              MR. LLORET:  Well, Your Honor, the other thing was

8      Mr. Hetznecker mentioned that there may be a couple of

9      recordings that need to be added to that list which I don't

10     think is as much of a problem is if there is something that

11     needs to be taken off.  So I'm going to check that right now.

12             THE COURT:  All right.  Well, talk to them and --

13             MR. LLORET:  Yeah.

14             THE COURT:  -- see whether you agree.

15             MR. LLORET:  Okay.

16             THE COURT:  Okay.  The only other comment I'd make is

17     that several of these jurors evidently are smokers, and they

18     have been taken out to smoke privately.

19             MR. WARREN:  I object to that, Judge.  You know --

20             THE COURT:  In this day and age, you wonder why

21     anybody would, but in any event --

22             COUNSEL:  Including Mr. Warren.

23             COUNSEL:  Especially Mr. Warren.  It really helps

24     with the flu too, you know, but --

25             THE COURT:  All right.  Well, the --

Colloquy                                83

1              MR. WARREN:  I have no problem if they go out.  I

2     mean --

3              MR. LLORET:  No.

4              MR. WARREN:  -- none whatsoever, Judge.

5              THE COURT:  The marshals usually take them down to a

6     private place.

7              MR. LLORET:  Well, Your Honor, we have several items

8     to take care of and I have to go look at documents, make copies

9     of some of the items like 525HHH.  So with Your Honor's

10    permission, I'll go take care of those.

11             THE COURT:  Go right ahead, and counsel --

12             MR. WARREN:  I'm here, Judge.

13             THE COURT:  -- I'm not going to -- I'm going to ask

14    that you stay around to see what may happen next.  I don't know

15    how long this -- the jury is going to want to deliberate, and

16    perhaps it won't be necessary for you to be here all the time

17    as long as you're available, but at least for the time being,

18    stay around.

19             MR. WARREN:  That's fine.

20             MR. LLORET:  Okay.  Thanks, Your Honor.

21                            (Recess)

22             THE COURT:  Mr. Lloret, there was some question about

23    the indictment that went out and some question about some

24    language in it.

25             MR. LLORET:  Yes, Your Honor.

Colloquy                                              84

1          THE COURT:  And based upon your agreement with

2     Mr. Powell and Mr. Finney amended the language that was

3     objectionable.

4          MR. LLORET:  Yes, Your Honor.  Your Honor, if I can

5     just -- I'll just make the record.  It was at page 20 of the

6     redacted indictment, paragraph 78.  This was an allegation that

7     on or about August 10th of 2005, Defendants James Morris and

8     Thais Thompson possessed approximately $559,396.21 in drug

9     proceeds, and the original read several kilo wrappers.  The

10    amendment that's been agreed to by Mr. Powell and Mr. Thompson

11    and I is that it would read in drug proceeds, wrapping

12    material, and then proceed.  So it's a neutral language as

13    opposed to the kilo wrappers.

14         THE COURT:  All right.  And everyone has agreed that

15    that can be done?

16         MR. LLORET:  Your Honor, there is no objections from

17    other defense counsel.  Obviously, this was at the suggestion

18    of Mr. Powell and Mr. Thompson, and I agreed to that.

19         THE COURT:  It's all right.

20         MR. LLORET:  Thank you.

21         THE COURT:  Mr. Finney, would you take the amended --

22         MR. LLORET:  Thank you, sir.

23         THE COURT:  -- redacted.

24         MR. LLORET:  The amended redacted.  Thank you,

25    Your Honor.  Mike, I'll be downstairs.

Colloquy                                          85

1              MR. BRESNICK:  Fine.  I have your cell phone.

2              MR. LLORET:  Okay.

3              MR. BRESNICK:  Thank you.

4                          (Recess)

5              MR. WARREN:  I've gone over -- we've gone over the

6      exhibits, Your Honor.

7              THE COURT:  I just want to make sure there is no

8      problem.

9                          (Pause)

10             THE COURT:  Okay.  Counsel, Mr. Finney said --

11     advised me that you had gotten together the exhibits that the

12     jury requested and you have them, and everybody agrees that

13     they are the proper exhibits and can go out.  Is that correct?

14             MR. WARREN:  That's correct, Judge.  We looked at

15     them, all four of us did.

16             MR. MCMAHON:  Yes, we did, Your Honor.

17             MR. WARREN:  They're fine.

18             MR. MCMAHON:  That is correct.

19             MR. WARREN:  And we have not heard back from them on

20     whether or not they -- what, if anything, they wanted, the Take

21     Down business records.  We're just waiting to hear what --

22     what, if anything, they've got to  say about it.  So --

23             THE COURT:  Okay.  Mr. Hetznecker?

24             MR. HETZNECKER:  Yeah.  Your Honor, we have a list of

25     defense exhibits that have been handwritten out.  We just need

Colloquy                                    86

1      copies that we have a copy as well.  This will go out as well

2      if the Government is agreeable.

3              MR. LLORET:  All right.  I'll take a copy and review

4      it, Your Honor, but I don't think I'm going to have a big

5      problem.

6              MR. WARREN  Please don't stick it in the tally sheet

7      folder.

8              THE COURT:  If there is no objection, Mr. Lloret,

9      just give it to Mr. Finney and he'll take it --

10             MR. LLORET:  We'll do.

11             THE COURT:  -- out without us convening --

12             MR. LLORET:  Reconvening.

13             THE COURT:  -- another conference.

14             MR. LLORET:  Okay.  Thank you, Your Honor.

15             THE COURT:  Okay.

16             MR. WARREN:  Do you want us to hang out here, Judge?

17             THE COURT:  It's four o'clock.  They're going to be

18     going home at 5:00.  So yes.  Okay.

