UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,       )
                                )     Philadelphia, PA
                                )     CR-05-440
        vs.                     )
                                )     February 29, 2008
ALTON COLES a/k/a NASEEM COLES, )
et al.,                         )
                                )
        Defendant.              )

TRANSCRIPT OF TRIAL
BEFORE THE HONORABLE R. BARCLAY SURRICK
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Government:          MICHAEL J. BRESNICK, ESQUIRE
                             RICHARD A. LLORET, ESQUIRE
                             U.S. ATTORNEY'S OFFICE
                             615 Chestnut Street, Suite 1250
                             Philadelphia, PA 19106

For the Defendant:           CHRISTOPHER D. WARREN, ESQUIRE
Alton Coles                  Law Office of Christopher Warren
                             1500 Walnut Street
                             Philadelphia, PA 19102

For the Defendant:           EMILY CHERNIACK, ESQUIRE
Timothy Baukman              Law Office of Jack McMahon
                             1500 Walnut Street, Suite 900
                             Philadelphia, PA 19102

Audio Operator               INNA GOLDSHTEYN

Transcribed by:              DIANA DOMAN TRANSCRIBING
                             P.O. Box 129
                             Gibbsboro, New Jersey 08026-129
                             (856) 435-7172
                             FAX:  (856) 435-7124
                             Email:  Dianadoman@comcast.net

Proceedings recorded by electronic sound recording; transcript
produced by transcription service



(Appearances continued)

For the Defendant:                LAURENCE HARMELIN, ESQUIRE
Monique Pullins                   P.O.  Box 3574
                                  Westchester, PA  19381


For the Defendant:                RONALD A. SMITH, ESQUIRE
Asya Richardson                   Ronald A. Smith and Associates
                                  1617 JFK Boulevard, Suite 1240
                                  Philadelphia, PA  19103


For the Defendant:                PAUL J. HETZNECKER, ESQUIRE
Thais Thompson                    1420 Walnut Street, Suite 911
                                  Philadelphia, PA  19102


For the Defendant:                RONALD THOMPSON, ESQUIRE
James Morris                      3002 Lincoln Drive
                                  Suite J
                                  Marlton, NJ 08053

                                  WAYNE POWELL, ESQUIRE
                                  811 Church Road
                                  101 Parragon Building
                                  Cherry Hill, NJ 08002

3

I N D E X

PAGE

Jury Question #1                    4

Colloquy                                    4

1              (Court in Session)

2              THE COURT:  Okay.  Counsel, you have taken a look at

3    the question.  I'll hear whatever input you want to give.

4    Mr. Lloret?

5              MR. LLORET:  Certainly, Your Honor.  Your Honor, I

6    think that the -- in reviewing the question, it really boils

7    down to an analysis of the statutory language.

8              Sort of going back to first principles, the statute,

9    848 Section C which defines a continuing criminal enterprise,

10   part 2A says that the violation is part of a continuing series

11   of violations, and in the relevant section, it says --

12              "...which are undertaken by such person in concert

13              with five or more other persons with respect to whom

14              such person occupies a position of organizer, a

15              supervisory position, or any other position of

16              management."

17              In looking at the question, Your Honor, it seems that

18   the jury is parsing this as does each defendant need to have

19   been found to have individually managed, organized, or

20   supervised five or more people.  I believe that their focus is

21   a little off and needs to be corrected.

22              The focus is whether the person occupies a position,

23   not whether the person hands-on manages somebody or doesn't

24   manage somebody.  So for instance, Your Honor, in posit a

25   organization where a -- a sophisticated drug dealer has only

Colloquy                                              5

1    three close confidants that he actually does hand-to-hand

2    contact with and the rest of the organization really doesn't

3    know him or doesn't get involved with him, nevertheless, he can

4    occupy a position of management, supervisory position or

5    organizational position with respect to a large number of

6    individuals, certainly in excess of five.

7            A similar kind of analysis is at hand when one talks

8    about dominion and control, that possession doesn't require

9    that somebody have the gun in their pocket if they exercised

10   dominion and control, that is, they have the capacity -- the

11   capacity to exercise that organizational, managerial, or

12   supervisory control.

