

RBS

866

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,    :    Criminal Action 05-440
                             :
                             :    Philadelphia, PA
                             :    February 19, 2008
        v.                   :    9:19 a.m.
                             :    VOLUME 3
ALTON COLES, et al.,         :
                             :
        Defendant.           :
----------------------------

FILED
MAY 2 8 2008


TRANSCRIPT OF JURY TRIAL
BEFORE THE HONORABLE R. BARCLAY SURRICK
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For Government:         MICHAEL J. BRESNICK, ESQ.
                       RICHARD A. LLORET, ESQ.
                       U.S. Attorney's Office
                       615 Chestnut Street, Suite 1250
                       Philadelphia, PA  19106-4476

For the Defendant      CHRISTOPHER D. WARREN, ESQ.
Alton Coles:           1500 Walnut Street
                       Suite 1500
                       Philadelphia, PA  19102

For the Defendant      JACK J. McMAHON, JR., ESQ.
Timothy Baukman        Law Office of Jack McMahon
                       1500 Walnut Street, Suite 900
                       Philadelphia, PA  19102

For the Defendant      LAURENCE HARMELIN, ESQ.
Monique Pullins:       P.O. Box 3574
                       Westchester, PA  19381



2

APPEARANCES:                    (Continued)

For the Defendant          RONALD A. SMITH, ESQ.
Asya Richardson:           Ronald A. Smith and Associates
                           1617 JFK Boulevard, Suite 1240
                           Philadelphia, PA  19103

For the Defendant          PAUL J. HETZNECKER, ESQ.
Thais Thompson             1420 Walnut Street, Suite 911
                           Philadelphia, PA  19102

For the Defendant          RONALD THOMPSON, ESQ.
James Morris:              3002 Lincoln Drive, Suite J
                           Marlton, NJ  08053

                           WAYNE POWELL, ESQ.
                           811 Church Road
                           101 Parragon Building
                           Cherry Hill, NJ  08002

Audio Operator:            Mark Rafferty

Transcribed by:            DIANA DOMAN TRANSCRIBING
                           P.O. Box 129
                           Gibbsboro, New Jersey  08026-0129
                           (856) 435-7172
                           FAX:  (856)  435-7124
                           EMAIL:  dianadoman@comcast.net

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

I N D E X

| WITNESSES | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|

**FOR THE DEFENDANT PULLINS**

| TOWANA PULLINS | 10 (Har) |
| EUGENE PULLINS | 25 (Har) |
| SHARHONDA GANS | 32 (Har) |
| GREGORY WRIGHT | 34 (Har) |
| DANIELLE GAY | 40 (Har) |
| MICHELLE JOHNSON | 42 (Har) |

**FOR THE DEFENDANT RICHARDSON**

| TROY GLENN | 19 (Smi) |
| JULENE HAUGHTON | 22 (Smi) |
| JEROME BRISBON | 44 (Smi) |
| SHONTA FRAZIER | 46 (Smi) |
| MICHELLE ARRINGTON | 48 (smi) |

**FOR THE DEFENDANT THOMPSON**

| EDWARD WILLIAMS | 27 (Het) |
| TRENE THOMPSON | 29 (Het) |
| MAYA SIMPSON | 30 (Het) |
| LISA THOMPSON | 51 (Het) |
| KATHERINE FLETCHER | 53 (Het) |

| EXHIBITS | | IDENT | EVID |
|---|---|---|---|
| DP-4 | Picture | | 36 |
| DP-1 | Consent form | | 38 |
| DT-1 | Gun permit | | 54 |
| DT-2 | List | | 54 |
| DP-2&3 | Transcripts of phone calls | | 55 |

Colloquy                                    4

1                    (Jury not present)

2              THE COURT:  Have a seat.

3              MR. LLORET:  Good morning, Judge.

4              THE COURT:  All right.  We have the issue of the

5    notes that were submitted by Mr. Bresnick and Agent Tropea.  I

6    have conducted an in camera review of those notes.  Those

7    notes were taken by Mr. Bresnick in preparation for trial and

8    by Agent Tropea during the course of proffers of Mr. Custis.

9              The -- is Agent Tropea here?

10             MR. LLORET:  He is not, Your Honor.

11             THE COURT:  After reviewing the notes, I am

12   satisfied that there is no necessity for disclosure of those

13   notes.

14             With regard to Mr. Bresnick's notes, Mr. Bresnick,

15   you may know this already, but you would fail a penmanship

16   exam.

17             MR. BRESNICK:  Yes, Your Honor.

18             THE COURT:  The notes are very difficult to

19   decipher. But in any event, they were taken during the course

20   of preparation for trial by Mr. Custis.  They are certainly

21   work product.  They are not discoverable or not disclosable

22   under the circumstances. There is no reason, exceptional

23   circumstance, that would justify granting the request to

24   disclose these materials.  They don't contain Giglio, Jenks

25   material or Brady material.  And the request for those notes

Colloquy                                    5

1    is denied.

2              With regard to Agent Tropea, those notes were

3    prepared during the course of proffers. The Government has

4    turned over the report that was generated as a result of those

5    proffers.  There is no inconsistency that I see between the

6    report and the notes.

7              In any event, the notes of Agent Tropea do not

8    contain -- are not Jenks material.  They do not contain Brady

9    material or Giglio material.  There is no basis upon which to

10   grant the request for those notes.  And that request is denied

11   also.

12             You have requested, Mr. Lloret, that we give a

13   cautionary instruction to the jury.  I'm going to grant that

14   request.  I'm going to give a cautionary instruction.  During

15   the course of testimony of Agent Tropea, the questioning was,

16   to say the least, animated and I think the impression could

17   have been created that Mr. -- Agent Tropea or Mr. Bresnick had

18   done something improper.  They have not.  And I will tell the

19   jury that.  All right?

20             MR. LLORET:  Thank you, Your Honor.

21             MR. MC MAHON:  Just note my objection to that, Your

22   Honor, on my behalf.  Because -- I mean, I'm not going to

23   argue the ruling again, you've ruled, but I mean, to me,

24   you're left with a situation, as a defense attorney -- and

25   just try to look at it from our perspective.  For the very

1   first time we're told --

2            THE COURT:  That's exactly what you told the jury,

3   and you had no right to those notes.  I'm ruling that you had

4   no right to those notes.  And I'm going to caution the

5   instruction --

6            MR. MC MAHON:  Well, how was I supposed to know this

7   to prepare for trial?

8            THE COURT:  Mr. McMahon, you have an exception.  You

9   may sit down.

10           MR. SMITH:  Your Honor, just a scheduling issue, I

11   just want to go over with you if you have a second for this,

12   Your Honor.

13           I know it's not my turn, it's not my case.  I do

14   have several character witnesses coming in that have to be out

15   of here by noon.  I know I'm up soon, but I just wanted to

16   have the opportunity to perhaps go out of order at some point

17   in time just to put them on so that I do not lose them for my

18   trial.

19           THE COURT:  All right.  Mr. Thompson, Mr. Powell,

20   what witnesses do you have available this morning?

21           MR. POWELL:  We have one remaining witness, Judge,

22   that's our expert.

23           THE COURT:  All right.  Have you gotten that report,

24   Mr. --

25           MR. LLORET:  Your Honor, we did receive the report.

1   We received the report Sunday.  Certainly it wasn't -- we

2   didn't have a business day yesterday, obviously it was very

3   difficult to get in touch with anybody to try and prepare.  So

4   our objection remains to the expert going on because of the

5   late notice.

6           THE COURT:  Well, you had -- you say you got the

7   report on Sunday?

8           MR. LLORET:  It was faxed on Sunday.  I actually

9   laid eyes on it Monday and Mr. Bresnick also laid eyes on it

10  Monday.

11          THE COURT:  All right.  Well, under the

12  circumstances, we'll permit the expert to testify.

13          MR. LLORET:  Very well, Your Honor.

14          THE COURT:  All right.  Mr. Harmelin?

15          MR. HARMELIN:  I have a few.  I have something like

16  six or seven character witnesses.  Some of them are coming in

17  after the mid-morning recess, some are coming in after lunch.

18  I also have my client's mom -- mother and uncle.  One of them

19  is a character witness and her mom's going to be a fact

20  witness, for maybe 10, 15 minutes.

21          THE COURT:  All right.  And Mr. --

22          MR. HARMELIN:  I don't have a problem with deferring

23  to co-counsel.

24          THE COURT:  Mr. Hetznecker?

25          MR. HETZNECKER:  Your Honor, I'm expecting character

1    witnesses sometime either late morning, early afternoon.

2    Again, I'm not sure if there's issues yet, but in the event

3    that it looks like I need to put them on, I will alert the

4    Court and we can take them out of turn and I would request

5    that.

6              THE COURT:  All right, Mr. Smith, does your client

7    intend to testify?

8              MR. SMITH:  Yes, he is, Your Honor.

9              THE COURT:  All right.  Well, we can take your

10   character witnesses out of turn this morning if it becomes a

11   problem, all right?

