UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,          )
                                   )   Philadelphia, PA
                                   )   CR-05-00440-RBS-1
     vs.                           )
                                   )   April 16, 2009
ALTON COLES,                       )
                                   )
               Defendant.          )

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE R. BARCLAY SURRICK
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Government:          RICHARD LLORET, ESQUIRE
                             MICHAEL BRESNICK, ESQUIRE
                             U.S. ATTORNEY'S OFFICE
                             615 Chestnut Street, Suite 1250
                             Philadelphia, PA  19106


For the Defendant:           CHRISTOPHER WARREN, ESQUIRE
Alton Coles                  1500 Walnut Street
                             Suite 1500
                             Philadelphia, PA  19102



Audio Operator               MICHAEL FINNEY


Transcribed by:              DIANA DOMAN TRANSCRIBING
                             P.O. Box 129
                             Gibbsboro, New Jersey 08026-129
                             (856) 435-7172
                             FAX:  (856) 435-7124
                             Email:  Dianadoman@comcast.net




Proceedings recorded by electronic sound recording; transcript
produced by transcription service.

2

1                          I N D E X

2                               PAGE

3       Sentence                  24

Colloquy                                    3

1              (Court in Session)

2          THE COURT:  We have the case of the United States v.

3     Alton Coles.  It's number 5-440-1.  Counsel, please identify

4     yourselves for the record.

5          MR. LLORET:  Yes, Your Honor.  Richard Lloret on

6     behalf of the Government.  With me at counsel table is Michael

7     Bresnick, my co-counsel, as well as Agent Michael Ricko from

8     the ATF.

9          AGENT RICKO:  Good morning.

10          MR. WARREN:  Good morning, Your Honor.  Christopher

11     Warren on behalf of Mr. Coles who is seated here to my left.

12          THE COURT:  All right.  Counsel, we're here this

13     morning for sentencing of Mr. Coles.  The presentence

14     investigation report was sent to counsel.  There were no

15     objections lodged to that report.  However, Mr. Warren, you

16     have raised certain objections in your sentencing memorandum.

17          MR. WARREN:  Some of the -- some of the -- I've

18     discussed this with Mr. Lloret.  Some of the objections dealt

19     with whether or not there was a mandatory life sentence on the

20     drug conspiracy charge.  He disagrees with my argument that the

21     New Jersey conviction was not final at the time that the

22     conspiracy began, but I think we do have an agreement on the

23     Rutledge (phonetic) argument, that Rutledge makes the drug

24     conspiracy a lesser included offense of the CCE, and I believe

25     that he agrees with me on that, which I, frankly, would moot

Colloquy                                              4

1    out the other argument as far as I see it.

2            THE COURT:  Well, I guess it would moot it out, but I

3    think it would be prudent to make decisions on the issues so

4    that everyone knows where we are.

5            MR. WARREN:  I agree, sir.  We agree.

6            THE COURT:  All right.  With regard to the mandatory

7    life sentence on Count One, it's your position that the --

8    there are not two felony convictions that occurred.

9            MR. WARREN:  It's my position, Judge, that although

10   the New Jersey offense he was arrested for is before the

11   conspiracy began in 1998, he wasn't actually sentenced on it

12   until 2002, and under New Jersey law, he had 45 days from the

13   date the sentence was imposed to appeal, which would make,

14   under my view, the conviction final in 2003, and since that is

15   after the conspiracy began in 1998, our initial position was

16   that the New Jersey conviction was not final at the time he

17   began commission of this particular offense, and the statute

18   requires the third offense to have begun after the two previous

19   convictions became final, and since the New Jersey conviction

20   was not final after the conspiracy began in 1998, it was my

21   position he did not have two prior felony convictions that

22   preceded commencement of the conspiracy charge.

23           THE COURT:  All right.  Mr. Lloret?

24           MR. LLORET:  Yes, Your Honor.  The -- to put this in

25   encapsulated clearly, the real nub of the issue is whether the

Colloquy                                    5

1    New Jersey conviction has to be final for all purposes before

2    the conspiracy starts or before it ends, and the -- the correct

3    law, the correct legal standard we assert is that it has to be

4    final before the conspiracy ends.

