**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 05-440-01 |
| ALTON COLES | : | |

**MEMORANDUM**

**SURRICK, J.**                                                               **MARCH 26, 2024**

Presently before the Court are five motions for habeas corpus relief pursuant to 28 U.S.C.

§ 2255 (ECF Nos. 1624, 1647, 1702, 1741, 1816) and a Motion to Expand the Record (ECF No.

1574) filed by Defendant Alton Coles.[1]  For the following reasons, Defendant's motions

pursuant to Section 2255 will be denied, and Defendant's Motion to Expand the Record will be

granted in part and denied in part.

## I.        BACKGROUND

On February 21, 2007, a grand jury returned a 194-count Fifth Superseding Indictment

against Alton Coles and twenty-one co-defendants, alleging that they participated in a drug

distribution conspiracy and committed other offenses.  (ECF No. 295.)  The first six co-

conspirators, including Defendant, went to trial in January of 2008.  The Government presented

extensive evidence of the conspirators' $25 million cocaine sales operation and related gun

---

[1] The pending habeas corpus motions are: (1) *pro se* Habeas Corpus Motion Under 28 U.S.C.
§ 2255 to Vacate, Set Aside, or Correct Sentence by a Person In Federal Custody (ECF No. 1624); (2) *pro se* Motion Pursuant to Rule 15(c) of Federal Rules of Civil Procedure, Supplemental Pleading (ECF No. 1647); (3) *pro se* Motion for Leave to File Supplemental Brief Pursuant to the Fed. R. Civ. P. Rule 15(d) (ECF No. 1702); (4) *pro se* Memorandum of Law in Support of 2255 Motion (ECF No. 1741); and (5) Supplemental Memorandum of Law Addressing the Necessity for the Court to Have an Evidentiary Hearing on his Claims of Ineffective Assistance of Counsel Pursuant to 28 U.S.C. § 2255 (ECF No. 1816).

possession, money laundering, and various other crimes.  On March 4, 2008, after almost eight weeks of testimony and nearly a week of jury deliberations, the jury returned guilty verdicts against Defendant for conspiracy in violation of 21 U.S.C. § 846 (Count 1); engaging in a continuing criminal enterprise ("CCE") in violation of 21 U.S.C. § 848 (Count 2); three counts of possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Counts 68, 70, and 72); one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g) (Count 59); and various money laundering and drug offenses.  Defendant filed the instant Motions raising a variety of ineffective assistance of counsel and prosecutorial misconduct claims.

## II.    LEGAL STANDARD

Section 2255 permits a prisoner in federal custody to challenge the validity of his sentence on a variety of bases, including ineffective assistance of counsel.  28 U.S.C. § 2255; *see also United States v. Eakman,* 378 F.3d 294, 297 (3d Cir. 2004).  In order to establish a Sixth Amendment ineffective assistance of counsel claim, a defendant must show that: (1) his or her attorney's performance was deficient, and (2) the deficient performance prejudiced his or her defense.  *Strickland v. Washington,* 466 U.S. 668, 687 (1984).  To establish deficient representation, a defendant must show that counsel's performance "fell below an objective standard of reasonableness under prevailing professional norms."  *Buehl v. Vaughn,* 166 F.3d 163, 169 (3d Cir. 1999) (citing *Strickland,* 466 U.S. at 688).  To establish prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 695.

Under *Strickland,* counsel is presumed to have acted within the range of "reasonable professional assistance."  *Id.* at 689.  A defendant is entitled to an evidentiary hearing unless the motions,

files, and records of the case conclusively show that he is not entitled to relief.  *See* 28 U.S.C.

§ 2255(b); *United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005).

## III.   DISCUSSION

Defendant makes the following arguments:

(1) Trial and appellate counsel were ineffective for failing to object to the introduction of Defendant's intercepted phone calls because the wiretap application omitted Defendant's Urban Fleet Mobile Identifier number, and the prosecutor committed misconduct by failing to alert the Court to the application's purported deficiency;

(2) Trial counsel was ineffective for failing to investigate over forty witnesses who would have testified about Defendant's various sources of income;

(3) Trial counsel was ineffective for failing to call co-conspirator Tyrek McGeth to testify on Defendant's behalf;

(4) Trial and appellate counsel were ineffective for failing to challenge the sufficiency of Defendant's conspiracy conviction by arguing that Defendant's co-conspirators were merely his customers;

(5) Appellate counsel was ineffective for failing to challenge the sufficiency of Defendant's continuing criminal enterprise conviction because the jury did not name Defendant's co-conspirators when it rendered the guilty verdict;

(6) Trial counsel was ineffective for failing to introduce the video *Menace* into evidence at trial;

(7) Trial counsel was ineffective for failing to object to and discredit evidence showing that co-conspirator Randall Austin shot two people during a cocaine sale, and appellate counsel was ineffective for failing to challenge the admission of that evidence on direct review;

(8) Trial counsel was ineffective for failing to move to suppress evidence recovered in Austin's apartment;

(9) Trial counsel was ineffective for failing to object to Special Agent Brandon Harrison's testimony as lacking a foundation as an expert witness;

(10) Trial counsel was ineffective for advising Defendant to conduct a pretrial interview and leaking information to the press;

(11) Trial counsel was ineffective for failing to investigate Officer Brian Reynolds, and the prosecutor committed misconduct with regard to the officer's history;

(12) Trial counsel was ineffective for failing to convey a plea offer to Defendant;

(13) Appellate counsel was ineffective for failing to raise an *Alleyne* claim on direct appeal;

(14) Appellate counsel was ineffective for failing to challenge the admission of Charlton Custis's testimony on direct review;

(15) Trial counsel was ineffective for failing to undertake any pretrial investigation;

(16) Trial counsel was ineffective for failing to object to a conflict of interest between Defendant and co-defendant James Morris' attorney, Wayne Powell; and

(17) Cumulative errors at trial entitle him to relief.

We will analyze the arguments in the same order.

> **A.    Trial and appellate counsel were not ineffective for failing to raise meritless objections to the introduction of Defendant's intercepted phone calls, and the prosecutor committed no misconduct in relation to the calls.**

Defendant asserts that trial counsel was ineffective for failing to move to suppress his intercepted phone calls on the ground that it failed to specify his cellphone's Urban Fleet Mobile Identifier ("UFMI") number.  (ECF No. 1624 at 22-36; ECF No. 1741 at 13.)  Trial counsel was not ineffective because the UFMI number was not necessary to adequately identify the records to be searched.  Appellate counsel was not ineffective for failing to raise this waived and meritless claim on appeal.  There is no evidence to support Defendant's baseless claims of prosecutorial misconduct.

Prior to trial, Defendant moved to suppress the information contained within the wiretap application on another Title III ground: he argued that the wiretap failed to satisfy the statutory "necessity" requirement of § 2518(1)(c).  After a thorough review of the arguments and evidence, we denied his motion.  *United States v. Coles*, No. 05-440, 2007 WL 2916488, at *1 (E.D. Pa. Oct. 4, 2007).  Now, Defendant asserts that there was a different Title III error because the May 16, 2005, authorization for interception of wire communications signed by Deputy

Assistant Attorney General Joseph F. Blanco failed to identify Defendant's phone by its UFMI number; it only approved the interception in reference to Defendant's telephone number—(267) 784-3964—and International Mobile Subscriber Identifier ("IMSI number")— 316010002062652.  However, the letter did note: "The authorization given is intended to apply not only to the target telephone number listed above, but to any telephone or telephone number accessed through or by the IMSI number referenced above and to any other IMSI number assigned to the target telephone number referenced above."  (ECF No. 1624, Ex. A, 2.)

