IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Alton Coles,           case no: 05-440

Defendant,             case no: 09-2323

v.

United States of America,

DEFENDANT'S MOTION TO EXPAND THE RECORD

Comes now, Alton Coles, Defendant in the above styled case and moves this Honorable Court for an order expanding the record on the following grounds:

1. Immediately upon the decision in The Supreme Court Case 'Alleyne v. United States' decided June 17, 2013 in favor of Alleyne, Defendant sent a letter to Counsel Chris Warren notifying him that the same issue applies to defendant as well - and instructed Mr. Warren to challenge the mandatory life sentence I received, which was triggered after (the judge / court) deemed by the preponderance of the evidence to determine drug quantity attributable to the defendant. Mr. Warren did not respond to my letter, but he did respond to an email my family sent him (forwarding my message) his response was that "he was familiar with the Alleyne case (he also knows that US. V. Harris is now bad law) and he knows about the Rule 28 (j) procedure, but he's thinking it over and he'll get back to me".

Exhibit C

2. After not hearing back from Mr. Warren about this matter, Defendant 'pro se' sent a Judicial Notice to the Third Circuit Court Of Appeals - requesting permission to submit a supplemental brief under Rule 28 (j) to challenge my mandatory life sentence on count two (2). [See Attachment A]

3. The appellate court judges did not even see my request to consider honoring it, merely because I am represented by counsel. Therefore, The Third Circuit Clerk forwarded my request to my counsel for whatever he deemed appropriate. [See Attachment A-1]

4. Defendant called Mr. Warren on both his cell phone, and his office phone to which went unanswered as usual. Defendant went so far as having my case manager 'Ms. Hall' also assist me in trying to contact my lawyer, again Mr. Warren failed to respond, even after she left numerous messages in which Mr. Warren hasn't returned any of her messages.

5. All these attempt were done while on direct appeal "before all briefs were in" (months before the reply briefs were due) and before the governments response was accepted - due to their response being over the word limit.

6. The defendant also sent a 'Pro Se Supplemental Brief' to the Third Circuit Court Of Appeals challenging the blatant chirp (direct connect / walkie-talkie) wiretap violation, which the clerk also forwarded to counsel for whatever he

-2-

deems appropriate. The supplemental brief was first sent on Feb 2. 2013. [See Attachment A-2]

7. Defendant asserts that Alton Coles's sixth amendment right to a jury trial to determine drug quantity (to enhance the mandatory minimum) is clearly violated. In construing the constitutional mandate of the Sixth Amendment, it was held "every fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to a jury and found beyond a reasonable doubt." This is the identical situation that Alton Coles faced.

The court in 'Alleyne' reiterated that facts which increase the mandatory minimum sentence are in fact elements and must be submitted to a jury and found beyond a reasonable doubt. They did so no less than twelve times in the opinion. For this reason alone the defendants conviction on this point must be reversed.

It is legally unsustainable in light of 'Alleyne' and a clear violation of the Defendants Sixth Amendment right to a trial by jury.

For these two reasons alone, the Defendant respectfully contends that the enhanced finding for drug quantity lodged against him by the trial court must be reversed, and/or given a new trial by jury, and/or an amended judgment to be resentenced without the mandatory minimum.

## RESENTENCING

The U.S Court of Appeals for the First Circuit Feb 11,

2013 continued to develop the remedies available in cases involving mandatory minimum sentences unconstitutionally based on judge-found facts. Other circuits have remanded cases for resentencing without the mandatory minimum. In an opinion by Judge Juan R. Torruella, the First Circuit decided that the defendant is not entitled to a new trial on remand but that the government can choose to hold a new trial if it is dissatisfied with the sentencing range that would apply in the absence of the mandatory minimum. (United States v. Delgado-Marrero, 2014 BL 36048, 1st Cir., No. 11-1660, 2/11/14)

Last term in 'Alleyne v. United States', 93 CrL 389 (U.S. 2013), the U.S Supreme Court overturned long-standing precedent to extend Apprendi v. New Jersey, 530 U.S. 466, 67 CrL 459 (2000), by holding that the Sixth Amendment right to a jury trial applies to facts that trigger mandatory minimum sentences.

The ruling was particularly significant in light of the large number of mandatory minimums in both the federal and state systems. Questions remain, however, about what courts are to do with cases in which defendants were sentenced in violation of 'Alleyne'.

