IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 05-440-01 |
| ALTON COLES | : | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT'S SECOND MOTION TO REDUCE SENTENCE
PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)**

Defendant Alton Coles again seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). This motion should be denied, as he does not present any "extraordinary and compelling reason" allowing consideration for this exceptional remedy.

**I.    Background.**

   **A.    Criminal Conduct.**

From January 1998 through August 10, 2005, defendant Alton Coles was the leader and organizer of an armed and violent cocaine and cocaine base ("crack") distribution gang, the Coles Cocaine Gang (CCG), which distributed about 2,795 kilograms of cocaine and at least 300 kilograms of crack, conservatively valued at $25,200,000. Coles obtained much of the kilogram quantities of cocaine from Texas and Mexico and distributed it as cocaine powder and crack cocaine in Philadelphia, Delaware, and Chester counties, Pennsylvania, Baltimore, Maryland, and elsewhere. PSR ¶ 23.

The CCG used numerous locations to store and manufacture cocaine and crack, and to store firearms, money, and drug paraphernalia. Coles' armed bodyguard carried fake law enforcement credentials while protecting Coles. PSR ¶ 24, 25. CCG members carried firearms and used bogus identification cards. PSR ¶ 26. Coles laundered his drug trafficking income through a variety of transactions including his purchase of a $450,000 home in New Jersey and by using nominees to buy multiple high-end vehicles. PSR ¶ 27. There were numerous instances of violence and threatened violence. For example:

On October 22, 2004, Coles arranged a confrontation in the Kingsessing neighborhood of Philadelphia where Coles' gang and another gang traded gunfire just a few feet from a schoolyard and a block from a church. One person was struck in his abdomen, left for dead, but saved by police. The police recovered 54 fired cartridge casings fired from at least seven firearms. PSR ¶ 32.

On March 27, 2004, Philadelphia police stopped Coles in an automobile in possession of a Berretta .45 caliber, semi-automatic pistol, loaded with seven rounds of ammunition, straw purchased by a co-conspirator. PSR ¶ 47.

On October 24, 2004, Philadelphia police arrested Coles after a brief foot pursuit after Coles discarded a Smith & Wesson Model 5906, 9 mm semi-automatic pistol loaded with four rounds of ammunition. PSR ¶ 48.

On June 14, 2005, during a court-authorized wire interception on Coles' telephones, Coles and a co-conspirator discussed their suspicions that another individual was "snitching." The co-conspirator volunteered to contact a person he knew at the "federal building" to look up the "file" on the potential "snitch," contact this individual

and inform him that he had to speak with Coles, so that Coles could confront the individual about "snitching" and the individual could tell Coles what was going on. As Coles stated during the conversation, "I don't even care if you snitch before, you ain't snitch on me. But, just keep it gangsta and let me know what you did, cause you gonna have to stay away from mother fucker." PSR ¶ 50.

A co-defendant informed Coles that an individual named "John" had a firearm, a 9 millimeter semi-automatic pistol with an extended magazine, typically holding more than 20 rounds of ammunition, and said, "I forgot what it is but it's like a fucking Uzi ... he's selling that jawn (phonetic) for like 400 (dollars) or something like that." Coles said, "I'll take that." PSR ¶ 51.

On August 10, 2005, more than 20 search warrants were executed in Pennsylvania and New Jersey. The searches resulted in the seizure of massive amounts of drugs, firearms, drug manufacturing and processing paraphernalia, and other items. PSR ¶ 28.

Coles committed perjury during his trial. PSR ¶ 67. After a seven-week trial, despite his obstructionist efforts, Coles was convicted by a jury on March 4, 2008, of the following offenses: (a) conspiracy to distribute 5 kilograms or more of cocaine and 50 grams or more of crack cocaine (Count One); (b) continuing criminal enterprise, or "CCE" (Count Two); (c) using a telephone to facilitate drug trafficking (Counts 38, 41, 43, 45-48, 50 through 55); (d) distribution of cocaine (Count 40); (e) possession of cocaine with intent to distribute (Count 62); (f) maintaining a drug storage facility (Counts 49, 61); (g) money laundering conspiracies (Counts 77, 80); (h) money laundering (Counts 78 and 79); (i) structuring (Counts 81-86); (j) carrying a firearm

during and in relation to a drug trafficking crime (Counts 70, 72);[1] (k) possessing a firearm in furtherance of drug trafficking (Count 68); (l) felon in possession of firearms (Counts 59, 60, 69, 71); and (m) investing drug trafficking proceeds in an entity engaged in interstate commerce (Count 176).

