**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **V.** | : | |
| | : | |
| **ALTON COLES** | : | **05-440** |

**DEFENDANT ALTON COLES' SENTENCING MEMORANDUM**

**TO THE HONORABLE KAI N. SCOTT, JUDGE OF THE UNITED STATES
DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA:**

Alton Coles, by and through his attorney, Paul J. Hetznecker, Esquire, files the

Sentencing Memorandum in the above captioned matter and submits the following in support

thereof:

## I. PROCEDURAL HISTORY

On February 21, 2007, a federal grand jury seated in the Eastern District of Pennsylvania

issued a Fifth Superseding Indictment charging the Defendant Alton Coles with and 21

individuals in a drug conspiracy.

On January 16, 2008, trial commenced before the Honorable R. Barclay Surrick and a

jury. On March 4, 2008, the jury returned a guilty verdict on numerous counts.[1]

The first trial involved six co-defendants, Alton Coles, Timothy Baukman, Monique

Pullins, James Morris, Asya Richardson, and Thais Thompson. As detailed in Mr. Coles' First

---

[1] Counts 1, 2, 38, 40, 43, 45-48, 49, 50-55, 59-60, 61, 62, 68, 69, 70, 71, 82, 79-80, 81, 86, and 176 against the Defendant, Alton Coles. (ECF No. 744)
On April 23, 2009, the Honorable R. Barclay Surrick entered an Amended Judgment as to Defendant Coles: Count 2, 38, 40, 41, 43, 45-48, 49, and 50-56, 59, 60, 61, 62, 68, 70, 71, 72, 77-80, 81-86, 87, 88, 175, and 176. (ECF No. 1088).
On April 1, 2014, the Honorable R. Barclay Surrick entered a Second Amended Judgment as to Defendant Coles, finding him guilty on counts 1, 2, 38, 40, 41, 43, 45 through 49, 50 through 55, 59, 60, 61, 62, 68, 69, 71, 77 through 86, and 176. (See attached as Exhibit A, Second Amended Judgment)

Step Act Motion (Docket No. 1839) and Reply to Government's Response to First Step Act Motion (Docket No. 1889), Mr. Coles was sentenced to life in prison. As reflected in the Updated Joint Status Report, Timothy Baukman was facing life imprisonment but sentenced to 360 months. In Baukman's sentencing memorandum the government requested that Baukman be sentenced to life in prison. (See Docket No. 1339). Exercising his discretion, Judge Surrick declined to sentence Mr. Baukman to life in prison. Instead, Judge Surrick sentenced Mr. Baukman to the 20-year mandatory minimum for CCE, a consecutive five-year mandatory minimum on a substantive drug count and another consecutive five-year mandatory minimum on the 924(c) count. Years later Mr. Baukman filed a Habeas Corpus Petition which was denied by Judge Surrick and is currently on appeal in the Third Circuit. (See Docket No. 1972). It is important to note that Mr. Baukman has not filed a First Step Act Motion. Significantly, with the exception of Mr. Coles and Mr. Baukman, each of the co-defendants that went to trial were granted relief by the jury's verdict or subsequently, by the Courts or by the government.

The following is a summary of the sentences received by Alton Coles' co-defendants. The details of each sentence are set forth in the Updated Joint Status Report. (Docket No. 1999). Co-defendant James Morris, Mr. Coles' drug supplier, received a mandatory life sentence which was reduced to 262 months by agreement between the government and Mr. Morris pursuant to Morris' Habeas Corpus Petition. The government conceded that as Mr. Coles' supplier, James Morris was in a higher position in the hierarchy of the charged conspiracy than Mr. Coles.

Monique Pullins was convicted of a 10-year mandatory minimum but was sentenced to 42 months incarceration. Aysa Richardson was convicted of money laundering and sentenced to 24 months. Ms. Richarson's conviction was reversed on appeal. Thais Thompson was acquitted of the drug conspiracy, the 924(c), and one of the perjury counts. Ms. Thompson was convicted of two counts of perjury related to her testimony before a grand jury prior to being represented by an attorney. Ms. Thompson was sentenced to a year and a day and served almost a year.

The second trial involved co-defendants Keenan Brown, Robert Cooper, Terry Walker and Jamar Campbell. Terry Walker was acquitted. Keenan Brown was sentenced to life in prison following his conviction by a jury. Pursuant to a Habeas Corpus Petition the Court reduced Mr. Brown's life sentence to 132 months.

Robert Cooper was convicted and received a sentence of 324 months. Mr. Cooper's sentence was initially reduced to 262 months and then to 210 months. Following Jamar Campbell's conviction, he initially received a sentence of 264 months. Eventually, Mr. Campbell's sentence was reduced to 120 months. All of the other charged co-defendants either cooperated with the government, pled guilty without cooperation, or worked out a plea without cooperation.

The government filed a Sentencing Memorandum on February 10, 2026. (Docket No. 1998). The government's Sentencing Memorandum rehashes the same inaccurate, unsubstantiated, and hypocritical positions that were asserted in their past filings. Despite this Honorable Court's suggestion that Sentencing Memoranda were not necessary, Counsel for Mr. Coles felt compelled to submit this in response to the government's filing. First, on Page 1, second paragraph, the government falsely alleges that "He (Alton Coles) led an armed and violent cocaine and crack distribution gang…" As established through the various filings by Counsel for Coles, and argued during the First Act Motion hearing on January 20, 2026 before Your Honor, there was no violence attributed to Mr. Coles, or the drug conspiracy. (See Coles' Reply to the Government Response to First Act Motion, Docket No. 1889, pp. 3-6). Despite a ruling from the trial court, the government continues to falsely assert allegations of violence refuted by their own witness at trial.

Second, the government references United States v. Jackson, 964 F.3d 197 (3rd Cir. 2020), the case mentioned by Counsel for Coles during the FSA hearing and cited in Coles' First Step Act Motion and Coles' Reply. The government's reference to U.S. v. Jackson, ostensibly in

support of their argument for a greater sentence than the mandatory, is confounding. In Jackson, the Third Circuit affirmed the decisions from other Circuits and numerous District Court Judges that it is the statute of conviction and not the underlying conduct that determines how the changes brought about by the Fair Sentencing Act may impact First Step Act Motions. (See Coles' First Step Act Motion, Docket No. 1839, pp. 8-14). Specifically, the Court in Jackson wrote: "Congress intended (First Step Act) eligibility to turn on a defendant's statute of conviction rather than his conduct."

Ironically, in their Sentencing Memorandum the government argues that this Honorable Court do what Jackson instructs against, that is focus on the conduct and not statute of conviction. Essentially, the government argues the same position here that was rejected by the Third Circuit in U.S. v. Jackson, supra.