19                          (Recess)

20             THE CLERK:  Please rise.

21                          (Jury in)

22             THE COURT:  Okay.  Have a seat, ladies and gentlemen.

23     It is now five o'clock, and we are going to recess for the day,

24     but before we recess, I want to caution you again.

25             The 12 of you who are in the jury room adjacent to

Colloquy                                    87

1    this courtroom and the 6 of you who are in another jury room as

2    alternates, we don't want you discussing this case with anyone,

3    and we don't want anyone discussing the case with you.  We're

4    going to ask you to be back tomorrow at 9:15 ready to go.

5         When you come in tomorrow, the 12 of you who are

6    deliberating at the present time will return to this courtroom

7    and to this jury room adjacent to the courtroom.  The alternate

8    jurors, you will return to the jury room that you have been

9    using since the deliberations started.

10        Don't talk to each other about this case between now

11   and tomorrow morning.  When you leave here, you're going to be

12   going home.  You may be walking out of here together, but don't

13   discuss the case among yourselves.  Do your deliberation in the

14   jury room where they should be done.  Don't talk to each other

15   outside of the jury room, and when you return tomorrow, when

16   you return to the jury room, when all of you are assembled,

17   when all of you are there in the jury room, then you can begin

18   your deliberations.  I will not bring you back into court

19   tomorrow morning first thing.  Just go right into the jury

20   room, and when all of you are there, then you can begin your

21   deliberations tomorrow and continue your deliberations.

22        And the jurors who are alternates, as I said, you

23   will go back to the jury room that you are using at the present

24   time, and there will be somebody there with you.  Okay?

25        It's five o'clock.  We'll see you tomorrow at 9:15.

Colloquy                                                  88

1    Counsel -- well, ladies and gentlemen, you are excused.

2    Mr. Finney, will you take the jurors out?

3              THE CLERK:  Please rise.

4                   (Jury out)

5              THE COURT:  Okay.  Counsel, I'm not going to require

6    that you be here tomorrow at 9:15, but I'm going to require

7    that you give Mr. Finney your cell phone number and that you be

8    available within 15 minutes so that if we get a question or we

9    get a request for an exhibit or something like that, you can

10   get back here and we can deal with it.

11             MR. MCMAHON:  Fine.

12             THE COURT:  Okay.

13             MR. MCMAHON:  Thank you.

14             MR. LLORET:  Very well, Your Honor.

15             THE COURT:  Okay?

16             MR. WARREN:  No problem, Judge.  Very well.

17             MR. HARMELIN:  Your Honor, it's impractical for me --

18   impracticable for me to do anything other than come down since,

19   you know, I couldn't possibly get here from West Chester in 15

20   minutes.  What time would you like me to be down here?  Is 9:30

21   early enough?

22             THE COURT:  Yes, indeed.

23             MR. HARMELIN:  Okay.

24             THE COURT:  I would think so, and we'll open up the

25   law library downstairs for you.

Colloquy                                           89

1          MR. MCMAHON:  Go see a movie or something.

2          MR. HARMELIN:  Thank you.

3          THE COURT:  Mr. Lloret, there was some discussion

4     earlier about whether or not you could make arrangements to get

5     a computer that could --

6          MR. WARREN:  Be used and played by them.

7          MR. LLORET:  Yes.

8          THE COURT:  -- play the audiotapes or videotapes in

9     the jury room.  Have you made any progress on that?

10          MR. LLORET:  Yes, Your Honor.  I was advised by the

11     computer people over at our office that they'll be able to have

12     a clean computer.  They have to go in and inspect the computer

13     and clean it off basically before they give it, but -- but they

14     should have one available by about midmorning tomorrow morning.

15     So we should be in a position.  We'll have a disk with all of

16     the pertinent calls or the calls in evidence, and we'll have a

17     computer available for the jury to -- and they can take it

18     back.

19          THE COURT:  Okay.  Well, then the next problem will

20     be if they make requests of this nature, we're going to have to

21     determine whether anybody on that jury is able to deal with the

22     computer and play the --

23          MR. LLORET:  Judge, I think the --

24          THE COURT:  -- tapes.

25          MR. LLORET:  I anticipate that, although, obviously,

Colloquy                                          90

1    we can bring them in here and show them, but I think the

2    program is sufficiently simple in terms of it's really just

3    pull up a screen and double click on the -- on the file that

4    you want, and it's by session number.  So I think they'll be in

5    pretty good shape, but we'll -- we'll play that by ear.

6              THE COURT:  All right.

7              MR. LLORET:  Deal with that.

8              THE COURT:  Does any -- do any defense counsel have

9    any objection to that?

10             MR. MCMAHON:  No.

11             MR. WARREN:  No.  In fact --

12             COUNSEL:  No.

13             MR. WARREN:  -- I think we joined in the request that

14   that option be made -- be made available to the jury.

15             THE COURT:  All right.

16             MR. LLORET:  The only question I have, Your Honor, is

17   should I have the -- the New Jack City video put on that disk

18   as well?

19             THE COURT:  You should certainly do that in the event

20   that they want to see that.

21             MR. LLORET:  We'll do that.

22             MR. WARREN:  I think it should be first.

23             MR. LLORET:  Okay.

24             THE COURT:  All right.  We'll see you tomorrow some

25   time, gentlemen.

1           (Court Adjourned)

2                * * * * *

3           C E R T I F I C A T I O N

4      I, Maureen Emmons, court approved transcriber,

5    certify that the foregoing is a correct transcript from the

6    official electronic sound recording of the proceedings in the

7    above-entitled matter.

8

9    _____          Date: 04/21/08

10    MAUREEN EMMONS

11    DIANA DOMAN TRANSCRIBING