13           So in this -- in this situation in response to this,

14   I suggest, Your Honor, that the jury be carefully instructed

15   again about the statutory language, that it is the -- the

16   crucial distinction, the crucial issue is whether the person

17   occupies a position of organized or supervisory position or any

18   other position of management, and particularly, whether they

19   have the capacity to do the things that one ordinarily

20   associates with an organizer, a supervisor, or management, not

21   whether they have, for instance -- and I don't know that

22   specific examples are necessary, but the contrast is often

23   somewhat troublesome, because you start getting into details,

24   but I think that's where they have to be refocused.

25           It's certainly the case that each defendant's

1    culpability has to be evaluated as to each defendant.  There is

2    no question of that, and I think where they underline the word

3    each, they can be reassured that each defendant has to be

4    evaluated, but I think they've gotten a little off track in --

5    in the way they're phrasing the last sort of part of that

6    question and they need to be refocused on the statutory

7    language.  Thank you, Your Honor.

8                MR. WARREN:  Judge, I think the answer to this

9    question, I kind of vacillated, went back and forth, but I

10   think the answer to this question is found in the charge you

11   recently read to the jury where you say the phrase in concert

12   with five or more persons means some type of agreement or joint

13   action, whether direct or indirect, with at least five other

14   persons.  So you've got to have an agreement with at least five

15   other persons.  It doesn't have to be at the same time, but you

16   have to have an agreement with at least five other persons

17   during the time period that the continuing criminal enterprise

18   was acting.

19                And then the last sentence in the second paragraph on

20   that in concert was the section that says the Government is not

21   required to prove that the defendant managed, supervised, or

22   organized these five or more persons at the same time.  I think

23   the converse of that is that the defendant in order to be

24   convicted of this statute, you have to have an agreement with

25   at least five other people, direct or indirect, I think the

Colloquy                                                          7

1    language that they're talking about in their question focuses

2    upon that direct or indirect language in this charge, and I

3    think that's a reference to proof of the agreement.  Joint

4    action or the agreement can be proved either directly or

5    indirectly, but I think you do have to exercise managerial,

6    supervisory, or organizational control over five or more

7    individuals.  Now, they don't have to be the same five at any

8    given point in time.

9             THE COURT:  Well, the jury has asked whether you have

10   to individually manage, organize, or supervise five or more

11   people.

12            MR. WARREN:  I think so.  I think yes.  I think what

13   differentiates a -- what differentiates an ordinary member of a

14   conspiracy from a drug kingpin as the statute is

15   euphemistically referred to is that you do exercise

16   organization, and it can be more than one individual as we

17   charge the jury, but I think in order to convict either

18   Mr. Coles or Mr. Baukman, they would have to find that each

19   individual defendant exercised organization, managerial, or

20   supervisory control over four -- five or more individuals.

21   That would be my position.

22            THE COURT:  Mr. Lloret, what is your response to

23   that?

24            MR. LLORET:  I think, you know, not to -- not to

25   quibble, but I think in this instance, a careful reading is

Colloquy                                          8

1    appropriate.  When Mr. Warren says to exercise, again, I have

2    to look back at the statute, and I have to say -- and let me --

3    the Court's charge is instructive, Your Honor.  There is a

4    couple of things that are instructive that have already been

5    charged, and I think correctly.

6         First, the element itself, Your Honor, doesn't speak

7    of exercise.  It -- it says fourth, that the defendant occupies

8    the position of an organizer -- and this is at page 41 of the

9    Court's -- well, this is the draft instruction, Your Honor, but

10   this is the elements of CCE.  It says occupied a position of an

11   organizer, supervisor, or manager.

12        Now, the question of whether a conspiracy exists I

13   think is a separate element.  I mean, the -- the question of

14   whether there is a -- an agreement with five or more persons,

15   yes, there does have to be five or more people involved, but

16   the specific element that we're talking about, Your Honor, and

17   I think the jury is very focused on this and they indicate that

18   they're focused on it is whether he occupies a position.