12             MR. SMITH:  Thank you, Your Honor.

13             MR. WARREN:  One thing, Judge.  I neglected to renew

14   my Rule 29 motion when I rested last week, and I would do that

15   now.

16             THE COURT:  The 29 motions have been held in

17   abeyance.

18             MR. WARREN:  Thank you, sir.

19             THE COURT:  All right.  Counsel, are we ready?

20             MR. LLORET:  Yes, Your Honor.

21             THE COURT:  Okay.

22             MR. POWELL:  Are we going to take Mr. Smith's

23   witnesses first?

24             THE COURT:  Excuse me?

25             MR. POWELL:  Are we going to take Mr. Smith's

Colloquy                                        9

1   witnesses first?

2           MR. SMITH:  They're not here yet.

3           MR. POWELL:  Okay.

4                       (Jury enters)

5           THE COURT:  Okay, have a seat, ladies and gentlemen.

6   I hope all of you are healthy at this point after three days'

7   rest.

8           Ladies and gentlemen, before we get started this

9   morning, I just want to indicate to you that last week, during

10  the course of the testimony there was some discussion about

11  notes taken during an interview by Mr. Bresnick and Agent

12  Tropea by Mr. Custis.  And there was some discussion of the

13  availability of those notes to the defendants.

14          You should understand, ladies and gentlemen, that

15  the Government turned over all of the notes that the

16  Government was required to turn over under the law.  So there

17  was no improper conduct on the part of Mr. Bresnick or this

18  Agent Tropea.

19          All right, counsel, are we ready to proceed?

20          MR. POWELL:  Yes, Judge.

21      (Testimony of Dr. Robert Rodman previously transcribed

22          under separate cover, from 9:31 to 10:39 a.m.)

23          MR. POWELL:  Judge, we have no other witnesses

24  subject to offering the exhibits on behalf of Mr. Morris and

25  we would rest.

1        THE COURT:  All right.  Mr. Harmelin?

2        MR. HARMELIN:  I'd like to call Towana Pullins.  I

3   believe she's outside.

4                        (Pause)

5                TOWANA PULLINS, SWORN

6        THE CLERK:  Please state your full name and spell

7   your full name.

8        THE WITNESS:  Towana Pullins, T-O-W-A-N-A, P-U-L-L-

9   I-N-S.

10                DIRECT EXAMINATION

11  BY MR. HARMELIN:

12  Q.    Good morning, Towana.

13  A.    Good morning.

14  Q.    There's a microphone there that you can pull close to you

15  to be able to be heard.

16        Do you know Monique Pullins?

17  A.    Yes, I do.

18  Q.    How do you know Monique?

19  A.    She's my daughter.

20  Q.    What's her date of birth?

21  A.    12/6/83.  I'm nervous.

22  Q.    And where did Monique grow up?

23  A.    In Philadelphia, 24th and Allegheny.

24  Q.    And what was her father's name?

25  A.    Clarence Victor Meyers.

1    Q.    And who made up the household at 24th and Allegheny,

2    Towana?

3    A.    Myself, Clarence, her sisters and my son.

4    Q.    And are her sisters younger than her or older than her?

5    A.    Older than her.

6    Q.    Excuse me.

7                              (Pause)

8    Q.    So if Monique was born in December of '83, how old would

9    she have been in March of '05?

10    A.    Twenty, 21.

11    Q.    Twenty-one?

12    A.    Yes.

13    Q.    What did Monique's father do for a job while she was

14    growing up?

15    A.    Well, he was a police officer for 13 years --

16    Q.    For whom?

17    A.    The City of Philadelphia.

18    Q.    And what if anything did he do for a living after he

19    retired from the Philadelphia Police Department?

20    A.    Well, he resigned from the police department but then he

21    was security for Pathmark.

22    Q.    And did he ever go into business for himself in any way?

23    A.    Well, he was a bar owner, he owned a bar.

24    Q.    And where was his bar?

25    A.    26 and York.

T. Pullins - Direct (Har)                                      12

1   Q.   Did you ever work there?

2   A.   Yes, I did.

3   Q.   Is Monique's dad still alive?

4   A.   No, he's deceased.

5   Q.   What happened to him?

6   A.   He died from a car accident.

7   Q.   And was that 1999 or thereabouts?

8   A.   Yes, mmhmm.

9   Q.   Did Monique go to school in Philadelphia?

10  A.   Yes.

11  Q.   Did she graduate from high school?

12  A.   Yes.

13  Q.   What high school?

14  A.   Simon Gratz.

15  Q.   By the way, do you remember when she was 14 years old?

16  A.   Yes.

17  Q.   Anything happen when she was 14?

18  A.   I made her go to the counselor to get a application for

19  summer jobs.

20  Q.   And did she do that?

21  A.   Yes.

22  Q.   Did she get a summer job?

23  A.   Yes.

24  Q.   Did she work each summer after high school?

25  A.   Yes.

1  Q.   Did she work part time when she was in high school?

2  A.   Yes.

3  Q.   After she graduated from high school, did she seek

4  employment?

5  A.   Yes.

6  Q.   Did she find a job?

7  A.   Yes, mmhmm.

8  Q.   Do you know what kind of jobs Monique was doing after she

9  got out of high school?

10 A.   She worked for a telemarketing agency, she worked for a

11 J.C. Penney's.  She also -- she went to school for hair so she

12 also worked in a salon too part time.

13 Q.   Did she go to Gordon Phillips?

14 A.   Yes.

15 Q.   And she worked as a hairstylist after that?

16 A.   Yes.

17 Q.   What was your father's name?

18 A.   Eugene Pullins.

19 Q.   And did Eugene Pullins own a company?

20 A.   Yes, he did.

21 Q.   What kind of company?

22 A.   Demolition and construction business.

23 Q.   Did you ever work for your dad?

24 A.   Yes, I did.

25 Q.   Did Monique ever work for your dad?

1    A.    Yes, she did.

2    Q.    By the way, is your dad still alive?

3    A.    No, he's deceased.

4    Q.    When did he pass?

5    A.    2006.

6    Q.    I'd like to direct your attention to 2004 and ask you if

7    Monique was working for your dad's company at that time?

8    A.    Yes.

9    Q.    What kind of work was she doing?

10   A.    A flag person.

11   Q.    What does a flag person do, if you know?

12   A.    Okay.  Well, they direct -- well, they had a contract

13   with SEPTA, my father did, and they had to like -- let the

14   people that's working on the railroad know when the trains

15   were coming.  We was trained to learn how to watch for

16   signals, and sometimes we would work on the streets and direct

17   the traffic if the streets were blocked off 'cause of work

18   that we were doing.

19   Q.    How do you know all this?

20   A.    Because I was one of them too.

21   Q.    You were a flagger yourself?

22   A.    Yes.

23   Q.    Okay.  So do you recall what Monique's starting salary

24   was when she --

25   A.    $30 an hour.

T. Pullins - Direct (Har)                    15

1   Q.   And do you recall about how long she had that job on and

2   off?

3   A.   From 2004 up until, probably like last year.

4   Q.   '07?

5   A.   Yes.

6   Q.   While Monique was working as a flagger, did she go back

7   to school for some other fields?

8   A.   Yes.

9   Q.   What was that?

10  A.   Dental assistant.

11  Q.   And do you recall where she went?

12  A.   I think it's Thompson Institute or --

13          THE COURT:  Counsel.

14          MR. HARMELIN:  Yes.

15          THE COURT:  Let's go to sidebar.

16          (The following sidebar discussion was held:)

17          THE COURT:  Mr. Bresnick, you have no problem with

18  all of this testimony?  I'm going to let you gentlemen try

19  your cases but this --

20          MR. HARMELIN:  I'm just about done.

21          MR. BRESNICK:  Yes, Your Honor, I was letting it go

22  on but I maybe falsely assumed it was going to wrap up any

23  second, so, I will --

24          THE COURT:  Mr. Harmelin -- if you're making an

25  objection --

T. Pullins - Direct (Har)                    16

1        MR. LLORET:  Yes, Your Honor, I object.

2        THE COURT:  -- the objection is sustained.

3        MR. BRESNICK:  Thank you, Judge.

4        THE COURT:  Move on to material that's relevant.

5        MR. HARMELIN:  Okay.

6                (End of sidebar discussion)

7   BY MR. HARMELIN:

8   Q.   Do you know if your daughter is presently employed as a

9   dental assistant?

10  A.   Well, she was working for a temp agency before all of

11  this.

12  Q.   Do you know -- I'd like to direct your attention to 2004.

13  Do you know if your daughter would frequent clubs after she

14  turned 21?

15  A.   Yes.

16  Q.   And I'd like to direct your attention to late February,

17  early March 2005, and ask you if you learned that Monique had

18  met a new guy?