5              In this case, there is no factual dispute that the

6    conspiracy went on until 2005.  This -- and there is no factual

7    dispute that the conviction in New Jersey was final, under

8    whatever definition of final you choose to make, in 2003.

9              There is an opinion.  Counsel cited the <u>Allen</u> opinion

10   in his brief.  I did some research this morning.  There is a

11   subsequent decision in the Eighth Circuit, which I believe

12   addresses this head on.  That's <u>United States v. Pratt</u>.  It's

13   553 F.3rd 1165, and in <u>Pratt</u>, the situation was much the same,

14   virtually four square as it is in Coles, and that is it

15   involved a situation where there were overt acts in the

16   conspiracy after the final decision or the decision, the prior

17   conviction became final, and that court held that in that set

18   of circumstances, it was a final decision.

19             So I feel secure in arguing to the Court that that

20   interpretation of the law is the correct one.  In this case, if

21   the Court adopts the reasoning in <u>Pratt</u>, there really -- at

22   that point, there would be no issue factually.  Thank you.

23             THE COURT:  All right.

24             MR. WARREN:  And, Judge, I have no reason to disagree

25   with Mr. Lloret's presentation of the facts involving <u>Pratt</u>.

Colloquy                                        6

1      THE COURT:  All right.  The conspiracy in this matter

2      went on from 1998, '99 to 2005.  This conviction was final

3      certainly some time in 2003.  I'm satisfied that based upon

4      <u>Pratt</u> and based upon the facts in this particular situation,

5      that there are two final prior convictions that support the

6      mandatory minimum life sentence.

7           So I'm going to overrule your objection, Mr. Warren,

8      and we will address the matter as though Counts One and --

9      well, Count One as a mandatory minimum sentence.  All right?

10          MR. WARREN:  All right.  That would raise a second

11     issue, Judge.  In the <u>Rutledge</u> case cited in my memorandum,

12     that's where the Supreme Court held that 846, which is the drug

13     conspiracy here, is, in fact, a lesser included offense of the

14     continuing criminal enterprise, and in that case, they held

15     that I think what the Seventh Circuit had done there is impose

16     two concurrent life terms, and the Supreme Court held that you

17     can't do that, because there is no evidence that Congress

18     intended multiple punishments for separate offenses under the

19     circumstances, and the Supreme Court held that what you had to

20     do, because even a penalty as minimum as a $50 special

21     assessment I believe was at issue there, you cannot impose a

22     concurrent life term on Count One.  In fact, my reading of

23     <u>Rutledge</u> is that you have to vacate the conviction on Count

24     One, and if, per chance, the Court of Appeals might set aside

25     the conviction on the continuing criminal enterprise

Colloquy                                    7

1    conviction, I believe the Supreme Court has said under those

2    circumstances, the Circuit Court would be allowed to reinstate

3    the conviction on Count One.  I believe the Government agrees

4    with me, but I don't want to speak for Mr. Lloret.

5           THE COURT:  Mr. Lloret, the <u>Rutledge</u> case does say

6    what it says.

7           MR. LLORET:  There is no question that it does, Your

8    Honor, and, in fact, I'm in the position of having briefed this

9    and conceded on appeal in a previous case.

10          THE COURT:  I saw that opinion.

11          MR. LLORET:  Oh, well, then Your Honor is familiar

12   with my concession on appeal.  I'll stand by that.  I mean,

13   clearly, it's the law, and that's where we are.

14          Your Honor, because this would require approvals at a

15   level much higher than my paid rate and we are dealing with

16   this issue overnight, I'm not in a position at this moment to

17   move to vacate Count One.  However, I fully acknowledge that

18   under the circumstances, the course of action that Mr. Warren

19   suggested by -- is the appropriate one under the law.

20          THE COURT:  Well, the <u>Rutledge</u> case does suggest that

21   that's the way to deal with the situation, to vacate the

22   conviction.  Quite frankly, I was of the opinion that

23   suspending the sentence probably would make more sentence, but

24   the Supreme Court has spoken.

25          MR. LLORET:  Judge, I think a number of other trial

Colloquy                                                    8

1    judges were of the same opinion before <u>Rutledge</u>, and

2    apparently, the $50 special assessment got in the way.  So --

3              THE COURT:  Evidently.

4              MR. LLORET:  So I leave it at that, Your Honor.

5    Thank you.

6              THE COURT:  All right.  We will follow <u>Rutledge</u>.  We

7    will sentence only on Count Two, mandatory life sentence.