    In order to determine whether a UFMI number must be included within letters authorizing wiretaps, we first explain what a UFMI number is.  Nextel cellphones, such as the one Defendant owned, "can be used to engage in both traditional, open-line telephone communications and push-to-talk ('PPT') communications.  A PTT communication is sometimes referred to [as] 'direct connect.'"  *United States v. House*, No. 09-273, 2015 WL 4111457, *4 (W.D. Pa. July 8, 2015) (citations to the record omitted).  Both PTT and traditional telephone communication use the same network and cellphone device.  *Id.*

>    When engaging in a traditional telephone communication using any cellular telephone, the line remains open and both parties can talk over it at any time, or even at the same time, until one participant hangs up.  A PTT conversation, however, is akin to a walkie-talkie communication.  It is a one-way communication in which one person connects the line by pressing a button on the side of his or her cellular telephone device, speaks, and disconnects the line by releasing the button, and the other person responds by connecting the line by pressing a button on the side of his or her cellular telephone device, speaking, and disconnecting the line by releasing the button.

*Id.* at *5.  Traditional phone calls use ten-digit numbers, which include a three-digit area code and are separated by dashes, but PTT conversations use a different identification number, called an Urban Fleet Member Identification number ("UFMI number"), which use three groups of numbers of varying lengths, separated by two asterisks.  *Id.*  Phones also have another

identifying number, an ISMI number, which is linked to the phone's SIM card, a circuit card required to operate the phone.  *Id.* at *8.

In determining whether a UFMI number is critical to obtaining a wiretap, we turn to *House*, 2015 WL 4111457, which analyzed a nearly identical issue.  House moved to suppress information obtained from a wiretap of his cellphone, which he asserted was the result of an illegal search, in a drug trafficking case against him.  *Id.* at *1.  The Government sought a warrant for House's phone and identified it in its warrant application by its ten-digit telephone number and ISMI number.  While "the application, affidavit, and court order for the pen/trap on TT4 did not refer to direct connect or PTT communications, the service order stated that information about PTT communications should be provided to the FBI."  *Id.* at *9.  Pursuant to Title III, a judge issued a wiretap order referring to a traditional telephone number, ISMI number, and subscriber information.  *Id.*  Defendant argued before the suppression court that law enforcement failed to comply with Title III's requirement that the facility be identified with particularity because the UFMI number was not specified in the affidavit, application, and court orders.

In determining that House's PTT communications should not be suppressed, the court held that "[c]ellular telephone devices are sufficiently identified for purposes of Title III by IMSI or ESN number, subscriber information, traditional telephone number, or UFMI/PTT number, or any combination of the same."  *Id.* at *21; *see also United States v. Vasconcellos,* 658 F. Supp. 2d 366, 394 (N.D.N.Y. 2009) (holding that New York's analogous wiretap statute permitted identification by the traditional telephone number and subscriber information as sufficient to satisfy its particularity requirements regarding the interception of PTT communications).  Further, it observed that, even where a telephone or other identification number changes,

interception can continue even where the court does not specifically order that interception may continue if a number changes.  *Id.* (citing *United States v. Jackson,* 41 F. App'x 848, 851 (7th Cir. 2002)).  Finally, the court observed that "[t]here is no legal requirement that PTT communications be separately identified from traditional telephone communications, and, even if there were, the requirement would be technical, thus not warranting suppression, and the agents would be able to invoke the good faith exception in any event."  *House*, 2015 WL 4111457, at *25.

Accordingly, we find that trial counsel was not ineffective for failing to challenge the absence of the UFMI number because there is no requirement that documents supporting a wiretap application include the UFMI number.  *See id.*; *Vasconcellos,* 658 F.Supp.2d at 394. The letter explicitly stated that it "appl[ied] not only to the target telephone number listed above, but to any telephone or telephone number accessed through or by the IMSI number referenced above and to any other IMSI number assigned to the target telephone number referenced above." This is clearly sufficient to identify Defendant's phone, both as a traditional phone and a direct-connect device.  Even if the UFMI number should have been included, the omission is excusable under the good faith exception.  *Id. at* *25.  Had counsel raised this meritless issue, he would not have been successful in suppressing the evidence.  For the same reasons, appellate counsel was not ineffective for failing to raise this waived and meritless issue.

Defendant further asserts that two expert witnesses should be permitted to testify in support of his mistaken legal argument, but their testimony would not have changed the outcome of the suppression hearing.  Regarding his first proposed expert, Defendant attaches an email from Ben Levitan, a wireless cellular telecommunications expert, who asserts that he would "testify to the fact that Nextel service requires a court order for Title III wiretap for their 'Push-

7

to-Talk' service and a second court order for their cell phone service.  These services are distinct

telecommunications services with separate phone numbers that are combined in a single device

and as such a court order for Title III wiretap is needed for each."  (ECF No. 1647, Ex. 1.)

However, experts cannot testify to legal conclusions, so Mr. Levitan's testimony would be

inappropriate.  *M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 129 (3d

Cir. 2020).  Moreover, we are aware that Nextel phones can provide two different services

through the same device, as discussed *supra*, so this information would not affect the conclusion

that the warrant was sufficient in this case.

Defendant also proffers that another expert, Arthur Stone, would testify at an evidentiary

hearing.  (ECF No. 1816 at 8.)  According to Defendant,

> Stone would testify as an expert regarding the numerous critical differences
> between the IMSI number and UFMI feature in an effort to assist the Court in
> understanding the problems and importance of omitting the UFMI number from the
> initial authorization.  At a hearing, he would explain that although the IMSI number
> and UFMI feature are packaged together in one handset, they are essentially a
> telephone and walkie talkie that operate separately.  Not including the UFMI feature
> in the memorandum is the equivalent of leaving off a separate phone line or
> intercepting communication from a telephone for which permission was never
> sought to intercept.

(*Id.*)  The Court is aware of the above information, so the testimony is unnecessary and

ineffective.

Finally, Defendant asserts that the prosecutor committed misconduct because according

to him, the prosecutor "realized [his] error" of omitting the UFMI number from the application,

"then manipulated the District Court by embedding the request to intercept the UFMI

communication in the body of the District Court's application in an effort to circumvent" the

Wiretap Act's requirements because the District Court "may not have been aware of the legal

significance of the requirements for UFMI interception, which allowed the [G]overnment to

evade detection of [its] failure to comply [with] the statutory requirement."  (ECF No. 1624 at 32-33.)  Defendant has proffered no evidence to support the position that the Government believed that its application had any errors or that it misled or deceived Judge Robreno, who presided over the search warrant application.

Under these circumstances, the omission of the UFMI was not an error.  Neither trial nor appellate counsel were ineffective for failing to challenge the search warrant application on that basis, and there is no evidence that the prosecutor committed misconduct in submitting the application.  Defendant is not entitled to an evidentiary hearing or relief on this issue.