The federal circuits are divided as to whether 'Alleyne' benefits defendants who failed to raise jury-trial objections in the district court. See United States v. Mack, 729 F.3d 594, 93 Crl 772 (6th Cir. 2013).

For defendants who raised objections, the First Circuit decided in United States v. Harakaly, 734 F.3d 88, 94 Crl 207 (1st Cir. 2013), that 'Alleyne' error can be excused as harmless.

-4-

In United States v. Pena, 94 Crl 558 (1st Cir. 2014), the court addressed the remedy for preserved 'Alleyne' error in a case involving a guilty plea. The Pena court refused the government's request to empanel a sentencing jury in light of the particular circumstances surrounding the guilty plea. It also said it could find no cases in which a circuit had granted such a request.

New Jury Trial. In this case, the court faced question of how to remedy reversible 'Alleyne' error following a jury trial.

That defendant was found guilty of drug-trafficking offenses and received a quantity-based mandatory minimum sentence. After the jurors had returned verdicts of guilty on drug-trafficking counts, the trial judge sent them back to the jury room for a second round of deliberations on the sole issue of drug quantity. However, the judge did not specifically instruct the jurors that they were to make the quantity determination beyond reasonable doubt. The First Circuit held that this vitiated the jury's quantity finding in a way that violated 'Alleyne' and required reversal.

The First Circuit found support in the opinion in 'Alleyne' for a distinction between "core crimes", such as conspiracy to engage in drug trafficking, and "aggravated crimes," such as conspiracy to engage in drug trafficking involving a drug quantity that triggers mandatory minimum.

That defendant was not entitled to a new trial because there was nothing wrong with the jury's verdict as to his "core" drug-trafficking offenses, the court decided. In 'Alleyne' itself the Supreme Court ordered resentencing rather

-5-

than vacatuar of the conviction, it said. Moreover, "Rivera's interests are not the only interests implicated here," the court said. "In light of the reversal for procedural error, the government also has an interest in potentially retrying Rivera for the aggravated crime charged in the indictment." Judge Juan R. Torruella

This case involved a form of "instructional error" rather than a failure of proof, and a double jeopardy clause permits a retrial following an instructional error, the court said. It followed the lead of a Fourth Circuit case involving what it found to be a comparable type of Apprendi error. The Court remanded the case and gave the government 30 days to ask the district court to either (1) affirm the defendant's core d rug-trafficking offense and resentence him under the default penalty provision or (2) reverse the convictions and remand for a new trial on the aggravated offense.

ARGUMENT / DISCUSSION

We have already seen inroads being made questioning the wisdom of such an approach. In 'Alleyne', the court went to the pains to say at page seven, "...facts that increase the mandatory minimum sentence are elements that must be submitted to the jury."

At the core of our system of jurisprudence is the concept that no-one shall be deprived of life, liberty, or property except upon due process of law. Throughout the history of our country courts have consistently held that when

-6-

accused of a crime, an individual is entitled to have such charges proven in a court of law by a jury of their peers beyond reasonable doubt. For all said reasons above, in light of the Supreme Court Ruling in 'Alleyne' - the enhanced 'mandatory life' sentence Defendant Coles received based on the preponderance of the evidence (by the court) in this case cannot and should not stand.

## WIRETAP VIOLATION

The argument the defendant advances concerning the wiretap is that it is in violation of Title III requirements. The Defendant stresses to the Court that the authorization given to the government through application and authorized by Joseph Blanco does not contemplate or specify as required by Congressional mandate the interception of "point to point", "direct connect" communications. The government modified and/or amended the scope and nature of the authorized application and included additional forms of communications prior to submissions to a U.S Court Judge seeking approval to intercept those communications. Judge Robreno further erred when granting that UFMI request by the prosecutors to be intercepted, as approved by the attorney general (when it was NOT authorized by Attorney General Joseph Blanco) nowhere in his authorization is there mention of the UFMI communications. This is a grave / reversible error, that immediately causes the wiretap order to be insufficient on its face.

Furthermore, due to the illegal use of the wiretap (chirp) calls, the defendant Alton Coles has been illegally

-7-

raided, indicted, prosecuted, and further denied a fair trial. Defendant has taking all necessary steps (repeatedly trying to bring these issues to the attention of the attorney's and the courts) only to be continuously ignored and further denied access to the courts.