On April 23, 2009, Coles was sentenced to a mandatory term of life imprisonment for the CCE offense. The sentencing guidelines for the drug offenses and his prior history of drug offenses also subjected the defendant to a mandatory minimum sentence of life imprisonment.

---

[1] On appeal, the government agreed that Coles' multiple convictions on Counts 70 and 72 for violations of 18 U.S.C. § 924(c), predicated on the same drug offense, should be vacated under *United States v. Diaz*, 592 F.3d 467 (3d Cir. 2010), which was decided after Coles' trial. No sentence was imposed on these counts. Thus, the only sentence for a 924(c) count that was imposed was a five-year consecutive term on Count 68. That made Coles' total sentence life plus five years. *See* docket no. 1588 (second amendment judgment).

### B.   Requests for Compassionate Release.

On November 30, 2020, the defendant submitted a *pro se* motion to this Court for compassionate release in which he claimed to be at medical risk from COVID-19. On May 10, 2021, the Court denied the motion.

The government responds here to Coles' second motion for compassionate release, filed on May 28, 2025 (ECF 1961), which is largely premised on the length of his sentence.

## II.   Discussion.

### A.   Governing Law.

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act on December 21, 2018, provides in pertinent part:

> (c) Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1)  in any case—
>
> (A)  the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i)  extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Further, 28 U.S.C. § 994(t) provides: "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."[2] "[T]he "extraordinary and compelling" standard remains "inherently narrow" and "stringent." *United States v. Rodriguez-Pena*, 108 F.4th 12, 17 (1st Cir. 2024) (citations omitted).

The Sentencing Guidelines policy statement appears at § 1B1.13, and provides that the Court may grant release if "extraordinary and compelling circumstances" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," and the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

This policy statement is binding. The governing compassionate release statute, § 3582(c)(1)(A)(i), states that a reduction in sentence must be "consistent with applicable policy statements issued by the Sentencing Commission . . . ." *See Dillon v. United States*, 560 U.S. 817, 821 (2010) (holding that under the materially identical provision in 18 U.S.C. § 3582(c)(2) regarding application of retroactive guideline amendments that

---

[2] The inmate does not have a right to a hearing. Rule 43(b)(4) of the Federal Rules of Criminal Procedure states that a defendant need not be present where "[t]he proceeding involves the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c)." *See Dillon v. United States,* 560 U.S. 817, 827-28 (2010) (observing that, under Rule 43(b)(4), a defendant need not be present at a proceeding under 18 U.S.C. § 3582(c)(2)).

the criteria stated by the Sentencing Commission are binding).³ In *United States v. Rutherford*, 120 F.4th 360 (3d Cir. 2024), the Court held that one specific portion of the compassionate release guideline – § 1B1.13(b)(6) – cannot supplant the directive of Congress that a change made in 2018 to sentencing under 18 U.S.C. § 924(c) does not apply retroactively. The Third Circuit otherwise made clear that it does "not gainsay that the Commission's policy statements are generally binding on us." *Id.* at 375.

The defendant has the burden to show circumstances meeting the test for compassionate release. *See, e.g.*, *United States v. Hampton*, 985 F.3d 530, 533 (6th Cir. 2021); *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021); *United States v. Neal*, 2020 WL 5993290, at *4 (E.D. Pa. Oct. 9, 2020) (Gallagher, J.); *United States v. Adeyemi*, 2020 WL 3642478, at *16 (E.D. Pa. July 6, 2020) (Kearney, J.). As the terminology in the statute makes clear, compassionate release is "rare" and "extraordinary." *United States v. Willis*, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) (Johnson, J.) (citations omitted).

---

³ Prior to November 1, 2023, the Sentencing Commission had not updated its pertinent policy statement, § 1B1.13, since Congress amended the compassionate release statute in 2018. Accordingly, courts held that the earlier policy statement was not binding during that period, but could be considered as advisory. *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021). The Commission has now updated the policy statement, which is therefore now binding in defining the circumstances that qualify as "extraordinary and compelling." *See* § 3582(c)(1)(A)(i), 28 U.S.C. § 994(t) (directing the Commission to define qualifying circumstances); *see, e.g.*, *United States v. Chavez*, 2024 WL 24065, at *3 (S.D. Cal. Jan. 2, 2024) (Curiel, J.) (explaining that new policy statement is binding); *United States v. Diamond*, 2023 WL 8724142, at *2 (S.D. Iowa Dec. 19, 2023) (Rose, C.J.) (same).