 Third, the government curiously submits the position that the lead prosecutor, Rich Lloret's "personal view of culpability" does not "in any way alter the fact that Morris was the supplier, while Coles was the undisputed head of the criminal organization." This is in response to Coles' disclosure of the lead prosector's testimony regarding the relative culpability of Morris and Coles. (See FSA pp. 38-40). To argue that Alton Coles is solely responsible for the drug amounts distributed and James Morris, the person who supplied those drugs, is less culpable, lacks credibility. Based on Rich Lloret's position regarding the hierarchy of the drug operation James Morris should receive more time than Alton Coles. The government agreed to a sentence reduction from life imprisonment to 262 months for Mr. Morris. To argue here that Alton Coles should receive a sentence greater than the mandatory 300 months he faces again lacks credibility.

Fourth, the government argues that Alton Coles should receive as much time if not more than his co-defendant Timothy Baukman who received 360 months. The government's argument is disingenuous and has morphed over time. At the time of Mr. Baukman's sentencing hearing in 2008 the government argued that Mr. Baukman should be sentenced to life in prison. (See

Government's Sentencing Memorandum as to Timothy Baukman, Docket No. 1339). The

government wrongly asserted that Baukman faced a mandatory life sentence based on the CCE

conviction. "As the PSR indicates, the defendant faces a mandatory minimum sentence of life

imprisonment pursuant to 21 U.S.C. Section 848(b)." Under the Conclusion section of

Baukman's Sentencing Memo the government wrote "The government requests that the Court

make the requisite findings of fact regarding drug weight and sentence the defendant under 21

U.S.C. Section 848 and the Guidelines to Life imprisonment." (Govt. Sentencing Memo as to

Baukman, p. 10, Docket No. 1339). Judge Surrick rejected the government's argument and

sentenced Mr. Baukman to 360 months.

Ironically, the government now argues to this Court that the 360-month sentence, a

sentence they opposed, is justified and should serve as the basis for applying a greater sentence

to Mr. Coles. The government is wrong again. Mr. Coles' and Mr. Baukman's cases are in

completely different positions. Unlike Mr. Coles, Mr. Baukman has not filed a First Step Act

Motion and therefore, unlike Mr. Coles, Mr. Baukman has not presented extraordinary mitigation

demonstrating his effort to rehabilitate over the past two decades.

Finally, it is likely that the government asserted the same arguments for each of the high-

level drug dealers sentenced to life imprisonment in this district but have since received relief

from the Courts, whether pursuant to a 2255 Motion, a Motion for Sentence Reduction, or a First

Step Act Motion. (See Coles' First Step Act Motion, Docket No. 1839, pp. 25-30, 36; Coles'

Reply to Government's Response to First Step Act Motion, Docket No. 1889, p. 10). The

government's abject failure to address the extraordinary rehabilitation demonstrated by Mr.

Coles cannot go unnoticed by this Court.

Throughout the past twenty (20) years of his incarceration Mr. Coles has availed himself

of many vocational and educational programs, successfully completing hundreds of hours of

programming. Mr. Coles is committed to making up for his past criminal behavior and strives to

better himself and his community.

The Mitigation Report attached to the First Step Act Motion details the effort by Mr. Coles over the past two decades to rehabilitate. (Docket No. 1839, Exhibit A). The character letters from officials at Big Sandy attest to the incredible steps taken by Mr. Coles in his journey toward rehabilitation detailed later in this Sentencing Memorandum.

## II.    DETERMINING THE APPROPRIATE SENTENCE

In United States v. Booker, 125 S. Ct. 738 (2005), the United States Supreme Court held that the Sixth Amendment right to a jury trial prevented judges from fact finding that expose a defendant to increased prison time. The Supreme Court excised the provision of the Sentencing Reform Act that made the guidelines mandatory and rendered the Sentencing Guidelines "effectively advisory." Booker, 125 S. Ct. at 757.  The Supreme Court found that the lower courts must consider the sentencing guideline range as one factor among many factors as set forth in Section 3553(a). Kimbrough v. United States, 128 S. Ct. 558 (2007); Gall v. United States, 128 S. Ct. 586 (2007).  In order to accomplish this purpose, the sentencing court must consider the factors as set forth in 3553(a). The guiding principle when applying these factors under Section 3553(a) is to "impose a sentence sufficient but not greater than necessary, and to comply with the purposes set forth in Paragraph 2." Section 3553(a) (2)  which states that such purposes are:

(a)    To reflect the seriousness of the offense, to promote respect for the law, and to provide for just punishment for the offense:

(b)    To afford adequate deterrence to criminal conduct;

(c)    To protect the public from further crimes of the defendant; and,

(d)    To provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In United States v. Rita, 125 S. Ct. 2456 (2007) the Supreme Court made it clear that the

district court may ignore the guidelines and impose a completely different sentence than that which is recommended. The Supreme Court has essentially freed the district courts to disagree with the policy  decisions of Congress or the Sentencing Commission set forth within the guidelines. Following the Supreme Court's decisions in <u>United States v. Booker</u>, supra., <u>United States v. Rita</u>, supra., <u>Gall v.  United States</u>, supra., and <u>Kimbrough v. United States</u>, supra., a sentencing court may now consider a defendant's age, education and vocational skills, or lack thereof, mental, or emotional condition, physical conditions including drug and alcohol addiction, employment record, family ties and responsibilities and the lack of supervision and/or guidance as a young person. The guidelines previously prohibited the sentencing court from considering these factors, unless the situation was so exceptional that it was deemed to be "outside the heartland" of the cases generally seen by the court. Although the departures under the guidelines still require extraordinary circumstances post-<u>Booker</u>, this is distinguished from variances which have no relationship to the unusual circumstances that may be granted when departures are not only unwarranted, but prohibited. <u>United States v. Severino</u>, 454 F.3d 206 (3rd Cir. 2006): <u>Gall  v. United States</u>, supra.

In both <u>United States v. Cooper</u>, 437 F.3d 324 (3rd Cir. 2006) and <u>United States v.  Gunter</u>, 462 F.3d 237 (3rd Cir. 2006), the Third Circuit established the procedure for sentencing hearings. Before fashioning the sentence, the district courts must calculate the guideline range, factoring in any objections, rule on any departure motions made pursuant  to the guidelines, and then impose a sentence in light of all the relevant 3553(a) factors. The procedure as established in <u>United States v. Gunter</u>, supra., requires courts to then consider all of the factors as set forth in the record under Section 3553(a), and provide a meaningful analysis of those factors as a basis for imposing the sentence. <u>United States v. Grier</u>, 475 F.3d 556 (3rd Cir. 2007), <u>United States v. Tomko</u>, 562 F.3d 558 (3rd Cir. 2009).