19        So it doesn't say in the statute, it doesn't say in

20   the instruction that someone exercised, and that's not the verb

21   that's used.  So I think it would be slightly misleading to

22   tell the jury that one has to exercise.

23        I think we are safest when we use the statutory

24   language and reemphasize that that is what they have to find,

25   that they occupied a position.

Colloquy                                                      9

1          Now, with respect to explaining that, I think the
2     Court really has in many -- in many instances, for instance,
3     where it says means some type of agreement or joint action,
4     whether direct or indirect, it certainly suggests in that and
5     certainly can be clarified for them that the occupy a position
6     does not have to be direct.  It can be direct or indirect, that
7     is, the agreement can be direct or indirect with five or more
8     other persons, and I think it's clear under some of the
9     examples that I've given that the occupancy of a position of an
10    organizer, supervisor, or manager does not require that a
11    defendant directly manage five people in the active sense.  He
12    can occupy a position, and that's -- that's my point,
13    Your Honor.  I think it's an important one here.
14         THE COURT:  If the individual supervises or manages
15    or organizes several people who in turn organize others, then
16    the fact that there has been that kind of a delegation of
17    authority doesn't preclude a finding of -- I think that's where
18    this jury is focusing.  They're trying to determine whether you
19    have to have actually managed or organized one, two, three,
20    four people, and they're trying to figure out who they were.
21         MR. LLORET:  Exactly, Your Honor.  I think that is,
22    and that's why I say -- and this -- this sounds like a fine
23    philosophical point, but, Your Honor, sometimes fine
24    philosophical points intersect with the law.  This is such an
25    occasion.

Colloquy                                    10

1          They're really -- they're veering off into active

2     verbs, and they're saying does somebody have to manage,

3     supervise, or organize five or more people.  Your Honor, that

4     would be sufficient for a finding under the statute; that is,

5     if they found that, it would be sufficient, but I say,

6     Your Honor, it's not necessarily.  That is, there can be the

7     situation that Your Honor posits where there is indirect --

8          THE COURT:  Well --

9          MR. LLORET:  -- supervisory position.

10          THE COURT:  -- so isn't an appropriate response to

11     this the answer the question is yes, however, you can supervise

12     three or more persons who may in turn supervise the activities

13     of others and still be found to have supervised five or more

14     people.

15          MR. WARREN:  Judge, I would --

16          THE COURT:  The fact that there is a delegation of

17     responsibility doesn't detract from that.

18          MR. WARREN:  Well --

19          MR. LLORET:  That is true, Your Honor, but I think

20     there -- it's not just delegation that -- I think it is --

21     delegation is sort of a counter example to the sort of direct

22     supervision model, which is clearly not -- it's one part of

23     what can be liability, but it's not the whole scope.

24          There is the direct supervision.  There is the

25     delegation situation, but there is also, Your Honor, I think --

Colloquy                                        11

1    and this is why I'm so insistent about the actual language of

2    the statute being reemphasized to them.  The statute does not

3    make it -- it does not prescribe managing, supervising, or

4    controlling or organizing.  What it says is that the person has

5    to occupy a position, and I think the safest way to instruct

6    the jury so that it's -- it's a clear -- and it clearly

7    complies with the -- the statute and with the Third Circuit

8    case law and other case law is that the person -- you must find

9    that the person occupies a position of supervisory management,

10   managerial, or -- well, I think the language, it's

11   organization, supervisory, or managerial position under the

12   statute, and that is because in this case, it may be -- and the

13   facts may -- may convince the jury that Tim Baukman was every

14   bit a co-partner with Alton Coles but was not as actively

15   involved in the day-to-day talking on the phone with ten

16   people.

17          Now, it seems to me, Your Honor, that under the case

18   law and under the statute in particular, if they find that Tim

19   Baukman occupied a position of management, supervision, or --

20   or organization as a co-equal with Alton Coles, they can

21   legitimately find that it was with respect to five or more

22   persons without finding that Tim Baukman was on the phone

23   telling Hakiem Johnson what to do or so and so what to do.