19  A.   Yes, mmhmm.

20  Q.   And what did you find out about Mr. Coles when Monique --

21        MR. WARREN:  Objection.

22        THE COURT:  Objection sustained.

23  BY MR. HARMELIN:

24  Q.   Do you talk to your daughter?

25  A.   Yes.

1    Q.    Do you talk to her frequently?

2    A.    Every day.

3    Q.    Did you talk to your daughter frequently in 2005?

4    A.    Yes.

5    Q.    Were you aware -- strike that.

6          Where, if anywhere, did you know she was taken by her new

7    boyfriend?

8              MR. WARREN:  Objection.

9              THE COURT:  Objection sustained.  Mr. Harmelin, move

10   on.

11   BY MR. HARMELIN:

12   Q.    Was Monique working during July of 2005 for your father?

13   A.    Yes.

14   Q.    Did she have off 4th of July weekend?

15   A.    Yes.

16   Q.    Before this matter that we're here for today, has Monique

17   ever been arrested?

18   A.    Never.

19   Q.    Has Monique ever been convicted of a crime?

20   A.    Never.

21             MR. HARMELIN:  Can we go to sidebar, Your Honor?

22             THE COURT:  Yes.

23             (The following sidebar discussion was held:)

24             MR. HARMELIN:  I have two more questions and before

25   I ask them, I'd like to have a ruling. She was in here one day

T. Pullins - Direct (Har)                    18

1    crying her eyes out, two different counsel came up to me and

2    asked me why she was crying.  She was crying, this witness

3    would say, because her uncle died and the memorial service was

4    that day, and it was also her father's birthday.  That's the

5    last two questions.

6              MR. BRESNICK:  I'm not sure I understand the

7    relevance of that.

8              THE COURT:  Are you objecting?

9              MR. BRESNICK:  I do object.

10             THE COURT:  Sustained.

11             MR. HARMELIN:  Thank you.

12             THE COURT:  That's it?

13             MR. HARMELIN:  That's it.

14                   (End of sidebar discussion)

15             MR. HARMELIN:  Actually I have one other question.

16   BY MR. HARMELIN:

17   Q.   To your knowledge, did any of your daughters ever meet

18   Monique's new boyfriend, Mr. Coles?

19   A.   Two of my daughters did.

20   Q.   Thank you, Towana, that's all I have.

21   A.   Okay.

22             MR. LLORET:  No questions, Your Honor.

23             THE COURT:  Any questions?  You may step down.

24                   (Pause)

25             MR. HARMELIN:  Your Honor, with the Court's

Case 2:05-cr-00440-RBS    Document 866    Filed 05/28/08    Page 19 of 65


1   permission I would defer to Mr. Smith so he can get his

2   witnesses on out of order.

3               THE COURT:  All right.  Go ahead, Mr. Smith.

4               MR. SMITH:  Thank you, Your Honor.

5               Mr. Troy Glenn.

6                           (Pause)

7                      TROY GLENN, SWORN

8               THE CLERK:  Please state your full name, spell your

9   last name.

10              THE WITNESS:  Troy Glenn, G-L-E-N-N.

11              MR. SMITH:  May I proceed, Your Honor?

12              THE COURT:  Yes.

13                      DIRECT EXAMINATION

14  BY MR. SMITH:

15  Q.   Mr. Glenn, good morning, sir.

16  A.   Good morning.

17  Q.   Have we met before?

18  A.   No.

19  Q.   Can you give the jury a little bit about your background.

20  What section -- you live in Philadelphia, sir?

21  A.   I live in West Philadelphia.

22  Q.   And how old are you, sir?

23  A.   I'm 28.

24  Q.   Are you employed?

25  A.   I am.

Glenn - Direct (Smi)                                      20

1    Q.    And what do you do for a living?

2    A.    I do retirement planning for Franklin Retirement

3    Solutions.

4    Q.    Did you go to school for that?

5    A.    I went to school but not for retirement planning.

6    Q.    Where did you go to school, sir?

7    A.    I went to Community College of Philadelphia.

8    Q.    And did you get a degree from there, sir?

9    A.    I did not.

10   Q.    Okay.  Sir, do you know Asya Richardson?

11   A.    Yes, I do.

12   Q.    And for how long a time period have you know Asya

13   Richardson?

14   A.    Nine years.

15   Q.    And what is the nature of your relationship, sir?

16   A.    We met during the time that I was at Community College

17   and we just developed a friendship.  We were classmates.

18   Q.    So you're friends and former classmates, would that be an

19   accurate statement?

20   A.    That's correct.

21   Q.    All right.  Sir, during the time period that you've known

22   Asya Richardson, do you know other people in the community,

23   your community, whether it's professional, whether it's

24   social, who also Asya Richardson?

25   A.    Yes, we have mutual friends.

Glenn - Direct (Smi)                                    21

1   Q.   Okay. And among those people that you know, sir, are you

2   familiar with whether or not Ms. Richardson has any type of

3   reputation for being an honest and law-abiding citizen, sir?

4   A.   Can you repeat that?

5   Q.   Among those people you know in the community, that you

6   just identified, are you familiar with whether or not Ms.

7   Richardson has any type of reputation for being an honest and

8   law-abiding citizen?

9   A.   Yes.

10  Q.   And what would that be, sir?

11  A.   That she is an honest and law-abiding citizen.

12  Q.   Okay.  Thank you, sir.

13       Now, in your opinion, and I'm referring to you, sir, do

14  you have an opinion as to whether or not in your mind, sir,

15  she is an honest and law-abiding citizen?

16  A.   Yes, I do.

17  Q.   And what would that be, sir?

18  A.   From the nature for me knowing her nine years, all I know

19  of her is good things, nothing negative or derogatory to --

20  that I could possibly associated with Asya Richardson.

21  Q.   Thank you, sir.

22       Thank you, sir, that's it.

23  A.   Thank you.

24            THE COURT:  You may step down.

25            MR. SMITH:  Thank you for coming in.

1          And I just have one more that has to go out of

2     order, Your Honor.

3               THE COURT:  Go right ahead, Mr. Smith.

4               MR. SMITH:  Thank you, Your Honor.

5               I hope I'm not mispronouncing it, but is it Julene

6     Haughton?

7                         (Pause)

8                  JULENE HAUGHTON, SWORN

9               THE CLERK:  Please state your full name and spell

10    your full name.

11              THE WITNESS:  Julene Haughton, J-U-L-E-N-E,

12    Haughton, H-A-U-G-H-T-O-N.

13                     DIRECT EXAMINATION

14    BY MR. SMITH:

15    Q.   I think we met last week?

16    A.   Yes, briefly.

17    Q.   First of all, good morning.

18    A.   Good morning.

19    Q.   Same sort of questions.  Can you identify yourself.  Do

20    you live in Philadelphia?

21    A.   Yes, I do.

22    Q.   What section of the city do you live in?

23    A.   West Philadelphia.

24    Q.   And how old are you?

25    A.   Twenty-eight.

1   Q.   And are you employed?

2   A.   Yes.

3   Q.   And what's the nature of your employment?

4   A.   I'm a manager at a retail store.

5   Q.   Okay.  And do you know Asya Richardson?

6   A.   Yes, I do.

7   Q.   And for how long a period of time do you know Asya?

8   A.   For about nine years.

9   Q.   Nine years also.

10  A.   Yes.

11  Q.   Okay.  And what's the nature of your relationship?

12  A.   We were college roommates.  We worked together and we

13  were good friends.

14  Q.   Okay, are you still good friends today?

15  A.   Yes.

16  Q.   And do you know other people who know Asya?

17  A.   Yes, I do.

18  Q.   And among those people that you know in the community,

19  are you familiar yourself whether or not Asya has any type of

20  reputation for being an honest and law-abiding citizen?

21  A.   Yes, she has.  She has an excellent reputation of being a

22  wonderful person.

23  Q.   And now I'll ask you one more question and I'll let you

24  go here.  In your opinion, your opinion yourself, do you have

25  an opinion as to whether or not Asya Richardson is an honest

Haughton - Direct (Smi)                                    24

1    and law-abiding citizen?

2    A.    Yes, she is a upstanding young lady in the community.

3    She's always been just a very honest person.

4    Q.    Thank you very much.

5    A.    You're welcome.

6            MR. SMITH:  Those were the two that have to go out

7    of order.  Thank you, Your Honor, for that courtesy.

8            THE COURT:  All right.  Mr. Harmelin.

9            MR. HARMELIN:  I have another character witness I

10   can call.

11           THE COURT:  All right.

12                        (Pause)

13           THE COURT:  Counsel, let's go to sidebar before this

14   witness is sworn.

15       (The following sidebar discussion was held:)

16           THE COURT:  Counsel, so we don't find ourselves in

17   the same position we were in a few minutes ago, what is it

18   that you intend to elicit from this witness?

19           MR. HARMELIN:  Character of her law-abiding trait,

20   and that alone.