8              MR. WARREN:  Okay.  And, Judge, that raises the third

9    issue that I -- the section of my memorandum, I talk about the

10   mandatory minimums, and that deals with the consecutive

11   sentences for the 924$^{©}$ violations.

12             First and foremost, and I believe the Government

13   agrees with this, because they pointed out in their sentencing

14   memorandum that there is a mistake in the presentence report.

15   It has him convicted of more 924(c)'s than he was actually

16   convicted of, and in my memo, I identified -- I think it's

17   paragraphs -- page 2 of the presentence investigation report

18   identifies all of the offenses that he was convicted of

19   including Counts 181 through 184, which he was acquitted of two

20   and the Court granted judgment of acquittal on two.  So I think

21   the presentence report has to be corrected on page 2 to reflect

22   that he was not convicted of those, and in paragraphs 159

23   through 162 of the PSI, it also lists those 924$^{©}$ offenses as

24   being convictions, and paragraph 163 I believe identifies a

25   higher mandatory minimum consecutive term than that which

Colloquy                                    9

1    applies here, which is 55 years.

2              So I believe that paragraphs 159 through 162 have to

3    be omitted or deleted, because he wasn't convicted of those.

4    Paragraph 163 should reflect that the mandatory minimum

5    consecutive term is 55 years, and page 2 where it lists the

6    offenses of which he is convicted should delete -- I believe

7    it's Counts 181 through 184.  I believe we're in agreement with

8    that on the Government as well.

9              MR. LLORET:  Yes, Your Honor.

10             THE COURT:  All right.  Counts 181 and 182, the

11   defendant was acquitted.  The PSR should be amended to reflect

12   that.  Counts 183 and 184 were dismissed.  The presentence

13   report should be amended to reflect that.

14             With regard to your argument, Mr. Warren, about the

15   consecutive sentences and the Second Circuit opinion --

16             MR. WARREN:  I understand I've already lost that,

17   Your Honor.  It's my understanding in speaking with Mr. Lloret

18   this morning that that argument was addressed by one of my

19   colleagues.  I'm sure if I had made it, the result would have

20   been different, but the Court has already ruled on this issue.

21             I just raise for the record the Williams case which

22   is cited in my memorandum in which the Second Circuit held that

23   the language of 924$^{©}$ states that except to the extent a higher

24   minimum term is required under any other provision of law, and

25   we do have a higher minimum term of imprisonment I suspect.

Colloquy                                        10

1    When the Government finishes identifying the evidence under the

2    CCE, it would be a mandatory life term.  The Second Circuit

3    held in <u>Williams</u> that if you have that situation, then you

4    don't get the consecutive mandatory minimum terms under 924©.

5           Again, I understand the Court has ruled on this in

6    this very case in connection with another defendant, but I

7    simply raise my objection and believe that the <u>Williams</u> case is

8    the correct result here.

9           MR. LLORET:  Your Honor, just briefly, for the same

10   reasons we argued in the McGeth matter, there are several

11   Circuit Court opinions that address this.  We were able to

12   identify overnight three at least, <u>Jolivette</u>, which is 257

13   F.3rd 581, <u>Alaniz</u>, A L A N I Z --

14          THE COURT:  It's an Eighth Circuit.

15          MR. LLORET:  Yes, Your Honor.  Your Honor is familiar

16   with it.  So I won't belabor this.  Bottom line, Your Honor,

17   the <u>Williams</u> case stands alone.  Its reasoning we believe is --

18   is incorrect.  We believe that the correct interpretation of

19   the statute is that the mandatory minima that are excluded or

20   that are not to be taken into account under the statute are

21   only those that apply to gun counts and not to the drug -- if

22   there is a drug mandatory minimum, the gun mandatory minimum is

23   to be applied in addition to that.  We'll leave it at that.

24          THE COURT:  All right.  Mr. Warren, I'm going to

25   overrule your objection.  The Fourth Circuit has spoken to the

Colloquy                                11

1    issue.  The Eighth Circuit has spoken to the issue.  I have

2    already ruled in the McGeth case on this particular issue, and

3    I think that the Third Circuit will follow the Fourth and the

4    Eighth Circuit.  I think to accept the interpretation of the

5    Second Circuit is to disregard Congress's intent in this entire

6    situation.  So I am going to deny your request in that regard.