> **B. Trial counsel was not ineffective for failing to investigate over forty potential witnesses who may have testified about Defendant's various sources of income.**

Defendant asserts that counsel was ineffective for failing to call forty-five witnesses to testify on his behalf.  (ECF No. 1624 at 16-27; ECF No. 1670 at 18, 62-66; ECF No. 1647 at 16; ECF No. 1816 at 16-20.)  Defendant asserts that these witnesses would testify that Defendant was very wealthy due to various events that he organized in the early 2000's, his dog fighting ventures, and selling fake drugs.  According to Defendant, the witnesses would also testify as to the specific amounts of money that Defendant earned from these specific occurrences, which would prove that his assets were the fruits of ventures other than selling drugs.  These witnesses include his co-defendants Asya Richardson (who was his co-defendant at trial) and Gary Creek (who had pled guilty at the time of Defendant's trial and was awaiting sentencing), rapper Kanye West, and over ten people listed only by their first name or nickname.  Defendant attaches to his filings affidavits from five of these proposed witnesses: Amir Wiggins, Jeff Sherrod, Randall

Austin, Lisa Natson, and Joseph M. Marrone.[2]  Defendant asserts that he "provided his counsel

with the fact witnesses and their status."  (ECF No. 1624 at 25.)

Counsel's apparent decision not to call the witnesses to testify was not deficient for

several reasons.  First, as Defendant admits with regard to all witnesses except for Joseph

Marrone, it was "highly unlikely" that any of them would have testified because their testimony

"would expose them to criminal liability for tax evasion," as many of Defendant's alleged

financial ventures were not reported.  (ECF No. 1816 at 20.)  Second, their proposed testimony

that Defendant was wealthy because of ventures other than illegal drug sales directly contradicts

counsel's trial strategy: counsel argued at trial that Defendant was poor in order to explain why

he purchased various property under others' names.  (*See, e.g.*, 1/16/08 Trial Tr. at 34.)  Had

counsel called the Defendant's proposed witnesses to testify that he was wealthy, it would have

left the jury to speculate about why Defendant—an allegedly rich man—took out loans for

property that he should have been able to afford and titled property in others' names.  Third,

even the hundreds of thousands of dollars that Defendant asserts he earned from his party

planning and other ventures pales in comparison to the scale of his $25 million cocaine sales

operation, as Defendant admits in his brief, so the evidence would be insufficient to provide an

alternative source of his assets.  (*See* ECF No. 1675 at 13) (claiming that the witnesses would

have collectively proven that Defendant's income was about a million dollars per year but

admitting that income was "no-where near what [was] alleged by the [G]overnment" and that

"[a]fter accountability of the assets, the [G]overnment would be left [to prove its] allegations of

$25 million in drug proceeds").  For the same reasons, Defendant was not prejudiced by

---

[2] Defendant states that he contacted the individuals from whom he obtained affidavits, but asserts that, "the majority of those uncalled previously available witnesses[] will be located and testify to their recollection of the claimed business ventures," which suggests that Defendant has not had any contact with these potential witnesses in connection with the filing of this petition.  (ECF No. 1675 at 12.)

counsel's alleged failure to investigate witnesses whose availability Defendant has not demonstrated and whose cooperation is uncertain at best and present an unsupported argument to the jury. Trial counsel was not ineffective.

### C. Trial counsel was not ineffective for failing to call co-conspirator Tyrek McGeth to testify on Defendant's behalf.

Defendant also asserts that counsel was ineffective for failing to call Tyrek McGeth, one of Defendant's co-conspirators who was awaiting trial later in the year, as a witness. Defendant asserts that McGeth would have testified on his behalf that cooperating witness Desmond Faison attempted to recruit him to perjure himself on behalf of the Government. (ECF No. 1624 at 30; ECF No. 1741 at 18.) However, Defendant did not assert that counsel was aware of his proposed testimony. Counsel cannot be held ineffective for failing to offer the testimony of a witness when counsel was not aware that the individual would have testified on behalf of his client. *See Donaldson v. United States*, 593 F. Supp. 2d 691, 696 (D. Del. 2009) (holding that counsel was not ineffective where the defendant did not ask counsel if a witness could testify on his behalf at his sentencing hearing). A hearing or relief on this issue will not be granted.

### D. Trial and appellate counsel were not ineffective for failing to challenge the sufficiency of his conspiracy conviction.

Defendant also contends that both trial and appellate counsel were ineffective for failing to challenge the sufficiency of the evidence to sustain his conspiracy conviction. Specifically, Defendant asserts that they should have argued that contrary to the Government's argument that Defendant conspired with distributors Desmond Faison and Gary Creek to sell drugs, Defendant had a mere buyer-seller relationship with them. Defendant is incorrect; the evidence was sufficient to sustain his conspiracy conviction.

"The elements of a conspiracy are: (1) a unity of purpose between the alleged conspirators; (2) an intent to achieve a common goal; and (3) an agreement to work together toward that goal." *United States v. Coles*, 558 F. App'x 173, 186 (3d Cir. 2014).  A simple buyer-seller relationship "is insufficient to establish that the buyer was a member of the seller's conspiracy." *United States v. Gibbs*, 190 F.3d 188, 197 (3d Cir. 1999).  However, the Government can show a conspiratorial relationship through direct or circumstantial evidence. *Id.* at 197-99.  In order to determine whether a buyer-seller relationship was also a conspiracy, courts consider: "(1) the length of affiliation between the defendant and the conspiracy; (2) whether there is an established method of payment; (3) the extent to which transactions are standardized; and (4) whether there is a demonstrated level of mutual trust." *United States v. Burgos*, 46 F. App'x 101, 103 (3d Cir. 2002) (citing *id.* at 199).  Courts also consider whether the transactions involved a large amount of drugs. *Coles*, 558 F. App'x at 186.

 Defendant asserts that there was insufficient evidence that two of his associates, Desmond Faison and Gary Creek, were his co-conspirators.  Faison testified at trial that he regularly bought cocaine from Defendant and distributed the drugs to other middlemen, so the cocaine could ultimately be sold to people at Paschall Homes, a public housing site in Philadelphia.  (2/5/08 Trial Tr. at 16.)  Faison met Defendant in mid-to-late 2002, and he started buying cocaine in small amounts to determine whether Defendant sold a high-quality product. (*Id.* at 11, 14-15.)  After Faison determined that the cocaine was good, he started buying kilos in cash in early 2003.  (*Id.* at 15, 19.)  By mid-2003, Faison was buying three kilograms of cocaine at once, which he bought for $21,000 to $22,500 per kilo.  (*Id.* at 20, 58-59.)  Faison originally bought directly from Defendant, but later, he would call Defendant, who would send Defendant's uncle to meet Faison at various locations.  (*Id.* at 28-29.)  If Faison purchased drugs that were

12

low quality, he would call Defendant, return the drugs to him, and expect Defendant to repay

him for the drugs.  (*Id.* at 24-27, 38.)  However, later in the relationship, Defendant sold Faison

low quality drugs for which Coles never paid him back.  (*Id.* at 40.)  Faison bought drugs from

Defendant through sometime in 2005.  (*Id.* at 28.)