## CONCLUSION

Each of the errors enumerated above, standing alone, furnish a sufficient basis for this court to conclude the defendants trial was an irrevocably tainted and flawed proceeding. When viewed together, their cascading effect was to deny Defendant 'Alton Coles' due process of law, and the right to a fair trial under the Fifth Amendment.

Neither the factual conflicts or the differences between the telephone calls, and the walkie-talkie calls can be resolved, nor can exculpatory evidence withheld by the prosecution be supported on any independent grounds or justified without calling the entire process into question.

When viewed in toto, to cumulative effect of so many missteps demand a reversal of the defendants convictions and sentence at the current juncture - while amending judgments on this remand. In the alternative defendant should get a new trial "without" the wiretap evidence, and/or any evidence derived through or by the wiretap (surveillance, intel, raids, etc.).

*Alton Coles*
Alton Coles, Pro Se
2-22-2014

IMPORTANT EXPRESSIVE POINTS

-8-

Please note that even after your Honor's 'Order' on August 21, 2013 (for the district court clerk to forward defendants Supplement to Motion to Suppress Wiretaps to the Third Circuit) the 'clerk' of courts for the Third Circuit forwarded the order to Mr. Warren, who knew of these issues and still did absolutely nothing about it.
[See Attachment B, and C]

Attorney Warren's behavior actually shows on the docket, and supports these claims as well - clearly showing his negligence in filing his brief 'late' with the Third Circuit. (after being warned that he was given a 'final' extension by the clerk)
[See Attachment C-1]

Attorney Warren has continously lied and mislead the defendant, informing me that he was challenging the life sentence on direct appeal on other wiretap grounds. All in all, there are countless matters defendant could complain about with my attorney's performance but will save it for a more appropriate juncture. However, for now at this juncture (on remand) defendant respectfully asks that this court will hold a hearing on these matters where defendant is present, and appoint him 'new counsel' effective immediately, and restore defendants full direct appeal rights.

Defendant also wants to make the record clear that complaints were filed against the prosecutors Richard Lloret, and Michael Bresnick concerning the wiretap violations.

The Complaint was filed with the OPR (Office of Professional Responsibility), and The Disciplinary Board of the Supreme Court of Pennsylvania - who took notice of the

violation in the complaint and had disciplinary counsel 'Donna Snyder' call Mr. Lloret.

After speaking with Mr. Lloret, the Disciplinary board counsel dismissed my complaint until after current court procedures simply because Mr. Lloret informed her that there was an ongoing appeal, therefore any matters of misconduct would be handled by the court.
[See Attachment D] However, please note that this wiretap violation to date - has not been allowed to be heard or handled by the courts on appeal.

The OPR has jurisdiction to investigate the matter, however, it is the policy of the OPR (office) to refrain from investigating issues or allegations that could have been or still may be addressed in the course of litigation, unless a court has made a specific finding of misconduct by the DOJ attorney's.
[See Attachment E]

Clearly, the appellate court clerks, nor counsel has allowed this issue to be filed, recognized, or presented to any judge, and Defendant should not be subject to being forced out of fair representation by counsel, due process of law, or duped out of any court procedures such as direct appeal.

Defendant eventually sent the complaint to the appellate courts Chief Judge Mckee, and received a response from the clerk instructing me on how / where I can properly file my complaint.
[See Attachment F]

Upon the appellate court clerks instructions, defendant forwarded the actual complaint to your Honor (Judge

Surrick) requesting for it to be filed as a 'Civil' suit in your court, in which I will be amending in the near future to display all the "names" of those persons / parties liable, as well as the actual "sum" of monetary damages (which will conservatively consist of "Twenty Five Milion, Two Hundred Thousand Dollars" $25,200,000 "and" all the money that was confiscated from me in all my place of 'residences', banks, bank deposit box, jewelry, personal belongings, real estate properties, and cars / trucks all returned to me; and an additional "Thirty Six Million Five Hundred Thousand Dollars" ($36,500,000.oo) monetary damages for 9 yrs. incarceration 'yet still counting' of illegal imprisonment due to wrongful conviction based off the illegally gotten inadmissible Title III wiretap violation's; as well as an additional "Fifty Million Four Hundred Thousand Dollars" ($50,400,000.oo) monetary value for all the stress, anxiety, cruel and unusual punishment, pain and suffering, defamation of character, prevented income, etc. the defendant has endured thouroughout this ongoing hardship) against all government agencies, officials, prosecutor's, person's, lawyer's, and parties involved.