### B. The Motion Fails.

Coles does not present any "extraordinary and compelling reason" allowing consideration for compassionate release, and therefore his motion fails.

1. Coles references the "unusually long sentence" provision of Section 1B1.13(b)(6), but it does not apply here. That provision states:

> UNUSUALLY LONG SENTENCE.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

As Coles acknowledges, in *United States v. Rutherford*, 120 F.4th 360 (3d Cir. 2024), the Court held that this provision may not be applied to override Congress' declaration in the First Step Act of 2018 that the change in that Act to the penalty provision of 18 U.S.C. § 924(c) does not apply retroactively. Coles nevertheless argues that the length of a sentence may be considered under the "catch-all provision" in Section 1B1.13(b)(5). That is wrong. He overlooks the clear directive in *Rutherford*, stating: "Therefore, at bottom, our holding in [*United States v. Andrews*, 12 F.4th 255 (3d Cir. 2021)] was that the nonretroactive change to § 924(c), *whether by itself or in combination with other factors*, cannot be considered in the compassionate release eligibility context. We stand by that ruling today. When it comes to the modification of § 924(c), Congress

has already taken retroactivity off the table, so we cannot rightly consider it." *Rutherford*, 120 F.4th at 378 (emphasis added).

The point is academic, however. Even if Section 1B1.13(b)(6) is effective to any degree, it does not apply in this case by its plain terms, as Coles' sentence would not be any lower today; in other words, there has been no "change in the law" that would produce a grossly lower sentence today. Coles was subject to a mandatory term of life imprisonment based on the kingpin provision of the CCE statute, 21 U.S.C. § 848(b). That statute remains unchanged today. There is no basis for consideration for compassionate release based on the length of the sentence.[4]

2. Coles' motion also misreads the "catch-all" provision of Section 1B1.13(b)(5). That subsection states that "extraordinary and compelling reasons" allowing consideration for compassionate release may exist where:

> The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

It is again notable that this provision does not include subsection (b)(6) – the "unusually long sentence" provision – as a basis of comparison. Contrary to Coles'

---

[4] As Coles notes, his life sentence was also mandated by application of 21 U.S.C. § 841(b)(1)(A), given the huge quantity of cocaine and crack involved in the offense and his two prior convictions for felony drug offenses. Coles states that the life term would no longer be required on this basis, given the changes in Section 401 of the First Step Act that altered the definition of predicate offenses and also lowered the highest mandatory term to 25 years. But Section 401, like the 924(c) provision addressed in *Rutherford*, also includes an express declaration of nonretroactivity. It therefore may not present a basis for consideration of compassionate release, based on the holding in *Rutherford*.

suggestion, the guideline is carefully written to make clear that compassionate release based on the length of the sentence is *only* available where the circumstances described in subsection (b)(6) exist, which they do not here.

With the length of his sentence off the table as a consideration, based on the plain terms of subsection (b)(6) as well as the holding in *Rutherford*, Coles otherwise does not present any circumstances that meet the criteria set forth in subsection (b)(5). Paragraphs (1) through (4) of Section 1B1.13(b), that the provision references, address the truly extraordinary circumstances that have long justified early release. Paragraph (1) describes severe medical conditions, such as terminal illness, and a condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." Paragraph (2) applies to elderly inmates who are "experiencing a serious deterioration in physical or mental health because of the aging process." Paragraph (3) addresses extreme family difficulties, where the defendant's close family member or relation is incapacitated and the defendant is the only available caretaker. And Paragraph (4), newly added in 2023, applies to a defendant who was physically or sexually abused in custody by a custodian. All of these provisions address extreme circumstances that (fortunately) are well outside the experience of nearly all inmates, and moreover, all involve emergent situations that develop during incarceration and generally are not foreseen at the outset.

As the Sixth Circuit stated, "The 'extraordinary and compelling' circumstances contemplated by Congress and the Sentencing Commission have traditionally focused on circumstances personal to the defendant or his family. . . . And that remains generally

true under the revised policy statement. The first four enumerated circumstances ask: Is the defendant exceptionally sick, elderly, indispensable for family care, or was he the victim of abuse while in custody? . . . . The catch-all category then makes room for 'other circumstance[s]' 'similar in gravity' to these." *United States v. Washington*, 122 F.4th 264, 267 (6th Cir. 2024).

These circumstances do not bear any relation or comparison to the ordinary considerations advanced by the defendant.