Fifteen years ago, Congress passed the Fair Sentencing Act of 2010, to reduce the vast

disparity set forth in the guidelines regarding the 100 to 1 crack to powder ratio. The disparity between crack to powder had long been discredited as irrational and racist in its application. This change was long overdue.

With the passage of the First Step Act of 2018 Congress made application of the Fair Sentencing Act of 2010 retroactive, empowering District Court judges with broad authority to impose new and more just sentences.

## III.    MOTIONS FOR DEPARTURE AND DOWNWARD VARIANCES

There are no Motions for Departure in this case. However, Mr. Coles has submitted a request for a downward variance based on several grounds. As the Third Circuit has noted, downward variances have nothing to do with downward departures based on extraordinary circumstances, and may be granted when departures are not only unwarranted but prohibited. United States v. Severino, 454 F.3d 211 (3rd Cir. 2006).

Counsel offers several mitigating factors as grounds in support of a downward variance. The following grounds supporting a significant downward variance were set forth in Mr. Coles Motion for Reduction of Sentence. (Docket No. 1961). These arguments provide compelling grounds for this Honorable Court to apply a significant downward variance separately or in combination. Based on this Honorable Court's decision to grant Mr. Coles' First Step Act Motion, he no longer face a mandatory life sentence. Although Mr. Coles does still face a mandatory twenty (20) year sentence under CCE, he no longer faces a twenty (20) year mandatory minimum under Section 851.[2] With the consecutive Section 924(c) conviction Mr.

---

[2] Section 924(e)(2)(A) defines "serious drug felony" as an offense under the Controlled Substances Act (21 U.S.C. § 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. § 951 et seq.), Chapter 705 of Title 46 (Maritime Law Enforcement) or under state law, involving manufacturing, distributing, or possessing with intent to distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act, (21 U.S.C. § 802), for which a maximum term of imprisonment is ten years or more. In Mr. Coles' case the government's Notice of Enhanced Penalty under Section 851 (See Information Charging Prior Drug Convictions Pursuant to Title 21 U.S. C. Section 851(a), filed on December 17, 2007, Docket No. 589), included a conviction for felony possession in New Jersey with a sentence of one year probation dated November 22, 2002, (Case No. CAM9705015641), and a second felony drug conviction in which Mr. Coles was sentenced to 11 ½ months to one year imposed in Delaware County

Coles faces a mandatory minimum of twenty-five (25) years, or 300 months incarceration. We respectfully request that Your Honor impose the mandatory 300-month sentence with credit for time served based on the grounds listed below supporting a downward variance and separately, based on the 3553(a) factors also set forth below.

### a. The first ground for supporting a downward variance is based on his unusually lengthy sentence and changes in the law.

Mr. Coles has served twenty and a half years (20.5) of his life sentence. As set forth in Coles' First Step Act Motion filed in April 2020, if sentenced today, Mr. Coles would no longer face a life sentence as neither of his prior drug felony convictions would qualify as serious drug offenses.

Mr. Coles received a life sentence, and as such, it is an "unusually long sentence." The twenty (20) years of a life sentence Mr. Coles has served and the new more enlightened approach reflected in the changes in the law enacted by Congress both under the Fair Sentencing Act and the First Step Act, as well as the Sentencing Commission regarding "usually long sentences," manifest a "gross disparity" based on those policy changes discouraging life sentences in non-violent drug cases. This "gross disparity" between the life sentence Mr. Coles received and the sentence he is now eligible to receive for the same crimes supports a downward variance. We respectfully request that Your Honor apply a downward variance based on the unusually long sentence originally imposed and the changes in the law.

### b. The second basis supporting a downward variance is the sentencing disparity between the life sentence Mr. Coles received and the modified sentence imposed on his supplier and co-defendant, James Morris.

A gross disparity exists between the sentence that Mr. Coles received and current sentence imposed on his co-defendant, also his supplier, James Morris. Co-defendant James

---

Court of Common Pleas in Pennsylvania dated June 5, 1997, CP 23-cr-0001056-1994. Neither of these convictions qualifies as a "serious drug felony" as defined under the First Step Act. Under the First Step Act, not only would Mr. Coles not face a mandatory life sentence, because neither conviction could serve as a predicate for a mandatory sentence, Mr. Coles would no longer face a mandatory minimum sentence if resentenced today.

Morris, who was sentenced to life by this Honorable Court and was considered by the government to be in a higher position in the drug conspiracy than Mr. Coles, has since received a significant sentence modification. In United States v. James Morris, (05-44 Docket No. 1807, Amended Judgment as to James Morris), the government agreed to reduce the life sentence originally imposed prior to the FSA to a sentence of 262 months. (See Amended Judgment as to James Morris, also attached as Exhibit B to Coles' Motion for Sentence Reduction, Docket No. 1961).

As Your Honor is aware, Mr. Morris litigated his Petition pursuant to Section 2255. Following an evidentiary hearing the government and Mr. Morris reached an agreement that significantly reduced his life sentence. During the evidentiary hearing for Mr. Morris, the former United States Attorney who prosecuted both Mr. Morris and Mr. Coles provided powerful evidence in support of a significant reduction to Mr. Coles' sentence.

As referenced above, on December 21, 2016, Richard Llorett, the former prosecutor in this case testified before Judge Surrick. (Exhibit D to Coles' First Step Act, Docket No. 1839). During his testimony Mr. Llorett was questioned in detail about the case against both Mr. Morris and Mr. Coles. The following exchange offers evidence in support of correcting the unwarranted disparity that currently exists between the sentences served by Mr. Morris and Mr. Coles:

> Q. Now, let's turn our attention to James Morris' specific role in this drug trafficking organization. In your opinion as the lead prosecutor in this case, where did Mr. Morris fall in leadership and culpability in the drug trafficking organization?
>
> A. Culpability, above Coles. Morris had the connection in Mexico. Morris was obviously, in their discussions the senior guy, Coles was almost fawning when he talked to Morris on the phone…… And in terms of leadership; I don't think Morris had particularly any kind of day to day connection with anybody beneath Coles and that's not surprising. Why would he want to get involved in that kind of exposure to people who were running around and really had a high likelihood of getting caught up at some point, given what they were doing. So that wasn't surprising. But he was top of the pyramid.
>
> Q:  So not only was Morris above Coles, but you viewed him as above everyone else?