24          So I -- I stress, Your Honor, that I think the safest

25   course in this is to utilize somehow in the instruction the

1   actual statutory prohibition, which is on occupying a position.

2   Thank you, Your Honor.

3           THE COURT:  All right.

4           MR. WARREN:  Judge, I would point out the first time

5   the jury asked this question, here is what you told them.  The

6   Government need not establish that the defendant managed five

7   people at once, that the five acted in concert with each other,

8   that the defendant exercised -- that's where the exercise

9   language is coming from, a supplemental charge we've given them

10  -- exercised the same kind of control over each of the five or

11  even that the defendant had personal contact with each of the

12  five.

13          I mean, that talks about individual exercise, I mean,

14  and this language came directly from a Third Circuit case, as I

15  recall.

16          THE COURT:  It seems to me that it may be prudent to

17  repeat that same language.

18          MR. LLORET:  I think it may, Your Honor.  I just --

19  my only caveat is that I think one always tries to speculate

20  what the Third Circuit may view a thing, but I think when in

21  doubt, the statutory language, if one includes that, it's

22  always safest, because from -- from an Appellate standpoint,

23  whatever the jury's verdict, if the statutory language is

24  employed with explanatory material that's not contradictory to

25  the statutory language, I think that's the safest.

1          THE COURT:  All right.

2     .     MR. LLORET:  Thank you.

3          MR. WARREN:  Judge, I would quickly point out the

4     statutory language which Mr. Lloret repeatedly refers says,

5     subsection A --

6               "...which are undertaken by such person in concert

7               with five or more persons with respect to whom such

8               person occupies a position of organizer, supervisor,

9               or management."

10         The organizer, supervisor, or management language

11    modifies or refers back to the five individuals with respect to

12    whom you have to -- I'd say it's exercise, you have to exercise

13    that sort of control.

14         So that's -- I believe that's Mr. Baukman's position

15    as well.

16         MS. CHERNIACK:  Yes, it is, Your Honor.  Emily

17    Cherniack for Mr. McMahon for Mr. Baukman.

18         MR. LLORET:  Your Honor --

19         THE COURT:  Go ahead.

20         MR. LLORET:  -- I will only respond to say that I

21    don't think that my hypothetical is -- is ill-advised in this

22    context.  That is, if Ray Crock from McDonalds doesn't know if

23    the guy flipping furthers at the McDonalds in Cleveland, Ohio,

24    he still -- and has never talked to him and has no idea of his

25    existence frankly other than as a general way that there is

Colloquy                                      14

1    somebody out there, Ray Crock is still occupying a position,

2    and the fact that he's never talked to the burger flipper in

3    Cleveland is irrelevant.

4              THE COURT:  All right.

5              MR. LLORET:  Thank you, Your Honor.

6              MR. WARREN:  But then how then do you reconcile that

7    with us telling the jury last time defendant exerted some type

8    of influence over another individual as exemplified by that

9    individual's compliance with the defendant's directions,

10   instructions, occurrence.

11             THE COURT:  All right.  Counsel, I'm going to take a

12   couple of minutes to incorporate what you've said.  We'll be

13   back.  We'll charge the jury.  We told them that they were

14   going to be able to go home early today.  So we will probably

15   give them the instructions and then let them go for the day.

16             MR. LLORET:  Very well, Your Honor.

17             MR. WARREN:  Does that mean we get to go too, Judge?

18             MR. LLORET:  No.  No, Mr. Warren.

19             MR. WARREN:  We're going to say here and debate this

20   point?

21                        (Recess)

22             THE CLERK:  Please rise.

23                        (Jury in)

24             THE COURT:  Okay.  Ladies and gentlemen, have a seat.

25   Members of the jury, you have sent a question out with regard

Colloquy                                                    15

1    to Count Two of the indictment that charges engaging in a

2    continuing criminal enterprise.

3            In response to your question, you should understand

4    that under the statute, the statutory provision, a person is

5    engaged in a continuing criminal enterprise if that person

6    violates the provisions of the Federal narcotics laws and such

7    violations are part of a continuing series of violations of the

8    Federal narcotics laws which are undertaken by that person in

9    concert with five or more other persons with respect to whom

10   such person occupies a position of organizer, supervisory

11   position or any other position of management and from which

12   such person obtains substantial income or resources.  That is

13   the definition of the crime.  Those are the elements.