21           THE COURT:  That alone?

22           MR. HARMELIN:  Well, her relationship --

23           THE COURT:  All right.

24           MR. HARMELIN:  Two to three minutes.

25           THE COURT:  All right.

E. Pullins - Direct (Har)                    25

1      (End of sidebar discussion)

2          THE COURT:  Swear the witness.

3              EUGENE PULLINS, SWORN

4          THE CLERK:  Please state your full name.

5          THE WITNESS:  First name is Eugene Pullins, Jr.

6          THE CLERK:  Could you spell your first name?

7          THE WITNESS:  E-U-G-E-N-E.

8          THE CLERK:  Thank you.

9              DIRECT EXAMINATION

10     BY MR. HARMELIN:

11     Q.   Mr. Pullins, where do you reside?

12     A.   I live in Felton, Delaware.

13     Q.   And are you employed?

14     A.   Yes, I am.

15     Q.   What do you do for a living?

16     A.   I'm a supervisor with Triple A Midlantic up in Newark.

17     Q.   Do you know Monique Pullins?

18     A.   Yes, I do.

19     Q.   How do you know Monique?

20     A.   That's my niece.

21     Q.   You've known her all her life?

22     A.   Yes.

23     Q.   Do you know other people that know Monique?

24     A.   Family members, yes.

25     Q.   Could you either pull microphone or -- there you go.

E. Pullins - Direct (Har)                    26

1    Among the people that you know, Mr. Pullins, that also

2    know Monique Pullins, are you aware of her reputation for

3    being a law-abiding citizen?

4    A.    Yes.

5    Q.    What is her reputation in that regard?

6    A.    I mean, she has a very good reputation for being a good

7    person, abiding by the law.  She's been raised to be no other

8    but that.

9    Q.    That's all I have.  Thank you, sir.

10   A.    Okay.

11            MR. LLORET:  No questions, Your Honor.

12            THE COURT:  You may step down.

13                        (Pause)

14            THE COURT:  Mr. Harmelin?

15            MR. HARMELIN:  I think my other character witnesses

16   are coming after the recess, Your Honor.

17            THE COURT:  All right.  It is 11 o'clock, ladies and

18   gentlemen.  We'll take a ten-minute recess.  Go out, relax,

19   don't discuss the case among yourselves.  We'll bring you back

20   in ten minutes.

21                      (Jury exits)

22            (Off the record at 10:57 a.m.)

23        (On the record at 11:14 a.m.; jury not present)

24            MR. HETZNECKER:  Your Honor, I have three brief

25   character witnesses.  If I can put them on now?

1    THE COURT:  You certainly may, if they're available.

2    MR. HETZNECKER:  They are.  Thank you.

3    THE COURT:  Mr. Hetznecker's asking to take his

4    character witnesses out of turn.

5    MR. BRESNICK:  I think it's up to his turn.  We're

6    fine anyway.

7    MR. LLORET:  We're fine, we have no objection.

8    THE COURT:  All right.

9                    (Pause)

10                    (Jury enters)

11    THE COURT:  All right, have a seat, ladies and

12    gentlemen.

13    All right, Mr. Hetznecker, I understand you have

14    several witnesses.

15    MR. HETZNECKER:  Thank you, Your Honor.  Thank you,

16    I appreciate taking them out of turn.

17    At this time on behalf of Thais Thompson I would

18    call Edward Williams to the stand.

19                EDWARD WILLIAMS, SWORN

20    THE CLERK:  Please state your full name and spell

21    your last name.

22    THE WITNESS:  Edward Williams, W-I-L-L-I-A-M-S.

23                DIRECT EXAMINATION

24    BY MR. HETZNECKER:

25    Q.    Good morning, Mr. Williams.

1   A.    Good morning.

2   Q.    Mr. Williams, what is your relationship with my client,

3   Thais Thompson?

4   A.    She's my cousin.

5   Q.    And I take it you've known her all your life?

6   A.    Yes.

7   Q.    What kind of work do you do?

8   A.    I'm a production supervisor for Pepsi in Wilmington.

9   Q.    Wilmington, Delaware?

10  A.    Yes.

11  Q.    Mr. Williams, you know my client all your life.  Do you

12  know others that know her in the community of family and

13  friends?

14  A.    Yes.

15  Q.    And among those people that you know that know her, do

16  you know her reputation for being a law-abiding and honest

17  citizen?

18  A.    Yes.

19  Q.    And what is her reputation for being an honest and law-

20  abiding citizen?

21  A.    She's honest, she's sometimes too honest.

22  Q.    That was my next question.  Do you have an opinion

23  regarding whether my client, Thais Thompson, is an honest and

24  law-abiding citizen?

25  A.    No.

1    Q.    Do you have an opinion?

2    A.    Yes.

3    Q.    And what is your opinion?

4    A.    Sometimes she's too honest.

5              MR. HETZNECKER:  I have no further questions of this

6    witness.

7              MR. LLORET:  No cross-examination.

8              THE COURT:  You may step down.

9              MR. HETZNECKER:  Your Honor, on behalf of Ms.

10   Thompson I would call Trene Thomas.

11                    TRENE THOMPSON, SWORN

12             THE CLERK:  Please state your full name and spell

13   your full name.

14             THE WITNESS:  Trene Thompson, T-R-E-N-E, T-H-O-M-P-

15   S-O-N.

16                    DIRECT EXAMINATION

17   BY MR. HETZNECKER:

18   Q.    I'm sorry, Ms. Thompson, what is your relationship with

19   my client?

20   A.    I'm her sister.

21   Q.    And I take it you've obviously known her all your life?

22   A.    Yes.

23   Q.    Do you know others that know her in the community of

24   family and friends?

25   A.    Yes, I do.

T. Thompson - Direct (Het)                    30

1   Q.   And among those people that you know that know her, do

2   you know her reputation for being an honest and law-abiding

3   citizen?

4   A.   Yes.

5   Q.   And what is her reputation for being an honest and law-

6   abiding citizen?

7   A.   She is an honest and law-abiding citizen.

8   Q.   And that is also your opinion, ma'am?

9   A.   Yes, it is.

10            MR. HETZNECKER:  I have no further questions.

11            MR. LLORET:  No questions, Your Honor.

12            THE COURT:  You may step down.

13                          (Pause)

14            MR. HETZNECKER:  Your Honor, at this time, I would

15   all Maya Simpson to the stand on behalf of Ms. Thompson.

16            THE COURT:  All right.

17                    MAYA SIMPSON, SWORN

18            THE CLERK:  Please state your full name, please

19   spell your full name.

20            THE WITNESS:  Maya, M-A-Y-A, Simpson, S-I-M-P-S-O-N.

21                    DIRECT EXAMINATION

22   BY MR. HETZNECKER:

23   Q.   Good morning, Ms. Simpson.

24   A.   Good morning.

25   Q.   Ms. Simpson, what kind of work do you do?

1   A.   Administrative support staff for Morris & Cogan

2   (phonetic).

3   Q.   And what kind of firm is that?

4   A.   It's an accounting firm.

5   Q.   And where is that located?

6   A.   Bala-Cynwyd.

7   Q.   Now, Ms. Simpson, do you know my client, Thais Thompson?

8   A.   Yes, I do.

9   Q.   And how long have you known her?

10  A.   Almost eight years.

11  Q.   And do you know others that know her in the community of

12  family and friends?

13  A.   Yes, I do.

14  Q.   And among those people that you know her -- that you know

15  that know her, do you know her reputation for being an honest

16  and law-abiding citizen?

17  A.   Yes.

18  Q.   And what is her reputation for being an honest and law-

19  abiding citizen?

20  A.   Very good, excellent.

21  Q.   And do you have a personal opinion as to her reputation -

22  - as to whether or not she's a law-abiding and honest citizen?

23  A.   Yes.

24  Q.   And what is your opinion?

25  A.   She's very honest.

1          MR. HETZNECKER:  I have no further questions.

2          MR. LLORET:  No questions, h.

3          THE COURT:  All right, you may step down.

4          THE WITNESS:  Thank you.

5          MR. HETZNECKER:  Your Honor, at this time this

6     concludes the witnesses that I've taken out of turn.  I

7     appreciate it.

8          THE COURT:  All right.

9          MR. HARMELIN:  May I proceed?

10          THE COURT:  Yes, indeed.

11          MR. HARMELIN:  Sharhonda Gans.

12                    (Pause)

13               SHARHONDA GANS, SWORN

14          THE CLERK:  Please state your full and spell your

15     full name.

16          THE WITNESS:  Sharhonda Gans, S-H-A-R-H-O-N-D-A, G-

17     A-N-S.

18                    DIRECT EXAMINATION

19     BY MR. HARMELIN:

20     Q.    Sharhonda, where do you live?

21     A.    North Philadelphia.

22     Q.    And are you employed outside the home?

23     A.    Yes.

24     Q.    What kind of work do you do, Sharhonda?

25     A.    CNA work.

Gans - Direct (Har)                                    33

1    Q.    I'm sorry?

2    A.    CNA work.

3    Q.    What is that?

4    A.    Nursing.

5    Q.    Are you a certified nurse's assistant?

6    A.    Yes.

7    Q.    Do you know Monique Pullins?

8    A.    Yes.

9    Q.    How do you know Monique?

10   A.    She's my friend.

11   Q.    How long have you know Monique Pullins?

12   A.    About seven years.

13   Q.    Do you know other people that know Monique Pullins?

14   A.    Yes.

15   Q.    Among the people that you know that also know Monique

16   Pullins, Sharhonda, are you aware of her reputation for being

17   a law-abiding citizen?