7    All right?

8           MR. WARREN:  All right.  Judge, that brings us to

9    section B of my memorandum, which speaks about the mandatory

10   life term under the continuing criminal enterprise statute.

11   Math has never been my forte, but I believe I actually got the

12   numbers correct.

13          In order to -- and again, I cite the Tidwell

14   (phonetic) case in there, which I'm sure the Court is aware

15   strips me of any ability to make at jury trial, that the jury

16   has to decide these quantities or that they had to be proven

17   beyond a reasonable doubt, and, in fact, they were charged in

18   the indictment.  So I can't make that.

19          The Third Circuit has made it quite plain that

20   because the statutory maximum penalty under the continuing

21   criminal enterprise statute is life, that the Court -- that

22   this is a sentencing enhancement, and as such, it does not have

23   to be submitted to the jury.  They don't have to make findings,

24   and the Court is allowed to make the requisite findings by a

25   preponderance of the evidence.

Colloquy                                          12

1          I also understand that the presentence investigation

2    report states in paragraph 23 -- it has quantities in there,

3    2,795 kilograms of cocaine, which would certainly exceed 150,

4    and it also talks about 300 kilograms of cocaine base.  Those

5    would be the quantities that were distributed during the course

6    of the conspiracy by its members.

7          I did not object to this.  I am not prepared to

8    concede it.  My only request, and I've made this to the

9    Government, is that they identify the evidence which they

10   believe would support any fact findings that the Court makes

11   with respect to the quantities.

12              THE COURT:  All right.  Mr. Lloret?

13              MR. LLORET:  Yes, Your Honor.  If I may, I am

14   prepared to do that by proffer, Your Honor, and I think that

15   that is acceptable to counsel.  We can lay out the record.

16              MR. WARREN:  Without objection.

17              THE COURT:  All right.

18              MR. LLORET:  Your Honor, first of all, the Government

19   relies on the testimony at trial of -- and incorporates by

20   reference, obviously, all of the testimony at trial.  This was

21   a seven week trial, at which a variety of evidence was educed

22   about the length of the conspiracy which extended from 1998 to

23   2005 as well as the amounts of the -- of cocaine and cocaine

24   base that were being distributed.

25          I will identify specific -- in order so that the

Colloquy                                    13

1    record is clear, Your Honor, I'd like to identify specifically.

2    This will take a little bit of time but I think it's

3    worthwhile, my identifying what the Government would prove if

4    called upon to educe evidence here at sentencing as opposed to

5    trial.  It was a long trial, and I know memories grow or fade

6    after some period of time, but let me -- let me go through the

7    Government's drug calculations based on the evidence that is

8    available to the Government and available to Pretrial Services

9    and to the Court at sentencing --

10               THE COURT:  All right.

11               MR. LLORET:  -- which includes not only the evidence

12   at trial, but also, additional evidence.

13               THE COURT:  All right.

14               MR. LLORET:  The testimony of Kristina Latney and

15   others identified the beginning date of Coles' cocaine

16   distribution enterprise.  It certainly began in 1997 and as

17   early as January 1st of 1998.  There was additional evidence at

18   trial that it actually proceeded that time, but certainly, it

19   was going on at that point in time.

20               Historical information provided by several

21   cooperators, including Charlton Custis and others, indicate

22   that as early as 2001, he was moving -- that is, Mr. Coles was

23   moving four and a half to nine ounces of crack per week at the

24   2000 block of Cecil Street during the period 2001 to 2005.  In

25   2002, a witness identified Terry Walker and Randall Austin as

1    suppliers of weight amounts of cocaine including a one kilogram

2    deal that went sour on April 14th of 2002, which resulted in

3    the homicide committed by Randall Austin at the Philadelphia

4    Zoo.  2002, approximately 500 grams of cocaine were recovered

5    at 2636 Daphney Road in Philadelphia on April 15th of 2002

6    along with firearms, packaging material, and many other items

7    of paraphernalia that were consistent with a large cocaine

8    stash house and distribution point.

9           Those items were also consistent with what was found

10   in the location of 339 Essex Avenue in August of 2005.  In

11   fact, in many instances, were remarkably similar to that,

12   indicating that this was an ongoing criminal conspiracy that

13   had most of its elements intact certainly by 2002.