      Faison's testimony clearly established a conspiracy.  Defendant's and Faison's three-year

long relationship required the two men to build trust, first by making smaller purchases to

determine the cocaine quality, and later by Defendant's guarantee that Faison could return low

quality product.  Faison paid in cash to Defendant or his uncle after Defendant organized the

sale.  In addition, at the peak of the conspiracy, each individual sale involved an enormous

amount of drugs—three kilograms, which was worth upwards of $60,000.

      With regard to Creek—a charged co-conspirator who was scheduled for trial after

Defendant but ultimately entered a guilty plea—the evidence was also sufficient to support the

conspiracy conviction.  While Creek did not testify at trial, the jury heard multiple recorded

phone calls between the two men, including one in which Defendant facilitated a drug deal

between Creek and another person, Dante Tucker, by directing Creek to a Kentucky Fried

Chicken.  (2/13/08 Trial Tr. at 14.)  Defendant even testified that Creek "may have been" there to

pick up cocaine, but then asserted it had "nothing to do with" Defendant.  (*Id.*)  The jury was free

to infer that those calls were about selling cocaine, and that Defendant was directing Creek to

sell drugs.  *See United States v. Badini*, 525 F. App'x 190, 193 (3d Cir. 2013) ("[T]he jury was

entitled to make inferences based" on phone calls between conspirators to determine that the

relationship between actors was not merely about occasional purchases).  Because Defendant's

conspiracy conviction was based on sufficient evidence, neither trial nor appellate counsel were

ineffective for failing to challenge the conviction on that basis.

### E. Appellate counsel was not ineffective for failing to challenge the sufficiency of his continuing criminal enterprise conviction.

Defendant asserts that appellate counsel was ineffective for failing to challenge his conviction for participation in a CCE, which requires proof that the defendant occupied "a position of organizer, a supervisory position, or any other position of management" with respect to five or more individuals in the enterprise. 21 U.S.C. § 848(d)(2)(A). Defendant is not entitled to relief on this claim because there was ample evidence that he engaged in a CCE.

Defendant's second-in-command, Timothy Baukman, raised this same issue on direct appeal. The Third Circuit observed:

> The so-called organizer or supervisor and numerosity requirements are obvious manifestations of Congress's concern to fight the growth of large-scale profit-making drug enterprises. These requirements thus distinguish minor enterprise employees from those who conceive and coordinate enterprise activities. The five individuals need not be under the direct and immediate control or supervision of the defendant. Moreover, the defendant need not have had personal contact with each of the five persons involved, and the delegation of managerial and supervisory duties will not defeat an individual's ultimate status as organizer, supervisor, or manager.

*United States v. Coles*, 558 F. App'x 173, 177-78 (3d Cir. 2014) (citations omitted). The Third Circuit concluded that Baukman supervised two street-level managers, who supervised at least six other street-level sellers, so "there was considerable evidence from which the jury could conclude that Baukman was a manager or supervisor of at least five people involved in this drug enterprise." *Id.* at 178. The evidence at trial showed that Coles was the leader of his eponymous gang, and Baukman worked beneath him. Coles was responsible for supervising anyone that Baukman supervised. *Id.* (observing that delegation of supervisory duties will not defeat a defendant's ultimate status as an organizer). From the evidence recited within the Third Circuit's opinion alone, we conclude that Defendant supervised at least nine people, and the evidence at trial showed that he supervised even more people. Because the evidence was

sufficient, appellate counsel was not ineffective for failing to challenge his conviction on this basis.

### F. Trial counsel was not ineffective for failing to introduce the film *Menace* into evidence at trial.

At trial, Coles testified that he and others created a feature length film about a drug dealer who wanted to be a musician, *Menace*, and a hip-hop musical, *New Jack City: The Next Generation*. Prior to trial, Defendant's counsel objected to playing parts of *New Jack City* because it was prejudicial, as it showed various acts of violence and knowledge of packaging cocaine. (ECF No. 605.) The Court deferred decision until trial. (ECF No. 622.) At trial, counsel played clips of *New Jack City* for the jury; *Menace* was not shown. (2/12/08 Trial Tr. at 78.) Coles asserted that the drugs and various other drug-related items featured in both movies were fake, and that some of the guns featured in *New Jack City* were fake. (*Id.* at 76-150, 203.) During deliberations, the jury requested, among other things, to view *Menace*. (2/25/08 Trial Tr. at 61.) Counsel replied that it was not admitted into evidence. (*Id.*) The jury was instructed accordingly. (*Id.* at 61, 73-74.)

Defendant asserts that trial counsel was ineffective for failing to show the jury the film or enter it into evidence. Defendant alleges that *Menace* could have explained that some of Defendant's contraband was fake. However, considering the overwhelming evidence against Defendant, *see, e.g.*, *Coles*, 558 F. App'x at 176 ("The evidence showed that Coles was the leader of an organization that proceeded, packaged and distributed cocaine and cocaine base (crack)"), he cannot show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Accordingly, Defendant cannot make a claim for ineffective assistance of counsel.

**G.  Trial counsel was not ineffective for failing to object to and discredit evidence showing that Randall Austin shot two individuals during a cocaine sale, and appellate counsel was not ineffective for failing to challenge the admission of the evidence on direct review.**

Defendant argues that trial counsel was ineffective for failing to object to evidence of a shooting committed by his unindicted co-conspirator and for failing to discredit that evidence as both false and unrelated to Defendant's actions.  (ECF No. 1624 at 44-45.)  He further claims that appellate counsel was ineffective for failing to argue on direct review that the evidence was improperly admitted.  (*Id.* at 74.)  Defendant's claims are meritless.

On April 14, 2002, Tyree Griffith and his brother, Damon Williams, went to the Philadelphia Zoo with $10,500 to buy half a kilogram of cocaine from Defendant's unindicted co-conspirator, Randall Austin.  During the drug exchange, Austin grabbed a gun, shot Griffith and Williams, and stole the money.  At trial, co-defendant James Morris' attorney objected to the introduction of the testimony and requested a mistrial on the ground that the shooting had no probative value.  (1/22/08 Trial Tr. at 354.)  The Court denied the motion.  (*Id.*)

Defendant's trial counsel was not ineffective for failing to also object.  Morris's attorney made the same objection that Defendant now asserts that his counsel should have made.  Morris's objection was overruled.  Clearly, there was no prejudice.  Had Defendant's counsel raised the same objection, it likewise would have been overruled, and the outcome of the trial would not have changed.  *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  Moreover, the objection had no merit since the evidence was properly admitted.  The shooting was highly probative because it explained why police were looking for Austin and searched his apartment, where they recovered large amounts of cocaine, five guns, ammunition, various cocaine sale paraphernalia, and paperwork that linked Defendant to the property and drug sales occurring within the apartment.  Appellate counsel was not ineffective for failing to raise these same arguments.