The formal complaint against two AUSA's was addressed to your honor, along with a letter and mailed out on Dec. 31 2013, certified mail confirmation establishes that it was delivered to the district court on Jan. 3 2014. The complaint cites facts, some law, and respectfully requests a 'limited remand' to deal with this matter.

In closing, Defendant was duped by Dennis Cogan into reluctantly / hesitantly accepting Mr. Warren as "court

-11-

appointed" counsel, in which I want to address this issue in more depth at a more appropriate time. However, I must point out that Mr. Warren knows full well that these issues (and many other issues, legal fee's, forfeiture, etc.) are all vital to the defendants appeal.

Defendant does realizes its rare for an attorney to file ineffective assistance of counsel on himself. Moreover, the defendant has rights as well, so that doesn't excuse or justify counsels continuous ineffectiveness, or the Third Circuit appellate courts local rules to deny defendant the right to effective counsel, nor turn a blind eye to allowing counsels careless display of continuing ineffectiveness - after clearly being notified of the conflicting problems.

Due to counsel Warren's incompetence, abandonment, and constant neglect of defendants rights - defendant has been denied proper legal access to the courts (Mr. Warren is literally sabotaging my direct appeal rights) and the appellate courts has been given many notices of my complaints, yet nothing has been done about any of it as to date.

It appears that court appointed Chris Warren (who was oddly brought into this case by one of my paid attorney's "Dennis Cogan" only after his law firms name was included in the 5th superseding indictment) will not point out or go after the grave mistakes / reversible errors made by the government in this case, nor will he properly defend the defendant at these procedures (trial / direct appeal) where its effective.

Defendant repeatedly told Mr. Cogan the wiretap wasn't legal at the most critical stages of the case (pretrial) long

-12-

before Mr Cogan filed any of the 7 pretrial motions that he filed. Defendant also advised Mr. Warren to object to the wiretap (chirp calls) as they were being played in the courtroom during trial because defendant (even without being given the opportunity to see the actual applications and orders) knew hundreds of specific calls were not made from the telephone numbers listed on the applications, but defendant remained calm "trying to trust" in the legal system itself, as well as the legal assistance of both my attorney's.

Furthermore, out of respect for your honors courtroom (Defendant Coles did not want to disrupt the court with any outburst) even after being egotisticly ignored by both attorney's, and literally "shushed" / brushed off by attorney Warren during the trial so attorney Warren could "hear" the tapes rather than "object" to them.

Merely, because attorney's Dennis Cogan and Chris Warren both failed to raise the chirp issue properly at pretrial nor trial, Mr. Warren stated "he could not raise the 'chirp violation' on direct appeal even though he legally could do something with the affidavit defendant filed pro se on April 29, 2008, but he felt it was too risky because nothing is on the record, plus he's just a 'court appointed' attorney". (paraphrasing Mr. Warrens quote)

After feeling exhausted together with being completely fed up with my attorneys promises, no longer trusting their professionalism or words at all, Defendant 'pro se' then submitted 3 motions pointing out a lot of these conflicts (between defendant and attorney Warren) to the Third Circuit with request for new counsel, but was denied for 'new

-13-

counsel', and/or the ability to even proceed 'pro se'. Denied by the 'Clerks' (not a judge).

It should be noted that on appeal co-defendants Jamar Campbell was granted to proceed pro se, and Tim Baukman was also giving the choice to go 'Pro Se' after submitting a pro se supplemental brief if he willingly signed a waiver.

However, when Defendant Coles's request was made, defendant was flatly denied by the clerks - who basically forced Mr. Warren on the defendant, allowing him to single handedly mishandle defendants one and only "direct appeal".

It can be further noted that your Honor granted Dante Tucker new court appointed counsel on at least one or two different occasions, and all three of those co-defendants have their trial transcripts, and counsel who "contested" all their convictions on direct appeal.