First, Coles emphasizes his purported rehabilitation, including taking self-improvement courses, and his efforts to arbitrate a dispute between rival groups in prison. But pursuant to 28 U.S.C. § 994(t), rehabilitation alone does not warrant consideration for compassionate release. *See United States v. Claudio*, 2022 WL 1623650, at *3 (E.D. Pa. May 23, 2022) (Kearney, J.) ("[The defendant's rehabilitation does not constitute an extraordinary and compelling reason for release. We commend [him] for his efforts towards rehabilitation. But we are not a parole board reducing sentences simply for good behavior while incarcerated; we must also find extraordinary and compelling reasons for release.").

Coles otherwise states only challenges to his sentence, including a claim that his life sentence is unduly disparate to that of co-defendants. That is not listed in Section 1B1.13 as grounds for consideration, and for good reason, since this matter is appropriately addressed at sentencing. *See United States v. Hunter*, 12 F.4th 555, 569 (6th Cir. 2021) ("Section 3582(c)(1)(A) precludes a court from simply taking facts that existed at sentencing and repackaging them as 'extraordinary and compelling.' The

problem with such an approach is that it renders the general rule of finality and the extraordinary-and-compelling-reasons requirement 'superfluous, void or insignificant.' . . . 'No such design can be attributed to a rational Congress.'" (citations omitted). And to repeat, Coles' sentence is not unduly disparate – it is mandated by a statute that remains unchanged.

Finally, Coles presents a complaint about the application of *Alleyne v. United States*, 570 U.S. 99 (2013), to the sentencing determination. But that sort of challenge lies in 28 U.S.C. § 2255, not a motion for compassionate release, *see, e.g.*, *United States v. Aviles*, 2025 WL 1341663, at *2 (3d Cir. May 8, 2025) (not precedential) ("We agree with the District Court that Aviles' motion relied exclusively upon legal challenges to his conviction and sentence that are not appropriate for consideration under Section 3582. Such claims must be presented under 28 U.S.C. § 2255 and are subject to that statute's limitations on successive filings, which Aviles has not satisfied here."), and Coles indeed has previously and separately presented this claim (unsuccessfully) under 28 U.S.C. § 2255.

In sum, Coles does not present any "extraordinary and compelling reason" allowing consideration for compassionate release.

3. Even if consideration were warranted, which it is not, relief should be denied upon the ensuing consideration of the 18 U.S.C. § 3553(a) sentencing factors. When denying Coles' previous motion for compassionate release, this Court stated:

> A review of the sentencing factors counsels against granting Coles a compassionate release. The charges here are very serious. *See id.* § 3553(a)(1). Coles was convicted of conspiracy to distribute 5 kilograms or more of cocaine

and 50 grams or more of crack cocaine. For seven years, Coles headed one of the largest cocaine and crack trafficking organizations in the Eastern District. It is estimated that Coles put approximately $25 million worth of drugs into this district. He carried out his enterprise with gang-related violence, including high-powered firearms and intimidation of potential government cooperators.

Coles has served fifteen years of his life sentence. Granting him a release now would undermine the need for the sentence to reflect the "seriousness of the offense," "respect for the law," and "adequate deterrence." *Id*.; *see Pawlowski*, 967 F.3d at 330-31 (concluding that the § 3553(a) factors and the fact that the defendant served only a fraction of his sentence counseled against granting a compassionate release); *see also United States v. Holmes*, No. 08-495, 2020 WL 4504440, at *3 (E.D. Pa. Aug. 5, 2020) (denying compassionate release to inmate with underlying medical conditions where inmate had served only 155 months of 300 month-sentence for armed carjacking, and "[r]eleasing defendant now would cut his current sentence by almost half and would not appropriately reflect the nature and circumstances of his offenses, promote just punishment, or afford adequate deterrence to criminal conduct").

ECF 1878 (May 10, 2021). There is no reason to alter this judgment after the passage of only four additional years.

    For all of these reasons, the motion for compassionate release should be denied.

                                        Respectfully yours,

                                        DAVID METCALF
                                        United States Attorney

                                        */s Robert A. Zauzmer*
                                        ROBERT A. ZAUZMER
                                        Assistant United States Attorney
                                        Chief of Appeals

## CERTIFICATE OF SERVICE

I hereby certify that this pleading has been served on the Filing User identified below through the Electronic Case Filing (ECF) system:

        Paul J. Hetznecker, Esq.

        */s Robert A. Zauzmer*
        ROBERT A. ZAUZMER
        Assistant United States Attorney

Dated:  May 28, 2025.