A. <u>Yes</u>.

(Exhibit D to Coles' First Step Act, Docket No. 1839)

The following exchange occurred just a few moments later:

> Q. Now in your opinion as the prosecutor in this case, if Coles were going to trial and sentenced to life, or life plus, do you think it would be fair for Mr. Morris to get a sentence substantially below that of Coles?
>
> A. No, that was part of my thinking with Morris all along was that I was certainly not gonna offer something that would undercut what Coles was facing. That just seemed ridiculous for a lot of reasons, several reasons, one of which was just fairness. ……But it just seemed ludicrous to me to allow Morris to get a better deal than Coles was going to get."

(Exhibit D to Coles' First Step Act, Docket No. 1839)

Following the hearing on Morris' 2255 Motion the government agreed to offer Mr. Morris 262 months. (See Amended Judgment as to James Morris, attached as Exhibit B to Coles' Motion for Sentence Reduction, Docket No. 1961). Clearly, based on the relative positions between Mr. Morris and Mr. Coles, acknowledged by the former prosecutor's emphatic position that Morris was higher in the drug organization than Mr. Coles, a new sentence based on the current disparities in their respective sentences is warranted. Although Mr. Coles should receive a new sentence well below that sentence the government negotiated with Mr. Morris, Mr. Coles understands he faces a mandatory 300 months. In the words of the former prosecutor Mr. Coles should serve a sentence below that of Mr. Morris simply based on "fairness."

The circumstance in this case, a gross disparity resulting from First Step Act §§ 401 and 403's legal changes, is precisely the sort of disparity the Sentencing Commission had in mind when it promulgated § 1B1.13(b)(6). In the section titled "Reasons for Amendment" the Guideline Commission explained that it adopted the decisions from several Circuits to guide them prior to the establishment of a specific Policy Statement. This guidance permitted the district courts to find that certain changes, including the First Step Act's significant reductions in mandatory sentences, could be considered as part of the "extraordinary and compelling reasons" analysis, supported by Circuit law that had developed in the First, Second, Fourth, Ninth, and

11

Tenth Circuits (when there was no applicable policy statement) permitting district courts to find that certain legal changes, including the First Step Act's significant reductions to mandatory sentencing ranges, could be considered as part of the "extraordinary and compelling reasons" analysis. USSG App. C, Amend. 814, Reason for Amendment (Nov. 1, 2023) (See United States v. Chen, 48 F.4th 1092, 1098 (9th Cir. 2022), (applying this rule to the First Step Act's § 403 change); United States v. McGee, 992 F.3d 1035, 1047–48 (10th Cir. 2021) (applying this rule to the First Step Act's § 401 change).

Certainly, if the government considered Mr. Morris more culpable in this drug operation and agreed to 262 months, the 300-month mandatory sentence faced by Mr. Coles undermines the argument the government now asserts for a greater sentence. On this ground alone we request a downward variance.

### c. The third ground supporting a downward variance is based on Mr. Coles' extraordinary and compelling rehabilitation.

As reflected in the Mitigation Report, the character letters and the more than fifty (50) certificates submitted to this Honorable Court, Mr. Coles has demonstrated a remarkable transformation. Over the past twenty (20) years of his incarceration Mr. Coles has availed himself of many vocational and educational programs, successfully completing hundreds of hours of programming. Mr. Coles is committed to making up for his past criminal behavior and strives to better himself and his community.

The Mitigation Report details the effort by Mr. Coles over the past two decades to rehabilitate. The character letters from officials at Big Sandy attest to the incredible steps taken by Mr. Coles in his journey toward rehabilitation. These are some of the highlights.

Following the imposition of the life sentence Mr. Coles was designated at Big Sandy Correctional Institution. For ten years, from 2009 to 2019, Mr. Coles worked as barber at Big Sandy offering him the opportunity to engage with the other inmates in a productive and positive

manner.

In 2009, Mr. Coles became the program facilitator for a training course originated by the Assistant Warden. Created as a six- week training program for inmates, Mr. Coles was given the responsibility for managing 300 to 400 inmate participants in the program. From 2009 to 2017 Mr. Coles was the Senior Director and then eventually, Mr. Coles became Director of the Stop the Violence Program at Big Sandy. This program was initiated by the Warden and Mr. Coles, along with the assistance of other inmates, to stem the violence and create a more secure environment for the inmates and guards.

In 2010, Mr. Coles completed the Drug Abuse Program. During this program Mr. Coles developed insight regarding his life as a drug dealer and the impact that had on the lives of families and communities.

In 2011, Mr. Coles participated in the One Year Challenge Program which provided him with the tools to cope with and overcome his negative reaction to prospective obstacles in his future. From 2012 to 2017, Mr. Coles was a mentor in the Challenge Program offering assistance and guidance to other inmate participants in the program. From 2012 to 2019, Mr. Coles was a participant in the Suicide Watch Companion Program, providing advice and guidance to inmates suffering with suicidal ideation.

As reflected in the numerous certificates earned during his time at Big Sandy (attached as Exhibit D to Defendant's Motion to Reduce Sentence, Docket No. 1961), as well as the character letters from those who have witnessed his transformation during the past twenty (20) years of incarceration, (attached as Exhibit E and Exhibit J to Defendant's Motion to Reduce Sentence, Docket No. 1961)[3], Mr. Coles has made significant strides towards rehabilitation. As

---

[3] During the First Step Act Motion hearing on January 20, 2026, Your Honor indicated that you did not have the most recent character letters submitted to Judge Surrick as Exhibit F and Exhibit J to the Motion for a Sentence Reduction, as they were filed under seal. Counsel has provided these exhibits as an attachment to this Sentencing Memorandum sent via email to Chambers. Counsel intends these documents to remain under seal.

Chris Tompkins, Senior Officer Specialist of the Bureau of Prisons, stated in his letter on behalf of Mr. Coles, "I feel confident in saying that he (Mr. Coles) is capable of handling any situation with thoughtfulness and maturity and if you give him a second chance, I believe he will be a productive member of society." (Docket No. 196, Exhibit E-1). Through his self-initiated effort Mr. Coles has contributed to those around him, making him worthy of the opportunity to have the same impact on the world outside of prison.

More recently, the truth of Mr. Thompkins' statement regarding the character of Mr. Coles was confirmed.  Mr. Coles received character letters from inmates at the Federal Detention Center, Philadelphia, attesting to Mr. Coles' remarkable contributions to his fellow inmates. (Docket No. 1961, Exhibit J). These character letters include a letter prepared by an inmate and adopted by seventy-nine (79) fellow inmates incarcerated at FDC Philadelphia lauding Mr. Coles as a calming force within the inmate population.