14           Now, I told you yesterday that the term organizer,

15   supervisor, manager, that -- that term is given its ordinary

16   meaning, and it's irrelevant that other persons may have

17   exercised supervision superior to the defendant's supervision.

18           I also told you that the Government need not

19   establish that the defendant managed five or more people at

20   once, that the five acted in concert with each other, that the

21   defendant exercised the same kind of control over each of the

22   five, or even that the defendant had personal contact with each

23   of the five.  In essence, the management element is established

24   by demonstrating that the defendant exerted some type of

25   influence over another individual as exemplified by that

Colloquy                                          16

1    individual's compliance with the defendant's directions or

2    instructions or terms.

3            Now, you have asked me where more than one defendant

4    is charged in engaging in a continuing criminal enterprise,

5    does each defendant need to have been found to have

6    individually managed or organized or supervised five or more

7    people.  Ladies and gentlemen, you should understand that a

8    defendant who supervises three persons who in turn supervised

9    the activities of several others can be found to have

10   supervised and managed five or more persons.  The mere

11   delegation of authority does not detract from the defendant's

12   ultimate status as an organizer or supervisor.

13           A defendant need not be the only manager, supervisor,

14   or organizer or even the dominant manager, supervisor, or

15   organizer.  In fact, ladies and gentlemen, a co-defendant can

16   also be a co-manager and still be included as one of the five

17   with whom the defendant holds a supervisory position.

18           Now, ladies and gentlemen, I hope that answers your

19   question.  If it does not answer your question, then I will

20   attempt to give you further instructions, but I think that that

21   may go to what you were trying to get to in your inquiry to the

22   Court.  If I am incorrect, write down your specific inquiry

23   then and I will deal with it.  Okay?

24           Now, you requested yesterday that you be excused at

25   four o'clock, and I told you yesterday that I would honor that

1    request.  Mr. Finney, will you bring the alternate jurors out?

2    We will excuse the jurors until Monday.

3              THE CLERK:  Please rise.

4                    (Alternate Jurors Enter)

5              THE COURT:  Okay.  Have a seat.  Okay.  Again, I'm

6    going to caution you.  You've been deliberating in this case

7    now since Monday and you've been talking together about this

8    matter, but again, I caution you, when you leave here, you're

9    going to be away from the courthouse over the weekend.  We

10   don't want you discussing the case with anyone, and we don't

11   want anyone discussing the case with you, and that means

12   anyone, ladies and gentlemen.  Don't talk to friends.  Don't

13   talk to family about this matter.  Don't -- if you are with

14   each other for any period of time, don't discuss the case among

15   yourselves.  In other words, ladies and gentlemen, do not talk

16   about this case at all over the weekend with anyone anywhere.

17        Don't do any investigation.  Don't read anything

18   about the case.  There may be something in the newspapers.

19   Don't read it.  Don't listen to anything should there be

20   anything on the news.  You're going to be away from the

21   courthouse for quite a while, and I don't want you to forget

22   these instructions.

23        So with that, the alternate jurors are invited back

24   on Monday.  The 12 original jurors, when you come back, go

25   directly into the jury room.  When all 12 of you are there,

Colloquy                                                    18

1    then you can begin and continue your deliberations, and the

2    alternate jurors will go to the jury room that you have been in

3    for the last four days, and if necessary, we will press you

4    into service.  All right?

5            Counsel, we'll see you at 9:15 on Monday.

6                    (Court Adjourned)

7                    *  *  *  *  *

8                C E R T I F I C A T I O N

9            I, Maureen Emmons, court approved transcriber,

10   certify that the foregoing is a correct transcript from the

11   official electronic sound recording of the proceedings in the

12   above-entitled matter.

13

14   _____    Date: 04/21/08

15   MAUREEN EMMONS

16   DIANA DOMAN TRANSCRIBING