18   A.    Yes.

19   Q.    What is that reputation?

20   A.    She has a good reputation.

21              MR. HARMELIN:  That's all I have.  Thank you.

22              MR. LLORET:  No questions.

23              THE COURT:  You may step down.

24              MR. HARMELIN:  Agent Greg Wright.

25                   GREGORY WRIGHT, SWORN

1     THE CLERK:  Please state your full name and spell

2  your last name.

3     THE WITNESS:  My name is Gregory, middle initial is

4  O, last name is Wright, W-R-I-G-H-T.

5                    DIRECT EXAMINATION

6  BY MR. HARMELIN:

7  Q.    How are you employed?

8  A.    I'm employed as a supervisory special agent with the

9  Bureau of Alcohol, Tobacco, Firearms and Explosives.

10 Q.    And were you so employed on February 2nd, 2006?

11 A.    I was.

12 Q.    Okay.  And on that date, did you along with Philadelphia

13 Police Department Det. Mary Jane Perry go to 1416 Clearview

14 Street, Apartment F520 to arrest Monique Pullins?

15 A.    Yes, we did.

16 Q.    And at that time did you and Agent -- I'm sorry, you and

17 Det. Perry ask Monique Pullins for permission to search her

18 apartment?

19 A.    Yes, we did.

20 Q.    Did she grant such permission?

21 A.    Yes, she did.

22     MR. HARMELIN:  May I approach, Your Honor?

23     THE COURT:  Yes.

24 BY MR. HARMELIN:

25 Q.    Agent Wright, I'm going to show you what I've marked as

1    Exhibit DP-1 and ask you to take a look at that.

2    A.    Okay.

3    Q.    Do you recognize that?

4    A.    I do.

5    Q.    Is that a Bureau of Firearms and Explosives, Tobacco,

6    Firearms and Explosives consent form?

7    A.    Yes, it is.

8    Q.    And is that a form that was signed by Monique Pullins on

9    February 2nd, 2006?

10    A.    Yes.

11    Q.    And does that document essentially given the ATF the

12    permission to search the signatory or the signer's apartment?

13    A.    Yes, it does.

14    Q.    Okay.  Is that an accurate copy of the consent form that

15    was signed by Ms. Pullins that day?

16    A.    Yes, it is.

17    Q.    And do you recollect thereafter performing a consent

18    search?

19    A.    I'm sorry?

20    Q.    Do you recollect performing a search of the apartment

21    after Monique signed the consent?

22    A.    Yes, I do.

23    Q.    Okay.  No drugs were found, right?

24    A.    No drugs were found, correct.

25              MR. HARMELIN:  May I approach, Your Honor?

1        THE COURT:  Yes.

2    BY MR. HARMELIN:

3    Q.    In the report it said certain documents were found.  Do

4    you recollect finding that --

5    A.    Yes, I --

6    Q.    -- picture that I've marked DP-4?

7    A.    Yes.

8    Q.    And did you guys take that?

9    A.    Yes, we did.

10   Q.    Okay, thank you.

11        MR. HARMELIN:  Your Honor, subject to perhaps making

12   a photocopy of this, I move for the admission of DP-4.

13        MR. LLORET:  No objection, Your Honor.

14        THE COURT:  It may be admitted.

15        MR. HARMELIN:  Thank you.

16        (Exhibit DP-4 admitted into evidence)

17        MR. HARMELIN:  With the Court's indulgence, I think

18   I'm just about done.

19                        (Pause)

20   BY MR. HARMELIN:

21   Q.    And is also true that no drug paraphernalia was found at

22   that time?

23   A.    That is correct.

24   Q.    Thank you, sir. That's all I have.

25        MR. LLORET:  We have no cross-examination.

1          THE COURT:  I just have one question.

2          When did you -- when was this search?

3          THE WITNESS:  February 2nd, 2006.

4          THE COURT:  Okay.

5          MR. HARMELIN:  Thank you, I have no further

6    questions.

7          THE COURT:  You may step down.

8          THE WITNESS:  Thank you, Your Honor.

9          MR. HARMELIN:  Your Honor, I have a couple of

10   stipulations that I'd like to read that have been signed by

11   the Government.

12         THE COURT:  All right.

13         MR. HARMELIN:  The first stipulation is:

14         "Now this 14th day of February, 2008, it is agreed

15   by and between the Government and Monique Pullins that if Mary

16   Jane Perry were called as a witness for Monique Pullins, she

17   would testify as follows:

18         "One.  She is employed as a detective for the

19   Philadelphia Police Department, and,

20         "Two.  She was so employed at 6 a.m. on February

21   2nd, 2006 when she along with ATF Special Agent Gregory Wright

22   went to 1416 Clearview Street, Apartment F520, Philadelphia,

23   PA, to arrest Monique Pullins on the third superseding

24   indictment.

25         "Three.  She and Special Agent Wright asked Monique

Colloquy                                              38

1    Pullins for permission to search her apartment that morning

2    and Ms. Pullins agreed, signing the form marked as Exhibit DP-

3    1 to document her permission or consent to the search.

4           "Four.  She and Special Agent Wright then searched

5    Monique Pullins's apartment and found certain photographs and

6    documents but found no drugs and no drug paraphernalia."

7    Signed this 14th day of February by Mr. Lloret, myself and Ms.

8    Pullins.

9           MR. LLORET:  So stipulated, Your Honor.

10          THE COURT:  All right.

11          MR. HARMELIN:  The second stipulation was very

12   briefly to admit the Exhibit DP-1, the consent form, but the

13   witness has now identified it and it's admitted.

14          MR. LLORET:  So stipulated.

15          THE COURT:  All right, it's admitted.

16          (Exhibit DP-1 admitted into evidence)

17          MR. HARMELIN:  The third stipulation, Your Honor, is

18   as to a character witness.

19          "And now this 19th day of February 2008 it is agreed

20   by and between the Government and Monique Pullins that if

21   Faith Mole (phonetic) were called as a witness for Monique

22   Pullins, she would testify as follows:

23          "One.  She lives in Philadelphia and has known

24   Monique Pullins for 14 years.  And,

25          "Two.  She is a 2006 graduate of Temple University

1   and is employed as a case manager for Care Level Management in

2   Media, Pennsylvania.   And she knows other people that know

3   Monique Pullins.   And among the people that she knows that

4   also know Monique Pullins, she is aware of Monique Pullins's

5   reputation in the community for being a law-abiding citizen" -

6   - law-abiding person, I'm sorry -- "and that Monique Pullins's

7   reputation in the community for being law-abiding is good",

8   and it's signed 19th day of February, Mr. Bresnick, myself and

9   Ms. Pullins.

10              MR. BRESNICK:   So stipulated, Your Honor.

11              MR. HARMELIN:   Thank you, counsel.

12              THE COURT:   All right, that's made part of the

13   record.

14              MR. HARMELIN:   For now that's what I have.   I have

15   other witnesses later on.

16              THE COURT:   All right.

17              All right, Mr. Smith.

18              MR. SMITH:   Yes, Your Honor.

19          (Testimony of Asya Richardson previously transcribed

20              under separate cover, 11:31 a.m. to 3:55 p.m.)

21              THE COURT:   Mr. Smith?

22              MR. SMITH:   Yes, Your Honor.   I think we're going

23   back in order again so I think we're up to Mr. Harmelin again

24   who's going to present whatever additional information, I'll

25   finish up with my evidence that we had this morning, Your

1  Honor, and some more witnesses, and then I'm done.

2              THE COURT:  All right, Mr. Harmelin.

3              Ladies and gentlemen, we're taking witnesses out of

4  turn.  We wouldn't normally do this but for the convenience of

5  counsel and the witnesses, they've agreed to take these

6  witnesses out of turn.

7              Go ahead.

8              MR. HARMELIN:  Thank you, Your Honor.  Monique

9  Pullins calls Danielle Gay.

10                  DANIELLE GAY, SWORN

11             THE CLERK:  Please state your full name and spell

12  your full name.

13             THE WITNESS:  Danielle Gay, D-A-N-I-E-L-L-E, G-A-Y.

14                  DIRECT EXAMINATION

15  BY MR. HARMELIN:

16  Q.    Ms. Gay, where do you live?

17  A.    138 North Knott Avenue, Upper Darby.

18  Q.    Are you employed outside the home?

19  A.    Yes.

20  Q.    What kind of work do you do, Danielle?

21  A.    I'm a coding consultant.

22  Q.    A what?

23  A.    Medical coding consultant.

24  Q.    So what does a medical coding consultant do?

25  A.    Basically I read medical records every day and I assign

Gay - Direct (Har)                          41

1    an alpha-numeric number based off of that information so that

2    that hospital can bill for reimbursement.