14          2003, Mr. Walker and Hakim Johnson were seen at

15   Tamika's Bar (phonetic) in West Philadelphia.  Walker delivered

16   approximately 250 grams of powder cocaine to Mr. Hakim Johnson.

17   Both of these were co-conspirators.  They were arrested and

18   charged in the State Court.

19          From 2001 to 2005, I will not go through the many

20   episodes of cocaine distribution that are alleged in the

21   indictment that relate to the Paschall Homes.  I will say that

22   they proceed in time from March 22nd of 2001 involving the

23   defendant, Anwar Linder, and proceed to allege a variety -- a

24   large number of arrests and recoveries of cocaine and cocaine

25   base from Anwar Linder, from Desmond Faison, from Tyreek

Colloquy                                      15

1    McGeth, as well as from Lynette Simpson, another co-

2    conspirator.

3                Information derived from a cooperator by the name of

4    Alfonse Zuguar indicated that from June of 2004 until his

5    arrest or until an arrest in September of 2004, there were

6    approximately four and a half ounces of cocaine per week for

7    four months.  From late September of '04 until early October,

8    2004, Zuguar was obtaining cocaine from Alton Coles, and he

9    was, indeed, obtaining cocaine from Alton Coles before that.

10               During the period of late 2004, he was obtaining from

11   Hakim Johnson, who was a courier for Alton Coles.  By November

12   of 2004, Alfonse Zuguar was obtaining about four and a half

13   ounces for $2,900 and then -- or January of 2005, Mr. Zuguar

14   began dealing directly with Alton Coles.  He went from four a

15   half ounces to nine ounces per week and then up to 18 ounces or

16   half a kilo at a time.  By April of 2005, he had graduated to

17   kilo amounts on a weekly basis from Hakim Johnson to Alfonse

18   Zuguar, Hakim Johnson being a courier for Alton Coles, a total

19   of approximately nine kilograms of crack that were distributed

20   by Alfonse Zuguar in approximately one year attributable to

21   Alton Coles.

22               Mr. Barry White gave information corroborated by

23   Charlton Custis that Charlton Custis did approximately four and

24   a half ounces per week or 18 ounces per month for about five

25   and a half years, which would have worked out to about 33 kilos

Colloquy                                    16

1    of crack cocaine distributed from the Cecil Street location.

2    Simpson's information extended for a period from the summer of

3    2001 until February 14th of 2005, approximately 33 kilos of

4    crack during that period, 7.5 kilos per year or in total,

5    approximately 78 kilos of crack attributable to the Paschall

6    Homes side of the distribution network.

7           Mr. Faison supplied information that he dealt

8    approximately three kilograms of cocaine per month from Alton

9    Coles through his street vending organization at Paschall

10   Homes.  This cocaine was cut before it was sold and likely

11   resulted at about 50 percent ratio, approximately six kilograms

12   of crack per month at the street level.  Mr. Faison was also

13   obtaining large amounts of cocaine, that is, powder cocaine for

14   redistribution and weight quantity.

15          Known crack dealers at the Cecil Street location were

16   Robert Cooper, Keenan Brown, Leroy Perkins (phonetic), Troy

17   Wilson, Robert Payton (phonetic), Barry White.  The six

18   kilograms of crack a year sold at Cecil Street is probably a

19   very conservative amount.  The rate of crack sales is 36

20   kilograms per year at Paschall Homes, six kilograms per year at

21   Cecil Street.  Other locations including Baltimore through Gary

22   Creek in West Chester, which was a known location where were

23   weight was distributed are not being used in the calculations.

24          In sum, Your Honor, and I will not -- I will cut to

25   the bottom line, Your Honor.  Suffice it to say based on the

Colloquy                    17

1    totality of the cooperating witnesses, the totality of the

2    evidence at trial, which included seizures of enormous amounts

3    of cash exceeding $1.0 million in cash, the location of a

4    number of cocaine storage facilities, the crack totals for this

5    period of time using 40 kilograms per year, a relatively

6    conservative number, times about seven or eight years, resulted

7    in 306 kilograms of crack.  The actual total crack is likely to

8    be much closer to totals of cocaine which are in excess of

9    2,000 kilograms of cocaine at approximately 1 kilo per days

10   over the period of 7.66 years, which is a conservative estimate

11   of the -- of the conspiracy's duration.