16

Defendant also asserts that trial counsel was ineffective for failing to show that the testimony about the shooting was false, which he claims is established by the fact that Austin was "exonerated" for his involvement in the shooting.  But there is no evidence that the testimony about the shooting was false, and Austin was not exonerated.  While Austin was acquitted of robbery, he was convicted of the attempted murder of Griffith and second-degree murder of Williams.  *See Commonwealth v. Austin*, 906 A.2d 1213, 1216-17 (2006).  The Pennsylvania Superior Court reversed the second-degree murder conviction because Williams was acquitted of the robbery.  *Id.*  The conviction for shooting Griffith remained intact, and the matter was remanded for a new trial.  *Id.* at 1223.  The District Attorney did not retry the case.

Defendant also claims that counsel was ineffective for failing to call Randall Austin as a witness to testify that Defendant's actions were unrelated to the shooting.  However, the testimony was introduced to explain the recovery of contraband from Austin's apartment, which was connected to Defendant in part by items found in Austin's apartment.  The Government did not suggest that Defendant play a role in the Zoo shooting.  Any failure to present Austin's proposed testimony did not prejudice Defendant because his assertion that Defendant was unrelated to the shooting did not change the impact of the testimony.

### H.  Trial counsel was not ineffective for failing to move to suppress evidence recovered in Austin's apartment.

Defendant also asserts that unindicted co-conspirator Randall Austin's apartment was unconstitutionally searched, and therefore counsel was ineffective for failing to move to suppress the evidence recovered.  Because Defendant had no standing to challenge the search or seizure of contraband within another person's apartment, counsel was not ineffective.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ."  U.S.

17

CONST. amend. IV.  "Because Fourth Amendment rights are 'personal,' the proponent of a motion to suppress 'bears the burden of proving . . . that he had a legitimate expectation of privacy in' the place searched."  *United States v. Stearn,* 597 F.3d 540, 551 (3d Cir. 2010) (quoting *Rawlings v. Kentucky,* 448 U.S. 98, 104 (1980)).  For example, a defendant has a privacy interest if he is staying in another person's home as an overnight guest, but not if he is merely in the other person's apartment for a short time for the business purpose of packaging drugs.  *See Minnesota v. Olson,* 495 U.S. 91, 98-100 (1990); *United States v. Perez*, 280 F.3d 318, 337 (3d Cir. 2002).

Defendant failed to proffer any evidence that he had a legitimate expectation of privacy in Austin's apartment.  Without such evidence, Defendant has no standing to challenge the seizure.  While Coles was present in the house when the search warrant was executed (1/17/08 Trial Tr. at 24), Defendant testified at trial that he "never lived there."  (2/12/08 Trial Tr. at 58.) Given this straightforward testimony, there is no reason to believe that Defendant could have established standing to challenge the search.  Counsel was not ineffective for failing to challenge the search of a property in which Defendant never lived.

> **I.   Trial counsel was not ineffective for failing to object to Agent Harrison's testimony on the ground that Agent Harrison was not qualified as an expert witness.**

Defendant claims that trial counsel was ineffective for failing to object to the testimony of a federal agent who testified beyond the scope of his field of expertise.  Counsel was not ineffective because he properly objected, and the testimony was cumulative of a qualified expert's testimony.

At trial, Special Agent Brandon Harrison testified that he surveilled Defendant's drug operation and executed a search warrant on Randall Austin's home.  (1/17/08 Trial Tr. at 27.)  In

Austin's home, agents recovered a hydraulic press.  (*Id.* at 36.)  Agent Harrison explained that

the press was used to create bricks of cocaine and that he observed white powder on the floor

near the press.  (*Id.* at 37-40.)  He also explained that small blue packets recovered in the

apartment were used to distribute crack cocaine or cocaine.  (*Id.* at 42-43.)  After this testimony,

Defendant's counsel objected because Agent Harrison had not yet been qualified as a witness.

(*Id.* at 43.)  The prosecutor qualified Agent Harrison as an expert in the field of narcotics

paraphernalia, and there was no objection.  (*Id.* at 43-44.)  Agent Harrison then testified about

the difference between cocaine and crack cocaine, Defendant's counsel objected again, the

objection was sustained, and the jury was instructed to disregard the testimony about the

difference between cocaine and crack cocaine.  (*Id.* at 45-46.)  Agent Harrison next testified

about the use of protective masks in crack cocaine production, Defendant's counsel objected, the

objection was sustained, and the Court called the attorneys to sidebar, where it instructed the

prosecutor to question Agent Harrison about his observations as he was not offered as an expert

beyond the field of narcotics paraphernalia.  (*Id.* at 46-48.)  The prosecutor and Agent Harrison

complied with these instructions.  Finally, counsel objected to Agent Harrison's use of the term

"kilo wrappers," which was sustained, and he subsequently referred to those items as "empty

wrappers."  (*Id.* at 69.)

Defendant claims that trial counsel was ineffective for failing to object to Agent

Harrison's testimony because he was not properly qualified as an expert in any area except

narcotics paraphernalia.  However, counsel *did* object multiple times, and his objections were

generally successful.  Moreover, Special Agent Christopher Marano—an expert in the area of

narcotics identification and investigation who received no objection to his qualifications (2/7/08

Trial Tr. at 8)—testified to the differences between crack and cocaine (*id.* at 13), about bags used

19

for packaging cocaine (specifically use of blue packaging) (*id.* at 9, 13), the purpose of a hydraulic press (*id.* at 14), and kilo wrappers (*id.* at 9).  Even if counsel's objections were deficient, there was no prejudice to Defendant.  The same information was properly admitted by way of Agent Marano's testimony.

### J.  Trial counsel was not ineffective for advising Defendant to conduct a pretrial media interview and allegedly leaking information to the media.

Defendant argues that trial counsel was ineffective (1) for advising Defendant to conduct a pretrial interview, which he claims caused Desmond Faison to cooperate with the Government, and (2) for allegedly leaking information to the media.  According to Defendant, his attorney advised him to participate in a pretrial interview.  Defendant attaches two 2007 articles by George Anastasia, a staff writer for *The Philadelphia Inquirer*, containing descriptions of the allegations against him, quotes from Defendant asserting his innocence, and other relevant facts. (ECF No. 1624, App'x F.)  Defendant asserts that this interview caused Faison to cooperate with the Government.  He did so a few days after the articles were published.  (*Id.* at 57.)  Defendant asserts that "counsel should have known that . . . the aggravated circumstances ha[d] a high potential to cause cooperation as well as fabrication for potential benefits through plea agreement."  (*Id.*)  However, there is no evidence that Defendant's interview caused Faison to plead guilty, that counsel had any reason to believe that Faison would plead guilty as a result of the interview, or that the article would have been any more favorable to Defendant without his participation.  Because Defendant has no factual basis upon which to rest his various accusations, relief will not be granted on his claim.

As for Defendant's assertion that trial counsel leaked information to the media, Defendant offered no specifics as to what information was leaked or how it affected the outcome of his trial.  In any event, the Court questioned prospective jurors during *voir dire* about whether

they had any knowledge of the allegations against Defendant from outside of the court

proceedings and if that might affect their ability to be impartial.  (12/19/07 Jury Selection Tr. at

11-17.)  None of the jurors who had knowledge of the allegations from any source outside of the

courtroom served on Defendant's jury.  Therefore, any alleged leaks could not have affected

Defendant's verdict, and Defendant was not prejudiced by them.