Even after pointing out several severe irreparable conflicts with my court appointed attorney, the defendant was denied access to the appellate courts by the clerks. Moreover, the defendant has been deprived new counsel, and my right to a meaningful direct appeal due to the Third Circuit local appellate court rules. (forcing defendant to stay with ineffective counsel, even after counsel shown to be a conflict of interests in raising meritous issues on appeal)

A Supreme Court case law says "In sum, the right at stake here is the right to counsel of choice, not the right to a fair trial; and that right was violated because the deprivation of counsel was erroneous. No additional showing of prejudice is required to make the violation complete." "Deprivation of the right is 'complete' when the defendant is

-14-

erroneously prevented from being represented by the lawyer he wants, regardless of the quality of representation he received. To argue otherwise is to confuse the right to counsel of choice-which is the right to a particular lawyer regardless of comparative effectiveness-with the right to effective counsel-which imposes a baseline requirement of competence on whatever lawyer is chosen." "We have little trouble concluding that erroneous deprivation of the right to counsel of choice, 'with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as structural error'." "In light of these myriad aspects of representation, the erroneous denial of counsel bears directly on the framework within which the trial proceeds at all. It is impossible to know what different choices the rejected counsel would have made, and then to quantify the impact of those different choices on the outcome of the proceedings." "...it is not a matter of showing that the violation was harmless, but of showing that a violation of the right to effective representation occurred. A choice-of-counsel violation occurs whenever the defendant's choice is wrongfully denied. Moreover, if and when counsel's ineffectiveness 'pervades' a trial, it does so (to the extent we can detect it) through identifiable mistakes. We can assess how those mistakes affected the outcome. To determine the effect of wrongful denial of choice of counsel, however, we would not be looking for mistakes committed by the actual counsel, but for differences in the defense that would have been made by the rejected counsel-in matters ranging from questions asked on voire dire and cross-examination to such intangibles as

-15-

'argument style' and 'relationship with the prosecutors.' We would have to speculate upon matters the rejected counsel would have handled differently-or indeed, would have handled the same but with the benefit of a more jury-pleasing courtroom style or a longstanding relationship of trust with the prosecutors..." "Accepting that premise, we hold that the error violated respondent's Sixth Amendment right to counsel of choice and that this violation is not subject to harmless-error analysis". See United States v. Cuauhtemoc Gonzalez-Lopez 548 U.S. 140, 126 S Ct 2557, 165 Led 2d 409, 2006 US Lexis 5165.

Defendant has been denied legal access to the courts, and despite my great efforts to raise extremely meritorious issues through counsel during trial, pro se before sentencing, and pro se on direct appeal. Defendant has not only been forced to endure an unfair trial, but further endured a very unfair / limited direct appeal.

Defendant is overwhelmed by the power of the government, and I feel that all these claims in totality should meet 'extraordinary' circumstances. A Miscarriage of Justice is being done to me, for my 4th amendment, 5th Amendment, and 6th amendment rights are continuously being violated.

For the foregoing reasons, Defendant humbly request your Honor for an evidentiary hearing on all said matters, and for the district court to adjudicate all said motions recently filed 'pro se' (while on this remand) in favor of the defendant.

Defendant also moves this court for an order directing

-16-

counsel Chris Warren to immediately make the grand jury transcripts, grand jury minutes, trial transcripts, sentencing transcripts, dvd's, pretrial motions transcripts, and all documents in my case file pertaining to this case - available to me and sent to me, or in the alternative, for an order directing the Clerk of the District Court to prepare and furnish the same, should Mr. Warren not be able to locate any of it.

The defendant wishes to thank the court for allowing him the opportunity to present these issues / bringing these matters to its attention.

Defendant would like to be held to less stringent standards drafted by attorneys. See Haines v. Kerner, 404 U.S. 519 (1972).

Respectfully Submitted,

*alton Coles*

Alton Coles 59791-066
Defendant, Pro Se
Dated: 2-22-2014

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Defendants 'Motion to Expand the Record' has been served by first class mail, postage prepaid, upon:

cc: Christopher D. Warren, Esq.
    Suite 1900
    1500 Walnut St.
    Philadelphia, PA 19102

cc: Dennis Cogan, Esq.
    2000 Market St.
    Suite 2925
    Philadelphia, PA 19103

cc: Richard Llorett, AUSA
    615 Chestnut St. Ste., 1250
    Philadelphia, PA 19106

*Alton Coles*

Alton Coles   59791-066
Defendant, Pro Se
Dated: 2-22-2014