### d.  The fourth basis for a downward variance is based on Mr. Coles' difficult childhood.

A close examination of Alton Coles' background offers insight into the struggles Mr. Coles faced growing up and has overcome to become a loving, committed parent to his children. As reflected in the Mitigation Report prepared by Megan Miles, Alton Coles' childhood was turbulent. Born to a teenage mother, his home environment was destructive. At six (6) years old his father, a drug dealer and addict, introduced him to drugs and alcohol. Mr. Coles was a witness to the abuse his mother suffered at the hands of his father. Eventually she had a mental breakdown, and dropped Mr. Coles and his siblings at his grandfather's house and never returned. As the Mitigation Report details, Mr. Coles' chaotic and destructive childhood charted his path toward drug dealing and aberrant behavior. While this does not excuse the criminal conduct which resulted in convictions, it does help to put in context the destructive environment in which Mr. Coles was raised and should be considered.

With determination and commitment, Mr. Coles has transformed his life during his almost twenty (20) years of incarceration. Upon reflection Mr. Coles admits that at the time he entered prison he was a street kid focused solely on himself. However, over the course of the past two decades Mr. Coles has undergone a remarkable transformation. This transformation is reflected in more detail in the Mitigation Report (See Docket No. 1961, Exhibit G), in addition to the numerous certificates of achievement, as well as character letters attached as Exhibits. (See Docket No. 1961 Exhibit D, p. 1-52, Exhibit E, p. 1-9, and Exhibit J, p. 1-35).

> **e.  The fifth basis for a downward variance is based on Mr. Coles' successful intervention on behalf of correctional staff and administrators to prevent a violent confrontation between two large groups of inmates.**

Approximately eighteen (18) months ago Mr. Coles was called upon by officials at the Federal Detention Center, Philadelphia to intervene and prevent a major violent confrontation that was brewing between two large groups of inmates. Two Correctional Lieutenants corroborated the accounts offered by the inmates regarding the extraordinary assistance provided by Mr. Coles. Specifically, at the request of Correctional Officials, Mr. Coles quelled a disturbance at the FDC. Mr. Coles is uniquely situated to intervene as peacemaker as he is universally accepted as a positive role model and mentor to the inmates at FDC. Recognizing Mr. Coles' powerful positive influence, Correctional Officials approached Mr. Coles and asked for his help to quell a violent confrontation that was developing between these two large groups of inmates. (See Docket No. 1961, Exhibit J, Petition and Character Letters). The Correctional Officials reported that the conflict ended due to the peaceful manner and positive approach employed by Mr. Coles. One of the Correctional Officials stated that in his fifteen years as a Correctional Officer he had never seen an inmate have such a calming influence on other inmates during such a conflict. (See Exhibit F and Exhibit J to Defendant's Motion to Reduce Sentence, Docket No. 1961, filed under seal). Mr. Coles is universally revered by two large separate groups of inmates such that he single-handedly quelled a potential violent confrontation. The incredible

positive influence Mr. Coles has on his fellow inmates is extraordinary and compelling. In addition, the transformation that Mr. Coles has undergone through his self-initiated rehabilitation is equally "extraordinary and compelling." The remarkable effort by Mr. Coles to assist in maintaining the security and safety of fellow inmates and correctional officers provides an extraordinary and compelling reason to grant a significant downward variance.

Mr. Coles' life sentence should be reduced based on the policy changes in the guidelines, specifically, U.S.S.G. 1B1.13(b)(5), as set forth above, along with the significant changes in the law regarding the mandatories as set forth in the First Step Act, as well as the individualized circumstances as reflected in the extraordinary rehabilitation effort self-initiated by Mr. Coles. (Mitigation Report attached as Exhibit G to the Motion to Reduce Sentence, Docket No. 1961, and Exhibit E, Character Letters). Based on all of the above, Mr. Coles respectfully requests that this Honorable Court apply a downward departure on this ground as well.

> **f.   The sixth basis for a downward variance is based in Mr. Coles' extraordinary and compelling effort to preserve his right to challenge his life sentence by filing a pro se Motion while his direct appeal was pending to ensure that the Supreme Court's decision in <u>Alleyne v. United States</u> applied to his case.**

On March 8, 2013, while Petitioner's direct appeal was pending in the Court of Appeals for the Third Circuit, Petitioner sent a letter which was filed of record with the Court, requesting to supplement his counseled brief with a pro se brief preserving the issues pending in the Supreme Court of the United States in the case of <u>Alleyne v. United States</u>.

On March 12, 2013, the Case Manager for the Third Circuit issued a letter to Petitioner and his appellate attorney, Christopher Warren, Esquire, informing both that the Third Circuit will not accept the supplemental filing as the Court does not recognize hybrid representation and would only accept submissions by counsel for filing. An order accompanying the letter denying Petitioner's Motion to Supplement was also sent to Petitioner and his appellate counsel attached to the original Brief In Support of the Motion to Expand the Record.

On June 20, 2013, Mr. Coles filed a pro se document with the Third Circuit titled "Judicial Notice" in the Third Circuit. (Docket No. 1961, Exhibit H). Again, Mr. Coles made a request to file a supplemental brief pursuant to Rule 28(j) based on Alleyne v. United States which had been decided on June 17, 2013, while Petitioner's direct appeal was still pending. Mr. Coles' challenge under Alleyne was to the mandatory life sentence imposed on Count Two, the Continuing Criminal Enterprise conviction, as the drug quantities were decided by Your Honor based on a preponderance of evidence standard, and in part, based on evidence never presented to the jury.

On March 6, 2014, Mr. Coles filed a Motion to Expand the Record (Docket No. 1961, Exhibit I) with this Honorable Court. One of the issues raised in the motion was the Alleyne issue. On March 26, 2024, this Honorable Court issued an order that the record be expanded based on Mr. Coles' preservation of the Alleyne issue while his direct appeal was pending.

In the Brief In Support of and Documents Submitted Responsive to the Court's Decision to Permit Expansion of the Record referred to the Rule 28(j) procedure that Mr. Coles had requested prior counsel follow so that the Alleyne issue would be preserved on appeal. The Motion to Expand filed in the District Court for Your Honor's review, preserved the issues related to the Alleyne issue with this Honorable Court. (See pages 3-4 of Docket No. 1933, Brief In Support of and Documents Submitted Responsive to the Court's Decision to Permit Expansion of the Record detailing the correspondence regarding Rule 28(j)).