3    Q.    Do you know Monique Pullins?

4    A.    Yes.

5    Q.    How do you know Monique Pullins?

6    A.    She's my sister.

7    Q.    Does that mean you've known her her whole life?

8    A.    Yes.

9    Q.    Do you know other people that know Monique Pullins?

10   A.    Yes.

11   Q.    Among the people that you know that also know Monique

12   Pullins, are you aware of her reputation in the community for

13   being a law-abiding person?

14   A.    Yes.

15   Q.    And what is that reputation?

16   A.    She's as far as everyone that I know, is honest, good

17   person, lends a hand when needed.

18   Q.    And listen to my question.  What is her reputation for

19   being law-abiding?

20   A.    It is good.

21   Q.    Thank you.

22   A.    She's a law-abiding person.

23   Q.    And in your opinion is she a law-abiding person?

24   A.    Yes.

25   Q.    That's all I have.

1          MR. LLORET:  No questions.

2          MR. HARMELIN:  Thank you, Danielle.

3          THE COURT:  You may step down.

4          MR. HARMELIN:  Defense calls Michelle Johnson.

5                    MICHELLE JOHNSON, SWORN

6          THE CLERK:  Please state your full name and spell

7     your last name.

8          THE WITNESS:  Michelle Johnson, J-O-H-N-S-O-N.

9                    DIRECT EXAMINATION

10    BY MR. HARMELIN:

11    Q.    What town do you live in, Michelle?

12    A.    What town?

13    Q.    Yes.

14    A.    I live in Mount Airy.

15    Q.    So you live in Philadelphia?

16    A.    Yes.

17    Q.    Okay.  Do you know Monique Pullins?

18    A.    Yes.

19    Q.    By the way, are you employed outside the home?

20    A.    Yes.

21    Q.    What kind of work do you do, Michelle?

22    A.    I work with the school district, a teaching assistant, in

23    the classroom.

24    Q.    Can you either slide up in the chair or pull the mike

25    closer to you.

1      What do you do?

2   A.    I work as a teacher's assistant at Germantown High

3   School.

4   Q.    Do you know Monique Pullins?

5   A.    Yes.

6   Q.    How long have you known her?

7   A.    About two years.

8   Q.    How did you meet Monique?

9   A.    Attending Thompson Institute in Philadelphia.

10  Q.    What were you doing there?

11  A.    We were studying to become dental assistants.

12  Q.    Do you know other people that know Monique Pullins?

13  A.    Yes.

14  Q.    Among the people that you know that also know Monique

15  Pullins, are you aware of her reputation for being a law-

16  abiding person?

17  A.    Yes.

18  Q.    What is that?

19  A.    She always abides by the law.

20  Q.    And in your opinion is she a law-abiding person?

21  A.    Yes.

22          MR. HARMELIN:   That's all I have, Your Honor.

23          MR. LLORET:   No questions.

24          THE COURT:   You may step down.

25          MR. HARMELIN:   Your Honor, with the exception of

Colloquy                                  44

1    asking the Court to take judicial notice to one thing that

2    counsel has no objection to, and with the exception perhaps to

3    stipulations to exhibits, that would conclude my presentation.

4              THE COURT:  All right.

5                        (Pause)

6         MR. SMITH:  Jerome Brisbon.

7              JEROME BRISBON, SWORN

8              THE CLERK:  Please state your full name and spell

9    your last name for the record.

10             THE WITNESS:  Jerome Brisbon, J-E-R-O-M-E, B as in

11   boy, R-I-S-B-O-N.

12                   DIRECT EXAMINATION

13   BY MR. SMITH:

14   Q.   Mr. Brisbon, what city of town do you live in, sir?

15   A.   Philadelphia, Pennsylvania.

16   Q.   What section of the city?

17   A.   North Philadelphia.

18   Q.   And how long have you lived there, sir?

19   A.   All my life.

20   Q.   How old are you?

21   A.   Forty-two.

22   Q.   Are you currently employed?

23   A.   That's correct.

24   Q.   What's the nature of your employment?

25   A.   I work for the City of Philadelphia Risk Management

Brisbon - Direct (Smi)                          45

1    Department.

2    Q.    And for how long have you worked for the City?

3    A.    Right now, a year.

4    Q.    Sir, are you familiar with Asya Richardson?

5    A.    She's my sister.

6    Q.    And you've known her all your life, is that correct?

7    A.    All my life.

8    Q.    You don't live with Asya, correct?

9    A.    No.

10   Q.    Do you know people in the community who know Asya?

11   A.    Yes.

12   Q.    And among the people in the community who know Asya, does

13   Asya have a reputation for being an honest and law-abiding

14   citizen?

15   A.    That's correct.

16   Q.    Okay.  What is her reputation, sir?

17   A.    Very good.  School person, just very nice.

18   Q.    Forgetting about those people for a moment, going to you

19   directly, in your opinion, sir, I understand she's your

20   sister, but what is your opinion of Asya's being an honest and

21   law-abiding citizen?

22   A.    Very honest, little naive, little, you know, not street

23   savoy or anything like that, but.

24   Q.    Thank you very much, sir.

25   A.    Thank you.

Frazier - Direct (Smi)                                    46

1          MR. SMITH:  Counsel.

2          MR. LLORET:  No questions.

3          MR. SMITH:  Thank you.

4          Just two more witnesses, Your Honor.  Shonta

5    Frazier.

6                    SHONTA FRAZIER, SWORN

7          THE CLERK:  Please state your full name and spell

8    your last name for the record.

9          THE WITNESS:  Shonta Frazier, F-R-A-Z-I-E-R.

10                    DIRECT EXAMINATION

11   BY MR. SMITH:

12   Q.    Ms. Frazier, do you mind if I call you Shonta?

13   A.    Sure.

14   Q.    Similar questions I'm going to ask you as well.  What

15   city or town do you reside in?

16   A.    Philadelphia.

17   Q.    What section of the city?

18   A.    North Philly.

19   Q.    And for how long have you resided there?

20   A.    All my life.

21   Q.    I hate to ask you this question but how old are you?

22   A.    Twenty-nine.

23   Q.    All right.  And do you know Asya Richardson?

24   A.    Yes.

25   Q.    Oh, excuse me, before we get to that.  Are you employed

Frazier - Direct (Smi)                    47

1  currently?

2  A.    Yes.

3  Q.    And what's the nature of your employment?

4  A.    NutriSystem.  I'm a client services team lead.

5  Q.    And for how long have you worked there?

6  A.    Almost two years.

7  Q.    And I think I asked you this question.  Do you know Asya

8  Richardson?

9  A.    Yes.

10  Q.    How do you know Asya Richardson?

11  A.    We used to work together.

12  Q.    And for how long have you known her?

13  A.    Almost like a year and a half.

14  Q.    And during the year and a half period of time that you

15  know Asya, are you familiar with other people in your

16  community, whether it's working or social or what have you,

17  who may also know Asya?

18  A.    Yes.

19  Q.    And among those people in the community who you know who

20  know Asya, does she have a reputation for being an honest and

21  law-abiding citizen?

22  A.    Yes.

23  Q.    What is that reputation?

24  A.    That she's very honest and she's a law-abiding citizen.

25  Q.    And in your opinion, forgetting about those other people

Frazier - Direct (Smi)                                    48

1    for a moment, do you have an opinion as to whether or not

2    she's an honest and law-abiding citizen?

3    A.    Yes.

4    Q.    What is your opinion?

5    A.    Very honest -- I'm sorry.  Yes, very honest, very loyal,

6    very upstanding citizen.

7    Q.    Thank you very much.

8              MR. SMITH:  Counsel?

9              MR. LLORET:  No questions.

10             MR. SMITH:  Thank you.  Last, Michelle Arrington.

11                        (Pause)

12             MICHELLE ARRINGTON, SWORN

13             THE CLERK:  Please state your full name and spell

14   your last name for the record.

15             THE WITNESS:  Michelle D. Arrington, A as in apple,

16   R-R-I-N-G-T-O-N.

17                    DIRECT EXAMINATION

18   BY MR. SMITH:

19   Q.    Ms. Arrington, good afternoon.

20         Where do you -- do you reside in Philadelphia?

21   A.    Yes, I do.

22   Q.    And what section of Philadelphia do you reside in?

23   A.    West Philadelphia.

24   Q.    And how long have you lived there?

25   A.    All of my life except for college.

Arrington - Direct (Smi)                          49

1    Q.    And are you currently employed?

2    A.    Yes, I am.

3    Q.    What's the nature of your employment?

4    A.    Clinical pharmacist.

5    Q.    And where are you employed?

6    A.    Currently I'm employed at Temple University Hospital.

7    Q.    And how long have you been there?

8    A.    Two years.

9    Q.    And do you know Asya Richardson?

10   A.    Yes, I do.

11   Q.    What are the circumstances of your relationship with Asya

12   Richardson?

13   A.    I know Asya via her sister, Ena Richardson (phonetic),

14   watched her grow up.