12          Your Honor, none of these calculations are what I

13   would say a stretch in terms of how much weight was being

14   distributed.  They are all very conservative, and I think they

15   amply establish the basis for imposing the mandatory life

16   sentence for a kingpin.

17          MR. WARREN:  Your Honor, I have no reason to quibble

18   with Mr. Lloret's numbers or recitation of the evidence or any

19   of the information that was contained in the discovery

20   materials, and the only issue as I see at this particular point

21   is whether or not you find that information reliable.  If you

22   do, then you have an adequate basis to make your findings.

23          THE COURT:  I do find that information reliable, Mr.

24   Warren, and I find that, certainly, the requirements for a life

25   imprisonment term under Count Two have been met.  The volume of

1    cocaine here was enormous, volume of crack and powder cocaine,

2    and the evidence at trial established that without question,

3    and I so find.  All right?

4              MR. WARREN:  Your Honor, that may render somewhat

5    academic the guidelines in the 3553(a) factors.  I identified

6    in paragraph note 4 in my memorandum after I met with my

7    client, he had identified some of this stuff.  I believe after

8    speaking with him this morning, he is prepared to withdraw to

9    the -- I call them corrections.  He's prepared to withdraw what

10   I guess are objections in footnote 4 of my memorandum.

11             It was stuff like, Judge, he recalled Desmond Faison

12   testifying that he began supplying Faison in 2004 instead of

13   2002 as set forth in the presentence report.  He also -- the

14   presentence report says that he accompanied Amin Wiggins when

15   Wiggins purchased a gun and that kind of stuff.

16             He -- I have spoken to him this morning, and he

17   really doesn't want to press those objections.  Is that right,

18   Mr. Coles?  Can you speak?

19             MR. COLES:  Yeah.  That's correct.

20             THE COURT:  All right.

21             MR. WARREN:  Okay.  So with that, Judge, I believe we

22   resolved all the legal issues.  I mean, I made kind of a

23   guidelines type pitch in my sentencing memorandum.  It is

24   entirely academic, most respectfully, at this point given that

25   he is looking at a statutory minimum life term under the

1    continuing criminal enterprise statute.

2         So I understand that the Court -- the Government is

3    recommending that you do it.  I understand if you want to do

4    it.  I certainly don't think it's necessary at this point.  I

5    think the guidelines are a moot issue.

6         THE COURT:  All right.

7         MR. LLORET:  Your Honor, we would like the Court's

8    findings under the guidelines.  One never does know when one

9    goes up to the Third Circuit what will, in fact, happen.  So I

10   do ask that the Court make a determination.

11        I will simply rely on the guideline analysis that

12   we've made in our sentencing memoranda.  I don't think I need

13   to go through that and read it to the Court.  So I'll leave it

14   at that.  But suffice it to say, Your Honor, we believe that

15   under all of the elements and factors that the Court is called

16   upon to review and to consider under 3553(a), Mr. Coles has

17   amply demonstrated that he deserves a life sentence.  The

18   guidelines clearly would be to some extent vitiated if in this

19   set of circumstances, Mr. Coles were not given a life sentence.

20   There -- the -- the amounts of cocaine, the destruction levied

21   upon society generally, the long-term nature, the -- the

22   extreme criminal history, 18 criminal history points, where 13

23   suffice to give you the highest level that you can obtain under

24   the guidelines, all of these indicate that Mr. Coles has put

25   himself, as they -- they say colloquially, down and -- and to

Colloquy                                    20

1   the right of the sentencing guidelines grid.  So far, that --

2   it's really off the grid, and nothing but a life sentence is

3   really going to suffice, whether it's under the guidelines or

4   under 3553(a).  Thank you.

5          MR. WARREN:  Your Honor, I just want to state for the

6   record, Judge, as I said in footnote 4, other than the stuff

7   that we have gone over, the calculations and the presentence

8   investigation report of the offense level, they're correct.

9   All right?  So we don't have any objection to the calculations.

10  They're correct.  So --

11         THE COURT:  All right.  Mr. Warren, do you have

12  anything more you want to say on behalf of your client?