> ### K. Trial counsel was not ineffective for failing to investigate Officer Brian Reynolds, and there is no evidence that the prosecutor committed misconduct with regard to that officer's history.

Defendant states that counsel was ineffective for failing to investigate a group of police

officers that faced corruption charges after Defendant's trial, as one of these officers briefly

testified at Defendant's trial.  He further claims that the prosecutor committed misconduct by

failing to disclose the allegations against these officers.  Neither of these claims entitles

Defendant to relief.

On July 29, 2014, a federal grand jury indicted six Philadelphia Narcotics Field Unit

police officers—Brian Reynolds, Thomas Liciardello, Michael Spicer, Perry Betts, Linwood

Norman, and John Speiser—and charged them with racketeering conspiracy in violation of 18

U.S.C. § 1962(d), civil rights violations, robbery, extortion, possession with intent to distribute

controlled substances, and various other crimes.  The Indictment alleged that while in their

course of duty, the officers allegedly stole money and drugs, sold drugs, physically assaulted

some arrestees, and falsified police records.  The Government asserted that the conduct began in

February 2006, and the first allegation against Reynolds occurred in October of 2007.

(Indictment, No. 14-412, at 9.)  The defendants were acquitted at trial.[3]

---

[3] Another officer, Jeffrey Walker, was separately indicted and pled guilty.

At Defendant's trial, Officer Reynolds testified that he and another officer arrested co-defendant Timothy Baukman on September 28, 1999. (1/30/08 Trial Tr. at 149.) Officer Reynolds said that he observed Baukman sitting in a parked car and hand small objects to another man, and Baukman's car speed off when police approached. (*Id.* at 151.) According to Officer Reynolds, Baukman crashed the car and attempted to flee on foot, but the police officers arrested him and recovered a small amount of cocaine and $64 in the car. (*Id.* at 153-54.)

Defendant asserts that counsel was ineffective for failing to investigate the misconduct of the indicted officers, about which Defendant asserts he informed counsel. (ECF No. 1624; ECF No. 1675 at 25.) He suggests that if counsel had investigated adequately, the Government may have decided not to prosecute him. Defendant also asserts that the prosecutor committed misconduct by setting forth evidence from those officers where, according to a 2014 article that Defendant cited, prosecutors had declined to charge these officers "for years," even though they were aware of their alleged misconduct. (ECF No. 1624, App'x FF.)

Defendant cannot prove that he was prejudiced by Reynolds' brief testimony, which was minor during the two-month trial and did not implicate Defendant. Moreover, evidence of the allegations against Reynolds would not have been admissible at trial. *See United States v. Rodriguez*, No. 13-4818, 2015 WL 1279472, at *5 (E.D. Pa. Mar. 19, 2015) (holding that evidence of the same six officers' alleged misconduct would be inadmissible at trial under Rules 403 and 404 because it "is exactly the type of propensity evidence that Rule 404(b) prohibits").

In addition, while there is no evidence that the prosecutor suppressed information, any alleged suppression would not have been material. Defendant asserts that he knew of the officers' alleged misconduct prior to trial and provided the information to counsel. (ECF No. 1624 at 60-61; ECF No. 1675 at 25.) Even if the prosecutor had failed to disclose this evidence,

22

it would not have been material because Defendant and his attorney were already aware of the information.  *See United States v. Pelullo*, 399 F.3d 197, 202 (3d Cir. 2005), *as amended* (Mar. 8, 2005) ("[T]he government is not obliged under *Brady* to furnish a defendant with information which he already has or, with any reasonable diligence, he can obtain himself").  Because the evidence was neither suppressed nor admissible, counsel cannot be found to be ineffective here.

### L.   Trial counsel was not ineffective for failing to convey a plea offer where Defendant does not claim that he would have accepted the offer or demonstrate that a plea offer was made by the Government.

Defendant asserts that counsel refused to convey a plea offer from the Government because counsel believed that Defendant would not plead guilty.  Defendant does not assert that he would have plead guilty or present support that a plea offer was even made by the Government.  This is an insufficient proffer to obtain an evidentiary hearing.  *See United States v. Jones*, No. 12-1956, 2014 WL 1386328, at *4 (E.D. Pa. Apr. 8, 2014) (holding there was insufficient support to entitle the petitioner to a hearing about an alleged plea offer where he did not provide "the documents he claims are in his case file, nor a statement from counsel, or any supporting declarations from family members who he claims had knowledge of the alleged plea offers.").

Defendant asserts that *United States v. Bennett*, 588 F. App'x 159 (3d Cir. 2014) entitles him to relief.  In that case, counsel believed that Bennett was "determined to go to trial," so he never discussed the Government's offer that Bennett enter an open guilty plea at a reduced sentencing guideline level or his potential sentence.  Bennett said he would have accepted the plea if counsel had offered it.  Specifically, the Third Circuit observed that Bennett's "judgment was clouded by misunderstanding up through the time of his trial because his counsel did not do his job."  *Id.* at 161.  That situation is distinguishable from the one presented here.  Here,

Defendant did not assert that counsel misinformed him about his potential sentence or a plea offer or claim that he would have entered a guilty plea.  There is no indication that a plea offer existed.  Counsel was not ineffective.

> ### M. Appellate counsel was not ineffective for failing to raise an *Alleyne* claim on direct review where Defendant would have received a sentence of life in prison regardless of whether counsel raised the claim.

Defendant also argues that appellate counsel was ineffective for failing to raise his *Alleyne* claim on direct review.  *Alleyne v. United States*, 570 U.S. 99 (2013), which was decided after the jury found Defendant guilty but before the Third Circuit ruled on his direct appeal, held that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury."  570 U.S. at 103.  Defendant correctly observes that the jury should have been instructed to make a factual finding that he was "the principal administrator, organizer, or leader of the enterprise" and trafficked at least 1,500 kilograms of cocaine or 1.5 kilograms of cocaine base (crack) or that the enterprise received $10 million dollars in gross receipts regarding his continuing criminal enterprise ("CCE") conviction in violation of 21 U.S.C. § 841(b)(1)(B).

When analyzing an *Alleyne* error on direct review, appellate courts first determine whether the error was a sentencing error or trial error, then assess whether the objection was preserved, and finally, review the matter for either plain error if it was preserved or harmless error if it was not.  *United States v. Johnson*, 899 F.3d 191, 198 (3d Cir. 2018).  We will assess these inquiries to determine whether counsel's failure to raise the claim on appeal resulted in prejudice for the purpose of Defendant's ineffective assistance claim.

"Sentencing error occurs when a defendant is charged with and convicted of one crime but sentenced for another."  *Johnson*, 899 F.3d at 198.  In such a case, "the defendant [is] sentenced for a crime for which he was *neither indicted nor tried*."  *Lewis*, 802 F.3d at 455 n.6.

24

"Harmless-error review for a sentencing error turns on whether the error did or did not

'contribute to the [sentence] obtained.'" *Id.* at 456 (quoting *Sochor v. Florida,* 504 U.S. 527,

539, (1992)). "Trial error, by contrast, occurs when the defendant is charged with, convicted of,

and sentenced for a crime, but one of the elements of that crime is not submitted to the jury."