On June 27, 2024, the Supreme Court of the United States in Erlinger v. United States, 23-370, ruled that the Fifth and Sixth Amendments of the United States Constitution require the facts supporting prior convictions that enhance a sentence to a mandatory minimum be determined by a jury and proven beyond a reasonable doubt. As set forth in the original Brief In Support of and Documents Submitted Responsive to the Court's Decision to Permit Expansion of the Record the record, Erlinger v. United States, supra., involved an enhanced

mandatory fifteen (15) year sentence under the Armed Career Criminal Act based on three prior qualifying convictions. In Erlinger, supra, the Court reversed the Circuit Court's decision to affirm the District Court's decision to impose the enhanced mandatory minimum sentence. The question before the sentencing court was whether the prior burglary convictions committed on separate days were one criminal episode or distinct occurrences to be decided by a jury beyond a reasonable doubt and not a judge by a preponderance of evidence.

On July 3, 2024, Counsel filed a Supplemental Brief based on this Honorable Court's decision to permit Petitioner to submit documents in support of Mr. Coles' Motion to Expand the Record on the Alleyne issue. (Docket No. 1936). The Supplemental Brief contained corrections to errors set forth in the original Brief and provided an update on the significant and consequential Supreme Court decision in Erlinger v. United States, 23-370, decided on June 27, 2024. Essentially, this Honorable Court by and through the order to permit Mr. Coles to submit documents in support of the Alleyne issue, places Mr. Coles in the position to support his claim under Alleyne, and now following the decision in Erlinger, permits this Court to address the full impact of both decisions on Mr. Coles' life sentence.

As this Honorable Court is aware, the Supreme Court in Alleyne held that when sentencing a defendant for an aggravated crime, the specific facts of that crime must be presented to a jury and proven by the government beyond a reasonable doubt. If those facts were not presented to a jury, then it violates the defendant's Sixth Amendment right to a jury trial. The only exception is if the facts involve a prior conviction. However, the Supreme Court's decision in Erlinger v. United States, 23-370 renders that sentencing paradigm invalid.

In Erlinger v. United States, No. 23-370, the question presented to the Supreme Court is whether the Constitution requires that a jury find for the defendant (or the defendant admit) that the defendant's predicate offenses were committed on occasions different from one another before the defendant can be sentenced under the Armed Career Criminal Act

18

pursuant to 18 U.S.C. Section 924(e)(1).

As Your Honor knows, prior to the Supreme Court's decision in Erlinger, except for the fact of a prior conviction, any effort to increase the maximum or minimum sentence for a defendant must be submitted to a jury and proven beyond a reasonable doubt by the government. Alleyne v. United States, 570 U.S. 99 (2013), Apprendi v. New Jersey, 530 U.S. 466 (2000).

In Apprendi v. New Jersey, supra., the Supreme Court recognized only a single exception to the decision that only a jury may determine a fact that increases the maximum sentence, that is for a fact of a prior conviction, which a judge may determine by a preponderance of evidence. Apprendi v. New Jersey, 530 U.S.at 466; Alleyne v. United States, 570 U.S. 99, 103 (2013); Almendarez-Torres v. United States, 523 U.S. 224, 230, 234, 244 (1998) (prior-conviction exception). Aside from this narrow exception, the defendant has the right to a jury trial and can hold the government to its burden of proof beyond a reasonable doubt as to those facts that enhance the maximum (Apprendi) or a mandatory minimum (Alleyne). Based on the Supreme Court's decision in Erlinger, this is no longer the case. All facts, including the facts supporting an enhanced mandatory sentence based on prior convictions must be presented to a jury and proven beyond a reasonable doubt. The effort by Mr. Coles to preserve the Alleyne issue during the pendency of his direct appeal, despite his lawyer's failure to do so, serves as another compelling basis to apply a downward variance and apply the mandatory 300-month sentence. This should be considered in combination with the other extraordinary and compelling grounds for a variance as set forth above.

## IV.    The 3553(a) factors

Your Honor must consider the relevant sentencing factors set forth under 18 U.S.C. Section 3553(a) to determine whether a sentence reduction is warranted. 18 U.S.C. Section

3582(c)(1)(A).

### 1.    The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant.

Your Honor has a clear understanding regarding the nature and circumstances of the offenses committed by Mr. Coles more than twenty (20) years ago. However, as reflected in the Mitigation Report, there are significant mitigating factors developed as post-offense conduct that should be considered toward achieving the justice mandated by the First Step Act. (Docket No. 1961, Exhibit G, Mitigation Report).

### a.  Childhood

As reflected in the report prepared by Megan Miles, Alton Coles' childhood was turbulent. Born to a teenage mother, his home environment was destructive. At six (6) years old his father, a drug dealer and addict, introduced him to drugs and alcohol. Mr. Coles was a witness to the abuse his mother suffered at the hands of his father. Eventually she had a mental breakdown, and dropped Mr. Coles and his siblings at his grandfather's house and never returned. As the Mitigation report prepared by Ms. Miles details, Mr. Coles' chaotic and destructive childhood charted his path toward drug dealing and aberrant behavior. While this does not excuse the criminal conduct which resulted in convictions, it does help to put in context the destructive environment in which Mr. Coles was raised and should be considered.

With determination and commitment, Mr. Coles has transformed his life during his almost twenty (20) years of incarceration. Upon reflection Mr. Coles admits that at the time he entered prison he was a street kid focused solely on himself. However, over the course of the past two decades Mr. Coles has undergone a remarkable transformation. The following summarizes the effort made by Mr. Coles to transform his life. This transformation is reflected in more detail in the Mitigation Report prepared by Ms. Miles, (Docket No. 1961, Exhibit G), in addition to the numerous certificates of achievement, as well as character letters attached as

Exhibits. (See Docket No. 1961 Exhibit D, p. 1-52, and Exhibit E, p. 1-9").

### b. Accomplishments Since Incarceration Reflecting Post-Offense Rehabilitation

The Mitigation Report attached to Defendant Coles' Motion to Reduce Sentence details the twenty-year effort by Mr. Coles toward achieving rehabilitation. The character letters from officials at Big Sandy attest to the incredible steps taken by Mr. Coles in his journey toward rehabilitation. Throughout the past twenty (20) years, Mr. Coles has availed himself of many vocational and educational programs, successfully completing hundreds of hours of programming. Mr. Coles is committed to making up for his past criminal behavior and strives to better himself and his community. (See the details in subsection III above in support of a downward variance based on Mr. Coles rehabilitation).

### 2. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense.

There is no question that the criminal conduct engaged in by Mr. Coles was serious and that respect for the law must be a consideration in determining a just punishment. In the process of making the determination of what constitutes a just punishment, as noted above, we cannot overlook the significant impact that lengthy periods of incarceration have on the defendant's families and communities. More significantly, the fact that the Federal Sentencing Guidelines has failed to incorporate the long-term detrimental impact that lengthy federal sentences have on society demonstrates the necessity for a new educated perspective.