15   Q.    Are you friends with her?

16   A.    Yes, I am.

17   Q.    Okay. And when you say you watched her grow up, were you

18   a neighbor of hers?

19   A.    No, not a neighbor, just a friend of Ena's but I've

20   watched Asya via Ena.

21   Q.    I see.  Are you familiar -- other than her sister, are

22   you familiar with other people in the community who knows

23   Asya --

24   A.    Yes.

25   Q.    -- and may have some knowledge as to her reputation for

Arrington - Direct (Smi)                                          50

1    being a law-abiding and honest citizen?

2    A.    Yes, I do.

3    Q.    And what is her reputation?

4    A.    Her reputation is immaculate.  She's viable young lady,

5    highly motivated, educated, law-abiding citizen.

6    Q.    Okay.  Do you have your own opinion as to Asya's

7    reputation for being an honest and law-abiding citizen?

8    A.    Yes, I do.

9    Q.    What would that opinion be?

10   A.    Her reputation would be one and the same.  She's highly

11   motivated, educated, law-abiding citizen.  I think she has a

12   great set of morals or values.

13   Q.    Thank you very much.

14   A.    You're welcome.

15             MR. SMITH:  I have no other questions.  Counsel?

16             MR. LLORET:  No questions.

17             MR. SMITH:  Thank you.

18             Your Honor, that's my last witness.  My case and I

19   would rest, and I would move for the introduction of all my

20   exhibits DR-1 through DR whatever.

21             THE COURT:  I think --

22             MR. LLORET:  I think it was 12, Your Honor, and we

23   have no objection.

24             THE COURT:  -- it was 12, yes, indeed.

25        (Exhibits DR-1 through DR-12 admitted into evidence)

1      MR. HETZNECKER:  May I, Your Honor?

2      THE COURT:  Yes, indeed.

3      MR. HETZNECKER:  Lisa Thompson.  Your Honor, we

4  would call Lisa Thompson on behalf of my client, Thais

5  Thompson.

6      THE COURT:  All right.

7                    (Pause)

8               LISA THOMPSON, SWORN

9      THE CLERK:  Please state your full name and spell

10  your last name for the record.

11      THE WITNESS:  Lisa Thompson, T-H-O-M-P-S-O-N.

12               DIRECT EXAMINATION

13  BY MR. HETZNECKER:

14  Q.    Good afternoon, Ms. Thompson.

15  A.    Good afternoon.

16  Q.    Ms. Thompson, where do you reside?

17  A.    10 Golfler Drive (phonetic), Bridgeton, New Jersey.

18  Q.    And do you know my client, Thais Thompson?

19  A.    Yes, I do.

20  Q.    And what is your relationship with Thais Thompson?

21  A.    I'm her cousin.

22  Q.    And I take it you've known her all your life?

23  A.    Yes.

24  Q.    Do you know others in the community of family or friends

25  that know Ms. Thompson?

1  A.    Yes, I do.

2  Q.    And among those people that you know that know her, do

3  you know her reputation for being an honest and law-abiding

4  citizen?

5  A.    Yes, I do.

6  Q.    And what is that reputation?

7  A.    Honest and law-abiding citizen.

8  Q.    And do you have an opinion as to her reputation or as to

9  her qualities as an honest and law-abiding citizen?

10  A.    Yes.

11  Q.    And what is your opinion?

12  A.    Honest and law-abiding citizen.

13         MR. HETZNECKER:  I have nothing further of this

14  witness, Your Honor.

15         THE COURT:  Mr. Lloret?

16         MR. LLORET:  No questions, Your Honor.

17         THE COURT:  You may step down.

18         MR. HETZNECKER:  On behalf of Ms. Thompson, Your

19  Honor, we would call Kathy Fletcher.

20                    (Pause)

21              KATHERINE FLETCHER, SWORN

22         THE CLERK:  Please state your full name and spell

23  your last name for the record.

24         THE WITNESS:  KATHERINE FLETCHER, F as in Frank, L-

25  E-T-C-H-E-R.

1          DIRECT EXAMINATION

2     BY MR. HETZNECKER:

3     Q.    Good afternoon, Ms. Fletcher.

4     A.    Good afternoon.

5     Q.    Ms. Fletcher, where do you reside?

6     A.    In Salem, New Jersey.

7     Q.    And what is your relationship with my client, Thais

8     Thompson?

9     A.    That's my niece.

10    Q.    And where do you work?

11    A.    For the State of New Jersey Judiciary.

12    Q.    And what specifically is your job?

13    A.    I work in the Finance Division.

14    Q.    And how long have you held that job?

15    A.    For 25 years.

16    Q.    Now, how -- I take it you've know Ms. Thompson her whole

17    life?

18    A.    Yes.

19    Q.    And do you know others that know her in the community of

20    family and friends?

21    A.    Yes.

22    Q.    And among those that you know that know her, do you know

23    her reputation for being an honest and law-abiding citizen?

24    A.    Yes.

25    Q.    And what is her reputation?

1    A.    She is honest and law-abiding.

2    Q.    And is that also your opinion of her?

3    A.    Yes.

4          She also helps out at the school sometimes.  When she was

5    a nurse she would help out at the school.

6    Q.    Okay, thank you.

7          MR. HETZNECKER:  Your Honor, I have no further

8    questions.

9          MR. LLORET:  No questions.

10         THE COURT:  You may step down.

11         MR. HETZNECKER:  Your Honor, I believe approximately

12   a month ago I moved into the record DT-1 and DT-2.  If I did

13   not, I do so now.  And on behalf of Ms. Thompson, with that

14   evidence, we would rest.

15         THE COURT:  Any objection, counsel?

16         MR. LLORET:  No objection.  I can't remember what it

17   was --

18         MR. HETZNECKER:  It was the gun permit, DT-1 was the

19   gun permit establishing the purchase in 2000 by Ms. Thompson

20   of the gun.  And DT-2 I believe was the list, the inventory,

21   that was shown to her at the time that she was interviewed by

22   the detective.

23         MR. LLORET:  No objection, Your Honor.

24         (Exhibits DT-1 and DT-2 admitted into evidence)

25         MR. HARMELIN:  Your Honor, if I could just check

1   with the Government on the status of the stipulation.

2              MR. LLORET:  That's fine.

3              MR. HARMELIN:  The first stipulation is Mr. Lloret

4   agrees that the Court can take judicial notice of the fact

5   that July 2nd, 2005 was a Saturday.

6              The other two matters are with -- there's a

7   stipulation that defense -- that DP-2 which is a transcript of

8   a telephone conversation, two pages, that was played for Agent

9   Tropea on cross-examination is an accurate rendition of the

10  audio sounds on that tape.

11             With respect to DP-3, the same stipulation, it's a

12  seven-line transcription of another phone conversation that

13  was played for Agent Tropea on cross-examination a couple of

14  weeks ago.

15             Moving into evidence DP-2 and DP-3, I think I've

16  already moved in DP-4 which was the framed photograph from Las

17  Vegas and DP-1 which is the consent search.

18             And with that, Monique Pullins rests.

19             (DP-2 and DP-3 admitted into evidence)

20             THE COURT:  All right.

21             MR. THOMPSON:  Your Honor, can we be heard at

22  sidebar?

23             THE COURT:  Yes.

24             (The following sidebar discussion was held:)

25             MR. THOMPSON:  Your Honor, of course we've already

Colloquy                                    56

1    indicated we have rested.  I've spoken with Mr. Powell and I

2    spoke with my client.  There's a possibility that we may want

3    to call one additional witness and we wouldn't be prepared to

4    do that until the morning.

5              THE COURT:  Who is that?

6              MR. THOMPSON:  Well, we have to talk with Mr.

7    Hetznecker, it may very well be Ms. Thompson's mother. I do

8    want to speak with Mr. -- Your Honor, there's a chance we may

9    elect not to do that, but if you would give us until tomorrow

10   morning.

11             THE COURT:  Is this for -- for a character witness?

12             MR. THOMPSON:  Oh no, not a character witness.

13             MR. POWELL:  The testimony she is going to give,

14   quite a bit, is again dealing with her problem with --

15             THE COURT:  I wish you had alerted me of this

16   before, counsel.

17             MR. THOMPSON:  Your Honor, after talking with Mr.

18   Hetznecker, we may decline to do that, but that's an issue we

19   think we should explore.

20             THE COURT:  You talk to Mr. Hetznecker about it and

21   then we'll address it tomorrow.

22             MR. THOMPSON:  Very well, thank you.

23             THE COURT:  Okay. Anything else?

24             COUNSEL:  Judge, I haven't formally moved my

25   exhibits in but I requested leave to do that, so let me --  I

1    just want to get the numbers right without standing up

2    there --

3              THE COURT:  Mr. McMahon?

4              MR. MC MAHON:  I'm resting.

5              THE COURT:  Counsel, what do you anticipate the

6    length of your closing statements would be?