13         MR. WARREN:  Judge, there is not too much I can say

14  at this particular point.  He is subject to a statutory minimum

15  term of life imprisonment.  It is, I am sure, an extremely sad,

16  sad day for him.  The words contrition and remorse are empty

17  and hollow to the way he's probably feeling right now.  I wish

18  there is something I could say, but the Court has absolutely no

19  discretion whatsoever.  You are required by Congress to

20  incarcerate him for the rest of his natural life, and nothing I

21  or he can say can change that fact.

22         THE COURT:  Mr. Lloret, do you have anything further?

23         MR. LLORET:  Your Honor, I think I've said what I had

24  to say in the last summary.  It's never a pleasant duty to come

25  before the Court and ask for life, but I think absolutely,

Colloquy                                          21

1    Congress does require it, and in this case, it's well deserved.

2              THE COURT:  In this situation we have not only life,

3    but we have those mandatory --

4              MR. WARREN:  Correct, sir.

5              THE COURT:  All right.  Mr. Warren, do you want to

6    bring your client forward?  Mr. Coles, I'm going to impose

7    sentence on you in a few minutes.  Before I do that, however, I

8    will hear anything that you want to say.

9              MR. COLES:  I guess I want to say I definitely -- I

10   never thought it would come to this, but it came to this, and I

11   don't -- me personally, I don't think life is deserved by no

12   human being for selling drugs, period, because a lot of times,

13   we like -- we are a product of our environment, and like me,

14   the streets raised me.  My father wasn't there, and -- excuse

15   me.  My father was a crack head.  My mother kicked me out when

16   I was 12.  So I became a man of my own.

17             So I never did no time.  I never did -- my longest

18   sentence was seven, eight months.  So you never respect your

19   life or value it until it's taken away from you.  That's

20   basically all I got to say.

21             THE COURT:  All right.  In many respects, this case

22   is somewhat of a tragedy.  Mr. Coles is going to spend the rest

23   of his life in jail.

24             The crime that we are talking about here, however, is

25   a horrendous crime.  Mr. Coles is running a drug operation that

Colloquy                                                                22

1    covered not only the Philadelphia area, but went into Maryland

2    and went over to New Jersey.  There was a huge amount of drugs

3    involved and many, many people.  There were 22 defendants in

4    this particular case.

5             The amount of drugs involved was staggering.  The

6    money involved was even more staggering.  Millions and millions

7    and millions of dollars.  When searches were conducted in this

8    matter, they found bags full of money.  I think there was nine

9    hundred and some thousand dollars in cash found in a New Jersey

10   home.  So the crime here was just horrendous, and the

11   punishment that has to be imposed to fit that crime has to be

12   significant also.

13            The defendant has a prior criminal history.  He has

14   eight prior convictions.  He was a high profile drug seller

15   too.  Everybody in the area knew Ace Capone, and everybody, I

16   think, knew what business he was in in addition to Takedown

17   Records.  So we have to impose a sentence that fits Mr. Capone

18   and will deter others who feel that they want to get involved

19   in this kind of situation so that they can drive Bentleys and

20   Mercedes and buy homes worth hundreds of thousands of dollars.

21   The punishment has to fit the crime and deter.  We obviously

22   have to protect the public, and the sentence that I have to

23   impose here will certainly protect the public from Mr. Coles

24   from any future criminal activity.

25            So in looking at the situation, yes, it is a tragedy

1    that you have to send anybody to jail for the rest of their

2    life.  There is no question about that, but the crime here

3    certainly calls for extreme punishment, and that punishment

4    will be meted out.

5             In addition to the life sentence, there are mandatory

6    minimum consecutive sentences that have to be imposed, and when

7    you look at the violence that's involved, the drugs and the

8    guns that were involved, thinking now of the testimony with

9    regard to the Essex Avenue and Daphney Road and the weapons

10   that were found, the mandatory sentences under those

11   circumstances, consecutive, seem to fit the crime.

12            So I'm going to impose the sentences that the law

13   require me to impose.  I think that they certainly are called

14   for considering the nature of the conduct here.

15            Mr. Warren, do you have anything more that you want

16   to say before I formally impose the sentence?

17            MR. WARREN:  No, sir.  Thank you.

18            THE COURT:  Mr. Lloret, do you have anything more

19   that you want to say?