*Johnson*, 899 F.3d at 198. The analysis then turns on "whether it is 'clear beyond a reasonable

doubt that a rational jury would have found the defendant guilty absent the error.'" *Lewis*, 802

F.3d at 456 (quoting *Neder v. United States,* 527 U.S. 1, 18 (1999)).

We hold that the error was a trial error, as the indictment correctly stated the elements,

but the jury was not charged with making the relevant findings. The Fifth Superseding

Indictment states:

> *ALTON COLES* was the leader and organizer of a cocaine and cocaine base
> ("crack") distribution gang (hereinafter referred to as the *COLES Cocaine Gang
> ("CCG")*), which distributed in excess of 5 kilograms, that is, approximately 1,200
> kilograms of cocaine, and in excess of 50 grams, that is, approximately 600
> kilograms of cocaine base ("crack"), conservatively valued at no less than
> $25,200,000, between in or about January 1998 and on or about August 10, 2005.

(ECF No. 295, ¶ 2) (emphasis in original). The indictment states the elements of CCE under 21

U.S.C. § 841(b)(1)(B), specifically that he was an administrator, leader, or organizer of the

enterprise, trafficked the necessary amount of crack cocaine, and that the enterprise was valued

in excess of $10 million.

Next, we determine whether trial counsel preserved the issue. Defendant points to no

place in the record—nor did we find one—where trial counsel preserved this issue. Moreover,

we would not expect trial counsel to preserve the issue because *Alleyne* had not yet been

decided.[4]

---

[4] We note that counsel's failure to preserve this issue was not ineffective assistance because
"failing to predict a change in the law is not deficient performance." *United States v. Doe*, 810 F.3d 132,
154 (3d Cir. 2015).

Since Defendant's objection was not preserved, we review the matter for harmless error. An error is harmless if it "did not affect the district court's selection of the sentence imposed." *United States v. Lewis*, 802 F.3d 449, 458 (3d Cir. 2015). Defendant would have received the same sentence—regardless of the error—because even if Defendant had been acquitted of CCE, he would have faced a life sentence as a result of other convictions entered that same day. Had Defendant not been subject to a mandatory minimum life sentence for his CCE conviction, the Government asserts that he would have still received a mandatory minimum life sentence under 21 U.S.C. § 841(a)(1)(A) for committing a conspiracy with two predicate convictions. (4/16/09 Sent. Hr'g, 6) ("I'm satisfied that . . . there are two final prior convictions that support the mandatory minimum life sentence."). Defendant was found guilty of both CCE and conspiracy at trial, but the Court did not sentence Defendant for his conspiracy conviction because it was a lesser included offense of CCE. Had Defendant been acquitted of CCE, conspiracy would not have been a lesser included offense and the Court would have sentenced him pursuant to the conspiracy statute mandatory minimum sentence. A life sentence would have been imposed either way. Accordingly, Defendant cannot prove prejudice for the purpose of his ineffectiveness claim.[5]

---

[5] Even had counsel preserved the issue, his appeal would not be successful because plain error did not occur. When a Supreme Court case issues a new rule, it applies to criminal cases pending on direct review. *Johnson*, 899 F.3d at 190 (citing *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004)). In such cases, appellate courts apply the plain error standard. *Id.* at 199-200.

> Under the plain error standard, an appellate court may exercise its discretion to correct (1) an error (2) that was plain—*i.e.*, clear or obvious, rather than subject to reasonable dispute—and (3) that affected the appellant's substantial rights—*i.e.*, there is a reasonable probability that it affected the outcome of the proceedings. Even if the appellant meets those requirements, we will not remedy the error unless the appellant can show that it (4) seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.

*Id.* at 200 (internal citations omitted).

Defendant failed to prove that the failure to instruct the jury affected his substantial rights, meaning there was a reasonable probability that it affected the outcome of the proceedings, for two reasons. First, as discussed above, he would have been subject to a life sentence for conspiracy even absent his CCE conviction. Second, the evidence against him was overwhelming—he was shown to have

Defendant also asserts that counsel should have challenged the Indictment because it insufficiently described his conduct, specifically the conduct that could result in a mandatory minimum life sentence. After reviewing the Indictment, we find that there was no omission, and counsel's performance was neither deficient nor prejudicial.

### N. Appellate counsel was not ineffective for failing to challenge the admission of Charlton Custis's testimony on direct review.

Defendant contends that appellate counsel should have argued that parts of witness Charlton Custis' testimony should not have been admitted at trial because the Government laid an insufficient foundation. Specifically, he maintains that Custis should not have been permitted to (1) identify Defendant's and his associates' voices on intercepted phone calls, (2) testify that certain documents were Defendant's financial ledgers, and (3) use the phrase "I need that little change." Defendant is not entitled to relief.

First, Defendant complains that Custis—who personally knew Defendant and his various associates—identified their recorded voices. However, authentication of a voice recording is explicitly permitted by the Federal Rules of Evidence, and Custis's relationship with Defendant and others satisfied the rule because he knew them personally and had many prior interactions with them. *See* Fed. R. Evid. 901(b)(5) (requiring that an opinion identifying a person's voice be "based on hearing the voice at any time under circumstances that connect it with the alleged speaker"). We further note that Defendant's instant argument—that Custis should not have been permitted to identify the voices on the calls (ECF No. 1624 at 71-72)—is not the argument that trial counsel preserved. At trial, counsel objected to the admission of Custis's "interpretation" of

---

managed an organization (named after himself) that trafficked approximately 40 kilograms of crack per year and 306 kilograms of crack total—so if the jury had been correctly charged, he still would have been convicted of CCE. *Johnson*, 899 F.3d at 200 (strong, uncontradicted evidence of defendant's guilt showed that the jury verdict would not have been different had the jury been properly instructed).

the conversation, in which he explained who the callers were and their relationship to Defendant. (1/29/08 Trial Tr. at 78.)  Thus, appellate counsel was not ineffective for the additional reason that Defendant's proposed objection was not preserved at trial and therefore would have been deemed waived on appeal.

Second, Defendant argues that Custis identified documents as drug ledgers without proper foundation.  However, Custis explained that he saw his own debts to Defendant listed among the names on the ledger, and he frequently owed Defendant money because Defendant provided drugs without receiving payment at times.  (1/29/08 Trial Tr. at 74-76.)  He also noted that Defendant would frequently tell Custis how much money he owed him and refer to his "notes" to confirm the amount owed.  (*Id.* at 74.)  Defendant observes that Custis could not point to a specific amount that he remembered owing Defendant that matched numbers in the ledger. However, Custis's inability to match a particular transaction to a specific amount on the ledger does not undermine his ability to identify the documents as drug ledgers.  Even if the introduction was in error, it was harmless in light of the ample physical and audio evidence against Defendant, as well as Custis' testimony that Defendant did, in fact, sell drugs and the two had multiple conversations about drug sales.  *See United States v. Zehrbach*, 47 F.3d 1252, 1265 (3d Cir. 1995) ("[N]on-constitutional error is harmless when 'it is *highly probable* that the error did not contribute to the judgment.'").

Finally, Defendant complains that appellate counsel should have objected to Custis's explanation that the phrase "I need that little change" meant "I need the money that he owe[s] me." (1/29/08 Trial Tr. at 84-85.)  However, there is no possibility that preventing Custis from testifying to his interpretation of the phrase "I need that little change" would have changed the outcome of trial.  *See Zehrbach*, 47 F.3d at 1265.  Appellate counsel was not ineffective.