Over the past two decades social science has offered significant insight into the efficacy of lengthy periods of incarceration in this struggle to achieve a "just result." For years social scientists documented the detrimental impact of long-term incarceration on non-violent offenders. As set forth in detail above, there are numerous reasons why a life sentence for a non-violent drug offense can no longer be considered a just result. As set forth above, the significant

long overdue changes in public policy, motivated by social science, serve as the foundation for the new federal drug sentencing paradigm now mandated by the First Step Act. The life sentence Mr. Coles' is presently serving falls squarely in the category of cases which the First Step Act was designed to remedy.

As stated above, many courts have acknowledged the significance of the redemptive nature of the First Step Act by correcting sentences that were "unfair and unjust," especially for those serving life sentences. United States v. Powell, supra.; United States v. Jackson, ------F.Supp.3d----- 2020WL 219311(M.D. Florida, September 5, 2019); Jones v. United States, -----F. Supp.-----2020 WL 219311 (E.D. Virginia, 2020); United States v. Grace, 2020 WL 1044003 (D. Nevada, March 3, 2020); United States v. Mondaca, 2020 WL 1029024 (S.D. Cal., March 3, 2020); United States v. Mondaca, 2020 WL 1029024 (S.D. Cal., March 3, 2020); United States v. Hadley, 389 F.Supp.3d 1043 (M.D. Florida, July 24, 2019); United States v. Lee, Case No.8:06-CR-325JSS, Dkt. 80; United States v. Grimsly, Case No. 6:97-CR-122Orl_18GJK, Dkt 172; United States v. White, 2019 WL 3228335 (S.D. Texas, July 17, 2019)

The period of incarceration served by Mr. Coles reflects the seriousness of the offense and promotes respect for the law. What is now considered "just punishment for the offense" is a normative concept that has evolved into a more enlightened view than the view that supported the failed engines of mass incarceration thirty and forty years ago. Imposition of a life sentences, especially for a non-violent drug offense as in this case, are no longer deemed rational as a life sentence is such cases is completely untethered to the social science. In addition, the long-term detrimental impact that lengthy sentences have on those sentenced to such terms, as well as their families and society as a whole is well documented.  In the process of making the determination of what constitutes a just punishment we cannot overlook the significant impact that lengthy periods of incarceration have on defendants' families and communities. More significantly, the fact that the Federal Sentencing Guidelines has failed to incorporate the long-term detrimental

impact that lengthy federal sentences have on society demonstrates the necessity for a new educated perspective. According to Marie Gottschalk, the criminal justice system, more specifically the penal system, has become one of the causal shaping forces in our society. *Democracy in the Carceral State in America, Detaining Democracy Criminal Justice in American Civil Life*, Volume 651, pp. 288-295, January, 2014.

The unduly harsh sentences that have historically plagued the criminal justice system over the past fifty years has been addressed in a number of different contexts. Social science that has established that long term incarceration is detrimental to the individual and the community provides for a factor in Your Honor's consideration of the appropriate term of incarceration if you find extraordinary and compelling reasons to grant release in this case. In a study conducted more than fifteen years ago, researchers concluded that the longer an individual is incarcerated, the more likely it is that the individual will commit a future crime.

In *The Effects of Prison Sentences on Recidivism*, securitepublic.gc.cc.199 9, Paul Gedreau, Claire Gogin and Frank, the essential conclusions reached from this study were: 1. Prisons should not be used with the expectation of reducing criminal behavior. 2. On the basis of the present results, excessive use of incarceration has enormous cost implications. 3. In order to determine who is being adversely affected by prison, it is incumbent upon prison officials to implement repeated, comprehensive assessments of offenders' attitudes, values, and behaviors while incarcerated. The primary justification of prison should be to incapacitate offenders (particularly, those of a chronic, higher-risk nature) for reasonable periods and to exact retribution. (p. 1-2)

Over the past two decades social science research has offered significant insight into the efficacy of lengthy periods of incarceration in this struggle to achieve a "just result."

For years social scientists documented the detrimental impact of long-term incarceration on non-violent offenders. During that same time period social scientists were in general

agreement that long periods of incarceration did not achieve the desired impact. Writing for the American Criminal Law Review, Professor Ian Weinstein reinforces the general consensus among criminologists. Addressing the mandatory sentencing paradigm, Weinstein asserts that mandatory minimum statutes have created a shift in the power toward the prosecutor so extreme that it has damaged the adversary system and brought injustice. (See "*Fifteen Years After Federal Sentencing Revolution: How Mandatory Minimums Undermined Effective Injustice in Narcotics Sentencing*" Ian Weinstein, Fordham University School of Law, American Criminal Law Review, Volume 40:87) Written almost a decade and a half ago, this study made it clear that the overwhelming majority of criminal justice experts agreed that harsher sentences fail to either provide greater public safety or reduce crime. (Footnote 178) The author asserts that "we are imprisoning people for many years and destructing lives and families while gaining nothing. The authors note that the current allocation of authority prevents discussion of the severity of these sentences. After all, when mitigation is largely in control of the prosecutor, it makes little sense to mount a fundamental challenge to the harshness of the sentence and there is really nowhere to take the complaint. The current regime of overcriminalization increased prosecutorial discretion and very harsh sentencing reinforces itself. (Page 130-131) The author concludes that "someday many more Americans will look back and ask how we could lock up so many people for so long for such crimes. (Page 132) Professor Weinstein's predictions are prophetic. Unfortunately, only now, twenty years after the Supreme Court's decision in <u>United States v. Booker</u>, we are coming to the realization that the winds of change are bending towards a more just and reasonable sentencing landscape.

Providing further support to the social science that longer periods of incarceration are detrimental to society is the recognition that eventually, individuals age out of criminal conduct as a result of the process of maturation. Researchers John H. Laub and Robert J. Sampson concluded "From a policy standpoint, the message is that change is possible, and therefore, it is

critical that individuals are given the opportunity to reconnect to institutions like family, school, and work after a period of incarceration or any criminal justice contact for that matter." Understanding Desistance From Crime, Crime and Justice Vol. 28, 1, p. 58

(https://dash.harvard.edu/bitstream/handle/1/3226958/Sampson_UnderstandingDesistance. pdf?sequence =4).

Finally, as Your Honor well knows from the groundbreaking work done in the Eastern District, there are a myriad of social and economic obstacles to reentry. Those obstacles become much more pronounced for those reentering society after lengthy periods of incarceration. (See *Incarceration and Prisoner Reentry in the United States*, The Annals of the American Academy of Political and Social Science Vol. 365, Young Disadvantaged Men: Fathers, Families, Poverty, and Policy May 2011 pp.192-215) (http://www.jstor.org/stable/29779418).