7              MR. LLORET:  I'm going to estimate two and a half

8    hours, Your Honor, but I think I'll be shorter than that, that

9    I will estimate.

10             MR. WARREN:  Be an hour and a half to an hour and 45

11   minutes.

12             COUNSEL:  Forty minutes, tops.

13             THE COURT:  Mr. McMahon?

14             MR. MC MAHON:  Oh, I'd say 40 minutes, maybe, 40

15   minutes.

16             MR. LLORET:  And Your Honor, I'd anticipate about 30

17   or 40 minutes in rebuttal, depending of course on --

18             COUNSEL:  I'll be about an hour.

19             COUNSEL:  I'll be about an hour as well.

20             COUNSEL:  It may be a full day, if we can get

21   started at like 9 --

22             THE COURT:  That's what I'm trying to calculate,

23   where it will take us all day, it may take a little more --

24             COUNSEL:  I was figuring that today.

25             THE COURT:  All right, what we'll do, I'm going --

Colloquy                                    58

1    there's nothing more that we can do today.  I'll give you the

2    opportunity to talk to Mr. Hetznecker.  Tomorrow we'll either

3    hear briefly your witness and go on with closings, or we'll

4    start with closings.  Okay?

5              COUNSEL:  Very well.

6              MR. THOMPSON:  Fair enough, sir.

7              THE COURT:  You'll have a chance to take a look at

8    the charge.  You're not going to find anything new in that,

9    it's exactly what's been submitted for the most part, it's

10   standard jury instructions.  But if there's any problem with

11   it, let me know tomorrow morning.

12             COUNSEL:  Okay, tomorrow morning.

13             COUNSEL:  Just on the verdict sheet, just on the

14   verdict sheet, I wanted to ask you --

15             THE COURT:  Why don't we talk about it then.

16             COUNSEL:  The verdict sheet, where you indicate --

17   you want me to get it and show -- the part where you have

18   special interrogatories as to the amounts of the drugs. It

19   says, "if you find anybody guilty, go on to this".  I just --

20   it's not real clear.  I think you have to delineate, put the

21   person on that particular sheet who you found.  In other

22   words --

23             COUNSEL:  It lumps them together.

24             COUNSEL:  -- it lumps them together, yes.

25             COUNSEL:  Do you find, hypothetically, Alton Coles,

1  Timothy Baukman, Monique Pullins -- less than a detectable

2  mixture of substance, instead of -- hypothetically the jury

3  could find Monique Pullins responsible for a quantity less

4  than --

5              COUNSEL:  Right.

6              COUNSEL:  -- they find Alton Coles --

7              COUNSEL:  For example, my case, just for example,

8  they could find that he's responsible for the --

9              COUNSEL:  I thought you were concerned about

10  Monique?

11             COUNSEL:  No, I'm just giving an example.  So they

12  each one could be found guilty of the conspiracy but could be

13  responsible for a lesser amount.

14             COUNSEL:  It's at least considerable, Your Honor,

15  that the jury could find that the entire group has conspired

16  to distribute, in terms of responsibility --

17             COUNSEL:  Right.

18             COUNSEL:  -- or lack of, I guess that is a

19  possibility.

20             COUNSEL:  That's all I'm asking.

21             COUNSEL:  I would join in that request.

22             COUNSEL:  What we could do is somehow -- just put

23  the name of the person --

24             COUNSEL:  Break them up.

25             COUNSEL:  -- onto the sheet as to if you find Tim

1    Baukman guilty, put his name on this special interrogatory,

2    fill in the blank for him, and then find -- obviously if you

3    don't find him guilty --

4              THE COURT:  You will have to break it down in

5    detailed fashion --

6              COUNSEL:  Into individual conspiracy verdicts as to

7    individual defendants followed by individual special

8    interrogatories for each defendant.

9              COUNSEL:  Right.

10             COUNSEL:  That's what I was --

11             COUNSEL:  That's the only thing I was --

12             MR. HARMELIN:  I had one concern.  And that had to

13   do with -- it had to do with the instruction on money

14   laundering.  It was the question asked by Mr. Warren of one of

15   the witnesses, were you charged with money laundering like

16   Monique Pullins.  Well, as it turns out, Monique Pullins was

17   never charged with money laundering.  I discussed this with

18   Mr. Lloret.  He's willing to join my request that in

19   instructing on the crime of money laundering, say something

20   along the lines of you may have heard one of the counsel asked

21   a question that suggested that Monique Pullins was charged

22   with money laundering, there's a stipulation between the

23   Government and Mr. Harmelin that she was never charged with

24   money laundering.

25             THE COURT:  In each one of the -- all right, I'll

Colloquy                                           61

1    take a look at them.  But in each one of the charges I detail

2    at the very beginning which defendants are charged.

3              MR. HARMELIN:  I understand.  My concern is that

4    counsel asked a question which assumed a fact that --

5              THE COURT:  Well, assumed they find her guilty of

6    money laundering, but she hasn't been charged with --

7              MR. HARMELIN:  Thanks, Judge.  I'm aware of that.

8              COUNSEL:  Judge, one last thing.  Tomorrow morning

9    you'll rule on the Rule 29 motions which are --

10             THE COURT:  I will determine whether I will rule on

11   them or whether I will rule on them after the jury has made

12   its decision.

13             COUNSEL:  Thank you.

14             THE COURT:  Rule 29 permits that.

15             COUNSEL:  Right.

16             COUNSEL:  And Judge, just for the record, and since

17   I've rested, I would just renew my Rule 29 for the record.

18             THE COURT:  All right.

19             COUNSEL:  Judge, just so we're all clear, after all

20   our fact witnesses and so forth are done, will we have a few

21   minutes with Your Honor just to make sure that everybody is

22   clear on the instructions and nobody has any --

23             COUNSEL:  Yes, I would like --

24             THE COURT:  Well, we'll deal with that first

25   thing --

Colloquy                                          62

1          COUNSEL:  Because I'm going to read it again

2  tonight.

3          THE COURT:  When you go back, we'll finish tomorrow,

4  when you go back and you take a look, if you find anything

5  that you have a real problem with, fax that into my office --

6          COUNSEL:  Okay.

7          THE COURT:  -- and we will take a look at it.

8          COUNSEL:  Can we email it too?

9          THE COURT:  If you know our address.

10          COUNSEL:  Judge, I understand --

11          COUNSEL:  It's a secret?

12          COUNSEL:  -- I understand that you're withholding

13  your ruling on the Rule 29 but I do not expect to be arguing a

14  924(c) count tomorrow due to the fact that we never heard

15  evidence on the --

16          THE COURT:  Right.  No, that has been agreed, and --

17          COUNSEL:  That's fine, Judge.

18          COUNSEL:  I have one more question before we break.

19          THE COURT:  Yes, indeed.

20          COUNSEL:  So I know just how much of my luggage to

21  bring tomorrow, can I assume that are no rebuttal witnesses at

22  this moment?

23          COUNSEL:  We don't intend to call rebuttal

24  witnesses.  We moved a few exhibits in, other than moving the

25  rest of them -- unless you want us to.

1          THE COURT:  Okay.

2          COUNSEL:  No.

3          COUNSEL:  I didn't think so.

4          THE COURT:  All right.

5               (End of sidebar discussion)

6          THE COURT:  Ladies and gentlemen, it is 4:15.  You

7     have heard all of the evidence and testimony in this matter

8     with the possible exception of one brief witness tomorrow

9     morning.

10         What we're going to do at this point is recess.

11    After the evidence is completely closed, you will then hear

12    the closing statements of counsel.

13         I anticipate the closing statements of counsel will

14    take some time.  There are a number of lawyers who want to

15    speak with you and a number of issues that they want to

16    address, and I anticipate that we will finish with the closing

17    statements of counsel if not tomorrow, then the following

18    morning.

19         After closing statements of counsel, comes the

20    charge of the Court, the jury instructions.  Those

21    instructions are rather lengthy.  We will see when we get

22    finished with the closing statements of counsel and then

23    determine exactly when we will charge you and when you will

24    have this case to decide.

25         So that's what -- that's tentatively the schedule at

Colloquy                                        64

1    this juncture.  I'm going to let you go at this point.  I'm

2    going to ask you to be back tomorrow at 9:15.  We may address

3    some issues with counsel before we actually get started

4    tomorrow but we're going to try and start it promptly so that

5    you can hear counsel, and I'm sure you're looking forward to

6    that.

7                All right, recess until tomorrow.

8                         (Jury exits)

9               (Matter concluded at 4:20 p.m.)

10                           *  *  *  *

1

2

3          **C E R T I F I C A T I O N**

4

5          I, Sandra Carbonaro, court approved transcriber,

6  certify that the foregoing is a correct transcript from the

7  official electronic sound recording of the proceedings in the

8  above-entitled matter.

9

10  *Sandra Carbonaro*

11  SANDRA CARBONARO

12

13  Doman Transcribing & Recording Svcs.    5-22-08

14  AGENCY                                  DATE

15

16

17