20            MR. LLORET:  Two things, Your Honor.  Is part of the

21   sentence that Your Honor would adopt the guidelines

22   calculations contained in the pretrial -- presentence report?

23            THE COURT:  The -- certainly.  The guidelines

24   calculations call for life also.

25            MR. LLORET:  And the second thing, Your Honor, is we

1    would ask for an additional seven-day period to submit our

2    final order of forfeiture or the forfeiture order that pertains

3    to Mr. Coles.

4              MR. WARREN:  Without objection, sir.  I didn't have

5    any basis to contest it to begin with.

6              THE COURT:  I'll grant that request.

7              MR. LLORET:  Thank you, Your Honor.

8              THE COURT:  Pursuant to the Sentencing Reform Act of

9    1984, it's the judgment of this Court that you, Alton Coles, be

10   committed to the custody of the Bureau of Prisons for the

11   period of life plus 55 years as follows.  On Count Two of the

12   indictment, you are sentenced to life imprisonment.  On Counts

13   38, 41, 48, 50 and 56, you are sentenced to four years

14   incarceration on each count.  On Counts 40, 62, 87 and 88, you

15   are sentenced to 30 years imprisonment on each count.  On

16   Counts 49, 61, 77, 80, and 175, you are sentenced to 20 years

17   imprisonment on each count.  On Counts 59, 60, and 71, you are

18   sentenced to a period of ten years imprisonment on each count.

19   On Counts 81 and 86 -- 81 through 86, you are sentenced to a

20   period of incarceration of five years on each count.  The

21   sentences are to run concurrently with each other.

22              On Count 68, you are sentenced to a period of

23   incarceration of five years.  That sentence is to run

24   consecutively to the sentences on the counts that I've just

25   enumerated.  On Count 70, you are sentenced to a term of 25

1    years, and that sentence is to run consecutively to the

2    sentences on all other counts.  Finally, on Count 72, you are

3    to be incarcerated for a period of 25 years, and that sentence

4    is to run consecutively to all the sentences on the other

5    counts.

6            That is a total sentence of life imprisonment plus 55

7    years.  That is the sentence that's called for by the statutes.

8            Mr. Coles, if you are ever released from prison,

9    you're placed on supervised release for a period of six years,

10   and that supervised release will be as follows.  Counts 38, 41,

11   48, 50 and 56, one year on each count; Counts 40 and 62, six

12   years on each count; Counts 49, 59, 60, 61, 71, 77 through 86,

13   and 175, three years on each count; and on Counts 68, 70, 72,

14   87, and 88, five years on each count.  Those sentences of

15   supervised release are to run concurrently with each other.

16           The specific conditions of supervised release are

17   that you're not to possess controlled substances.  You're not

18   to possess firearms.  You're not to violate any State, Federal,

19   or local laws.

20           The Court based upon the sentence that I've just

21   imposed is not going to impose a fine.  No useful purpose would

22   be served by that.

23           You are to pay the special assessments, and the total

24   special assessments in this situation are I believe $4,100, and

25   you are to stand committed until that sentence is complied

1   with.

2           Mr. Coles, do you understand the sentence that I've

3   just imposed?

4           MR. COLES:  Yes.

5           THE COURT:  Do you understand you have a right to

6   appeal?

7           MR. COLES:  Yes.

8           THE COURT:  If you want to file an appeal, it has to

9   be done within ten days.  We'll give you an attorney free of

10  charge to do that.

11          MR. COLES:  Yes.

12          THE COURT:  Mr. Warren, you are representing Mr.

13  Coles.  You will protect his interest during any appeal period.

14          MR. WARREN:  I will, sir.

15          THE COURT:  Does the Government or the defense have

16  anything further?

17          MR. WARREN:  Nothing on behalf of defense, sir.

18          MR. LLORET:  Nothing further, Your Honor.

19          THE COURT:  All right.  Recess.

20                      (Court Adjourned)

21

27

1                          * * * * *

2                    C E R T I F I C A T I O N

3          I, Maureen Emmons, court approved transcriber,

4    certify that the foregoing is a correct transcript from the

5    official electronic sound recording of the proceedings in the

6    above-entitled matter.

7

8    _____      Date:

9    MAUREEN EMMONS

10   DIANA DOMAN TRANSCRIBING

11