### O.  Trial counsel was not ineffective in conducting a pretrial investigation.

Defendant asserts that counsel made *no* investigation before Defendant's trial.

"Ineffectiveness is generally clear in the context of complete failure to investigate because

counsel can hardly be said to have made a strategic choice against pursuing a certain line of

investigation when s/he has not yet obtained the facts on which such a decision could be made."

*United States v. Gray*, 878 F.2d 702, 711 (3d Cir. 1989).  "The complete failure to investigate

potentially corroborating witnesses, however, can hardly be considered a tactical decision."

*United States v. Debango*, 780 F.2d 81, 85 (D.C. Cir. 1986).  Here, Defendant has identified

multiple witnesses that he alleges trial counsel could have called in support of his case, theories

he could have advanced, or challenges he could have raised.  However, we have found that trial

counsel was not ineffective for choosing not to call the witnesses Defendant has identified,

advance the theories he now presents, or raise the proffered evidentiary or strategic issues.  *See*

Subsections B, C, H, and K.  Therefore, based on the existing record, we find that Defendant is

not entitled to relief, and we will not grant an evidentiary hearing on this issue.

### P.  Trial counsel was not ineffective for failing to object to a conflict of interest between Defendant and co-defendant James Morris' counsel, Wayne Powell, who had previously represented Defendant.

Defendant raises a conflict-of-interest claim in a counseled supplemental brief.

Defendant is not entitled to relief because the claim is time-barred and meritless.

Defendant had multiple co-defendants, including James Morris.  James Morris was

represented by two attorneys: Ronald Thompson and Wayne Powell.  Attorney Powell

previously represented Coles.  At trial, Defendant testified and was cross-examined by attorney

Thompson about his history of betting on dog fights.  Attorney Thompson elicited that,

according to Defendant, co-defendant Morris was a "dog trainer" for the fights, and Morris had

never provided Defendant with any illegal drugs other than steroids, which were used for dog

fights.  (2/13/08 Trial Tr. at 153, 184-85.)  Attorney Powell did not cross-examine Defendant.

According to Defendant, his attorney, Christopher Warren, was aware of the prior representation.

In 2016, this Court held a hearing regarding co-defendant Morris's *habeas* petition,

where he claimed attorney Powell was ineffective for 1) failing to inform him that he faced a life

sentence and 2) having a conflict of interest with his former client, Defendant.  Attorney Powell

testified that he previously represented Defendant in a dog fighting case.  The Government and

co-defendant Morris negotiated a lower sentence.  This Court did not rule on whether the

conflict-of-interest claim entitled Morris to relief.

Now, Defendant asserts that Attorney Powell was conflicted, and he also asserts a new

factual claim that Attorney Powell also represented him in a drug sales case that resulted in a

guilty plea.  Defendant's claim is time-barred, as it was raised over a year after his conviction

became final, and it is not subject to any applicable exception.

There is a one-year period limitations for Section 2255 petitions, which runs from the

latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).  Timeliness is assessed on a claim-by-claim basis.  *Fielder v. Varner*, 379

F.3d 113, 118-22 (3d Cir. 2004).  Defendant has not alleged any compliance with or exception to

the time-bar.  We will analyze the only possible options that could apply to the matter before us—the first and fourth prongs—but ultimately determine that the claim is time-barred.

Defendant raised his conflict-of-interest claim over a year after his conviction became final.  On December 3, 2014, Defendant's judgment of conviction was affirmed following a resentencing hearing.  *United States v. Coles*, 586 F. App'x 98, 100 (3d Cir. 2014).  Defendant did not file a writ of certiorari to the United States Supreme Court.  Thus, his conviction became final ninety days later, on March 3, 2015, when the time for filing a writ of certiorari expired. *Kapral v. United States*, 166 F.3d 565, 570-71 (3d Cir. 1999).  But Defendant did not raise the conflict-of-interest claim until September 6, 2016, which was his fourth substantive filing regarding his Section 2255 Petition.  (ECF No. 1741.)  Therefore, the conflict-of-interest claim is untimely because it was filed over a year and a half after his conviction became final.

Defendant also cannot show that he raised the conflict-of-interest claim within a year of the date that the claim could have been discovered through the exercise of due diligence. Defendant was present at his trial.  No argument can be made that he did not see his former attorney representing his co-defendant, and he does raise any assertion suggesting that he was unaware of that representation.

Even if the claim was not time-barred, Defendant would still not be entitled to relief. Attorney Warren's failure to object to the alleged conflict with Attorney Powell did not prejudice Defendant.  As noted with respect to several other arguments, the evidence against Defendant was overwhelming, and Defendant's relatively minor testimony about his dog fighting activities vis a vis Morris—which were not central to the charges at hand—would not have changed the jury's verdict.

31

**Q.  Any cumulative errors did not have a substantial effect on the trial.**

Defendant further claims that the alleged errors addressed in this Opinion had the cumulative effect of violating his Sixth Amendment right to counsel.  This is simply not so. "The cumulative error doctrine allows a petitioner to present a standalone claim asserting the cumulative effect of errors at trial that so undermined the verdict as to constitute a denial of his constitutional right to due process." *Collins v. Sec'y of Pennsylvania Dep't of Corr.*, 742 F.3d 528, 542 (3d Cir. 2014).  As noted above, most of Defendant's claims are facially deficient or contradicted by the record.  Relief will not be granted on Defendant's claim of cumulative error.[6]

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Habeas Corpus Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person In Federal Custody and related filings (ECF Nos. 1624, 1647, 1702, 1741, 1816) will be denied.  Defendant's Motion to Expand the Record (ECF No. 1574) will be granted in part and denied in part.  An appropriate Order follows.

**BY THE COURT:**

*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**

---

[6] In addition to his 2255 Petition, Defendant also filed a Motion to Expand the Record, to which the Government did not respond.  (ECF No. 1574.)  "Pursuant to Rule 7 of the Rules Governing Section 2255, a court may direct the record to be expanded to include additional materials relevant to the determination of the § 2255 motion."  *Clemons v. United States*, No. 03-319, 2004 WL 2212017, at *2 (D. Del. Sept. 10, 2004).  Defendant urges the Court to consider documentation showing that he attempted to raise an issue via hybrid representation before the Third Circuit, letters showing that Defendant made ethical complaints against the prosecutors in his case and that his complaints were dismissed by a state disciplinary board, and excerpts from cases regarding similar Wiretap Act claims raised in his 2255 Petition.  The Advisory Notes to Rule 7 observe that "[i]t is less likely that the court will feel the need to expand the record in a Section 2255 proceeding than in a habeas corpus proceeding, because the trial (or sentencing) judge is the one hearing the motion . . . and should already have a complete file on the case in his possession."  *Conway v. United States*, No. 09-4578, 2010 WL 2287565, at *2 (D.N.J. June 3, 2010).  The Motion is granted with respect to Defendant's attempted filing with the Third Circuit because it is relevant to his *Alleyne* claim and denied with respect to the rest of the documents as they do not add any factual information relevant to Defendant's claims.