Given Mr. Coles' age, and the lengthy period of incarceration he has served, a significant sentence reduction from the mandatory life sentence to the mandatory 300 months is strongly supported by the social science.

The circumstances in Mr. Coles' case, as reflected in the Mitigation Report, offer a far more compelling basis for resentencing than the cases set forth above. At fifty-two (52) years old, Mr. Coles has aged out of the criminal conduct that he engaged in most of his young life. As demonstrated by his profound record of accomplishment, Mr. Coles transformed his perspective and behavior. In the face of a hopeless life behind bars, Mr. Coles' self-initiated rehabilitation is remarkable.

> **3.     The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct, and to Protect the Public from Further Crimes of the Defendant**

Having served twenty (20) years of a life sentence, Mr. Coles was determined to change his perspective and behavior and has done so. As reflected in the good works demonstrated by Mr. Coles, there nothing to indicate that he would return to a criminal lifestyle. In fact, the evidence demonstrates the opposite.  At fifty-two (52), Mr. Coles no longer needs to be

incarcerated to deter him from committing future crime. Furthermore, after twenty (20) years he does not pose a danger to the community.

    4.    **The Need to Provide the Defendant with Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner.**

As reflected in the numerous certificates of achievement, Mr. Coles has received training and treatment during the past twenty (20) years and is prepared to re-enter society.

    5.    **The Guidelines and Policy Statements Issued by the Sentencing Commission and the Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct.**

The following reflects two separate compelling grounds to support Mr. Coles Motion for Relief under the First Step Act.

    a.    <u>**Others Similarly Situated Have Received Significant Sentence Modifications**</u>:

As set forth in detail above, numerous courts have applied the First Step Act to those serving life sentences for non-violent drug offenses and significantly reduced those sentences. (See the cases set forth in the Sentencing Factors, and in more detail in Mr. Coles' First Step Act Motion, Reply to the Government's Response, and Mr. Coles' Motion to Reduce Sentence.)

The First Step Act and motions for sentence reductions filed by others serving life sentences makes it abundantly clear that those currently serving life sentences for non-violent drug offenses represent precisely the unwarranted disparity the Guideline Commission sought to remedy under this Section. There have been numerous reductions in sentences for defendants serving lengthy sentences including those whose life sentences have been drastically reduced. In addition to those cases previously referenced please consider these additional cases:

James Patterson was convicted of a count of Continuing Criminal Enterprise and received a mandatory life sentence plus five years. On May 10, 2022, his life sentence was reduced to 300 months based on the First Step Act. (Order Reducing Sentence attached as Exhibit K to Docket No. 1961).

Terrence Gibbs was convicted of a count of Continuing Criminal Enterprise and received a life

sentence on multiple counts. On March 14, 2024, his sentence was reduced to time served based on the First Step Act. (Order Reducing Sentence attached as Exhibit L to Docket No. 1961).

Darryl Coleman was convicted of a count of Continuing Criminal Enterprise and received a life sentence on multiple counts. On August 29, 2023, his sentence was reduced to time served based on the First Step Act. (Amended Judgment attached as Exhibit M to Docket No. 1961).

Tyrone Tidwell was convicted of a count of Continuing Criminal Enterprise and as well as two counts of murder in furtherance of a Continuing Criminal Enterprise and received multiple life sentences. On August 10, 2020, his sentence was reduced to time served based on the First Step Act. (Order Reducing Sentence attached as Exhibit N to Docket No. 1961).

In 2006, Derek Russell was sentenced to life in prison on drug charges. On April 28, 2023, his sentence was reduced to 305 months. (Amended Judgment attached as Exhibit O to Docket No. 1961).

Courts continue to apply the new sentencing paradigm in addressing and rectifying the unjust sentences imposed in the past.[4]

  **b.** **<u>As Asserted Above In Detail Under Section b. In Support of a Downward Variance, the Court Should Consider These Same Facts In Order to Avoid Unwarranted Sentence Disparities.</u>**

In <u>United States v. James Morris</u>, (Morris Docket No. 05-44 Doc. 1807), the government agreed to reduce the life sentence originally imposed prior to the FSA to a sentence of 262 months. (See Amended Judgment as to James Morris, attached as Exhibit B to Coles' Motion for Sentence Reduction, Docket No. 1961 and details above).

A sentence reduction that would result in Mr. Coles' release in the near future would not create an unwarranted sentencing disparity among defendants with similar records as hundreds of inmates across the country with more significant criminal histories have been released based upon similar motions. This creates an unwarranted disparity to his detriment.

---

[4] In <u>United States v. Waters</u>, 2025 WL 900422 (E.D.PA., March 25, 2025), the Third Circuit addressed the defendant's appeal regarding the length of supervised released following the district court's decision to grant a reduction in the defendant's sentence, a reduction agreed to by the government. In 2003, Mr. Waters was convicted of conspiracy to distribute more than 50 grams of cocaine base and sentenced to life in prison. Following an appeal the Third Circuit remanded the case pursuant to <u>United States v. Booker</u>, 543 U.S. 220 (2005). On remand the district court sentenced the defendant to thirty (30) years imprisonment. In 2024, the defendant filed a motion to reduce his sentence pursuant to Section 404 of the First Step Act. The government did not oppose the sentence reduction making the defendant eligible for immediate release. While his appeal regarding a shorter term of supervised release was denied, the history of that case and the government's agreement to the sentence reduction is an example of the government's arbitrary approach to defendants charged with similar crimes.

For all the reasons set forth above, a sentence to a mandatory 300 months is warranted.

## CONCLUSION

WHEREFORE, Counsel respectfully requests that Your Honor sentence Mr. Coles to the mandatory 300 months with credit for time served.

Respectfully submitted,

/s/ Paul J. Hetznecker, Esquire
Paul J. Hetznecker, Esquire
Attorney for Defendant, Alton Coles

Date: February 11, 2026

<u>**CERTIFICATE OF SERVICE**</u>

I, Paul J. Hetznecker, hereby certify that a true and correct copy of Defendant Alton

Coles' Sentencing Memorandum was served on the following via the Court's electronic filing

system (ecf):

Francis A. Weber, Esquire
Assistant United States Attorney
United States Attorney's Office
Eastern District of Pennsylvania
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

<u>/s/ Paul J. Hetznecker, Esquire</u>
Paul J. Hetznecker, Esquire
Attorney for Defendant, Alton Coles

Date: <u>February 11, 2026</u>